**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |

**DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE
SALE OF MATERIAL ASSETS OF THE DEBTORS' LEASEHOLD PORTFOLIO FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,
(II) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
SUCH SALE, AND (III) GRANTING RELATED RELIEF**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

And Go Concepts, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this amended motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.

**Relief Requested**

1.      By this Motion,[2] the Debtors seek entry of an order, substantially in the form attached hereto (the "**Sale Order**"): (A) approving the sale (the "**Sale**") of material assets of the Debtors' leasehold portfolio related to the Sites (as defined below), including fifty-one (51) Salad and Go drive-thru locations in Arizona and Nevada and certain additional leases located in Texas and Oklahoma (collectively and as further defined in the APA, the "**Purchased Assets**"), to Boersma Bros. LLC, an Oregon limited liability company doing business as Dutch Bros ("**Buyer**"), pursuant to that certain APA (as defined below), free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105, 363, and 365 of the Bankruptcy Code; (B) authorizing and approving the assumption and assignment of the Assumed Leases[3] (as defined in the APA) to Buyer pursuant to section 365 of the Bankruptcy Code, including approval of (i) the schedule of Assumed Leases attached hereto as **Exhibit A** and (ii) the Debtors' good-faith calculation of the related Cure Costs set forth on the schedule attached hereto as **Exhibit B**; and (C) granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The Debtors file this amended Motion to update the cure schedule in **Exhibit B.** All other contents of the Motion filed at Docket 11 remain unchanged.

[3] References in this Motion to "Assumed Leases," includes assignable utility contracts, where applicable.

- 2 -

4.      The bases for the relief requested herein are sections 105(a), 363, 365, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), and Bankruptcy Rules 2002, 6003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### Background

5.      On August 4, 2026 and August 5, 2026 (collectively, the "**Petition Date**"), the Debtors commenced voluntary cases under Chapter 11 of Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

6.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Fritz Gallagher in Support of Chapter 11 Petitions and First-Day Pleadings* (the "**First Day Declaration**"), filed on August 4, 2026 and incorporated herein by reference.[4]

### Overview of Lease Portfolio and Marketing Process

8.      The Debtors own and operate a quick-service, drive-thru restaurant chain that offers affordable, health-focused menu items such as salads, bowls, wraps, breakfast burritos, and soups ("**Restaurants**"). The footprint of the Restaurants is compact, with no kitchen, hood, grill, or fry equipment. The Restaurants feature single or double lane drive-throughs.

---

[4] Capitalized terms that are not defined herein shall have the meaning given to them in the First Day Declaration.



9.      The Debtors' lease portfolio consists of approximately 130 locations across five states, operated under the "Salad and Go" quick-service restaurant concept. The portfolio is concentrated in Arizona, Texas, Nevada, Oklahoma, with unopened sites in California.

10.      Prior to the Petition Date, the Debtors ceased operations in approximately seventy-five (75) sites (each, a "**Site**" and collectively, the "**Sites**"), which were primarily leases in Texas and Oklahoma. All of the Debtors' active leases are with And Go Concepts LLC as the tenant.

11.      Despite ceasing operations at these locations, the Debtors continued paying rent through July 31, 2026. The combination of lack of revenue at the closed locations and paying expenses on these locations contributed to the Debtors' financial strain. Accordingly, the Debtors

actively sought monetization of their leasehold interests and reduction of liabilities, which included soliciting interests of buyers for a going concern sale or assignment of leases with landlord consent for "Key Money" with tenants desiring to step into favorable lease terms in exchange for consideration. The Debtors were successful in completing 6 assignments of Key Money leases prior to the Petition Date and have executed 15 additional assignments.

12.     Simultaneously, the Debtors continued to solicit interests for a going concern sale or a sale of leases in bulk to prospective buyers. Because of the nature of the Debtors' Restaurant footprint, the universe of potential buyers is narrow. The Debtors focused their efforts on prospective strategic purchasers that fit the following criteria:

| Criteria | Rationale |
|---|---|
| Drive-Thru model | The units have no dine-in space; only a seating-free operator could operate them as-is, with no costly reconfiguration. |
| Established Scale | A multi-unit acquisition of this size is only digestible for a large, proven multi-unit operator who likely would operate these as a corporate owner rather than a franchisor. |
| Format Fit | Compact, hood-less builds fit assembly and beverage-led menus; other concepts require higher reconfiguration expenditures. |
| Phoenix Intent | The portfolio is Phoenix, AZ concentrated — the natural buyer must be interested in a dense footprint in the Phoenix market. |
| Expansion Engine | A buyer already scaling fast has the site, build and operational machine to absorb all units at once and quickly. |

13.     With these criteria in mind, the Debtors determined that strategic coffee or smoothie operators were prime candidates for a transaction. These operations are unlikely to need a kitchen,

hood, grill, or fry area. Stepping into the Debtors' vast leasehold footprint could serve as a quick market share expansion with cheaper investment and faster permitting process.

14.     The chart below depicts the Debtors' assessments of various strategic operators against the criteria:

| Concept | Scale ≥300 units | Drive-thru- (no seating) | Small footprint/ no hood | Funds ~$100M + integrate | Phoenix / AZ intent | Expansion engine (100+/yr) |
|---|---|---|---|---|---|---|
| Potential Buyer A | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Potential Buyer B | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Potential Buyer C | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Potential Buyer D | ✓ | ✗ | ✓ | ✗ | ✗ | ✓ |
| Potential Buyer E | ✓ | ✗ | ✓ | ✓ | ✓ | v |
| Potential Buyer F | ✓ | ✓ | ✗ | ✓ | ✓ | |
| Potential Buyer G | ✗ | ✓ | ✓ | ✓ | ✗ | ✓ |
| Potential Buyer H | ✓ | ✗ | ✗ | ✓ | ✗ | ✓ |
| Potential Buyer I | ✗ | ✗ | ✓ | ✓ | ✗ | ✓ |
| Potential Buyer J | ✓ | ✗ | ✗ | ✓ | ✓ | ✗ |
| Potential Buyer K | ✓ | ✗ | ✗ | ✓ | ✓ | ✗ |
| Potential Buyer L | ✓ | ✗ | ✓ | ✗ | ✗ | ✗ |
| Potential Buyer M | ✗ | ✓ | ✓ | ✗ | ✗ | ✗ |
| Potential Buyer N | ✗ | ✓ | ✓ | ✗ | ✗ | ✗ |
| Potential Buyer O | ✗ | ✗ | ✓ | ✗ | ✓ | ✗ |
| Potential Buyer P | ✗ | ✗ | ✓ | ✗ | ✗ | ✗ |

15.     The Debtors determined that the Buyer and two of the Buyer's competitors were the most likely candidates for a transaction with the Debtors. The Debtors engaged in preliminary discussions with these parties providing amongst others, management access and a virtual data room followed by extensive negotiations with these parties, discussing a potential equity or asset sale/lease assignment. The fact that And Go Concepts LLC is the tenant in all leases, including the non-performing leases, made an equity sale impractical.

16.     Ultimately, the Debtors focused their efforts with two potential buyers that expressed the most interest. A representative of the Debtors met with both parties at their headquarters for in-person negotiations on July 26 and 27, 2026. In those meetings, both parties expressed a strong desire for a direct sale of assets without a formal auction process and both parties insisted on exclusivity to prevent the Debtors from "shopping" their bids to the other party.

17.     The Debtors weighed the bidders' request for a direct sale with pros and cons of a traditional 363 auction process. The Debtors ultimately determined to agree to the bidders' request for several reasons. First, the Debtors believe that the two bidders increased their purchase price on the condition of a direct sale. Second, the Debtors determined that the purchase price under either bid would pay creditors in full.[5] Third, the Debtors believed they identified the only two bidders that were willing to submit bids of the scale contained in those bids because of the criteria mentioned above. And finally, the Debtors determined that they would soon run out of cash, requiring an urgent need for DIP financing. The Debtors believed that the Debtors' potential DIP lenders would require an APA executed prepetition as a condition to funding.

18.     Accordingly, the Debtors engaged in robust negotiations with both parties to achieve the maximum value for the Debtors' stakeholders and received bids from both. In comparing the two bids, the Debtors considered the purchase price, the number of purchased leases, the type of purchased leases (i.e., leases that could not be monetarized through Key Money arrangements at the same value), the length of the proposed closing schedule, various closing conditions, including the ability remove leases based on use restrictions, and other factors. The Debtors believed it necessary to evaluate beyond the headline purchase price and carefully evaluate

---

[5] The Debtors assumed that the rejection claims of landlords to rejected contracts are capped under 11 U.S.C. § 502(b)(6).

the certainty of closing on sufficient number of leases to justify entry into agreement with such bidder.

### Overview of the Sale Transaction

19.     Following these considerations, the Debtors selected Boersma Bros. LLC, an Oregon limited liability company doing business as Dutch Bros, as the party submitting the highest or otherwise best offer for the Debtors' assets related to the Sites, considering the totality of the circumstances including deal certainty, speed of closing, limited conditionality, and overall value to the estates. Additionally, the proceeds from the Sale are expected to be sufficient to pay all allowed claims against the Debtors' estates in full.

20.     On July 31, 2026, Buyer and And Go Concepts, LLC ("**Seller**") entered into that certain *Letter of Intent* (the "**LOI**") setting forth the principal terms of the proposed transaction, including a purchase price of $95,000,000 for the Sites set forth in the LOI, an exclusivity period in favor of Buyer running through August 3, 2026 (the "**Exclusivity Period**"), and a good faith deposit of $1,000,000 paid by Buyer into escrow with Kroll Restructuring Administration LLC, as escrow agent ("**Kroll**").[6]

21.     On August 4, 2026, Seller and Buyer entered into that certain *Asset Purchase Agreement* (as may be amended, the "**APA**")[7], pursuant to which Buyer agreed to purchase the Purchased Assets (as defined in the APA), including the Assumed Leases, furniture, fixtures, and equipment, and certain other assets, free and clear of all liens, claims, encumbrances, and interests, and to assume the Assumed Liabilities, in each case as more particularly described in the APA. A true and correct copy of the APA is attached as **Exhibit 1** to the proposed Sale Order. The

---

[6] The Debtors are also seeking to employ Kroll as its claims and servicing agent.

[7] All capitalized terms not otherwise defined herein shall be given the meaning ascribed to them in the APA.

Purchased Assets do not include, among other things, Seller's cash and cash equivalents, accounts receivable, intellectual property, perishable inventory and food and beverage products, and certain other assets excluded from the transaction (collectively and as further defined in the APA, the "**Excluded Assets**").

22.     The aggregate consideration for the Purchased Assets (excluding the Texas Leases as defined in the APA) is $105,000,000 in cash, comprised of a $10,000,000 deposit (inclusive of a $1,000,000 deposit paid prior to the Effective Date) paid into escrow with Kroll and $95,000,000 payable at Closing (plus any Deposit Adjustment, minus any Site Adjustment Amount, plus any Rejection Fees), in each case subject to certain adjustments set forth in the APA, plus $50 for the Texas Leases, in each case in addition to Buyer's assumption of the Assumed Liabilities. At Closing, all outstanding Cure Costs and Lease Expenses due under the Assumed Leases and not paid for by the Debtors shall be deducted from the Purchase Price and paid by Buyer, on Seller's behalf, directly to the applicable payees.

23.     The APA provides that this Sale is intended to constitute a sale pursuant to sections 105, 363, and 365 of the Bankruptcy Code, not subject to higher and better offers, and requires the Debtors to seek entry of a Sale Order (i) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests (other than the Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code; (ii) finding that Buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code; (iii) authorizing the assumption and assignment of the Assumed Leases to Buyer, inclusive of lease renewals and without Use Restrictions (as defined in the APA), to the maximum extent permitted by applicable law; and (iv) providing that all defaults under the Assumed Leases are deemed cured upon payment of the Required Cure Costs. The APA further provides that Buyer may reject any Real Property

Lease or Texas Lease under certain specified circumstances, in which case the Purchase Price will be reduced by $2,058,823.53 per rejected Real Property Lease (the "**Site Adjustment Amount**"). Provided, for each Real Property Lease rejected by Buyer in excess of five (5), Buyer will pay Seller rejection fees of $100,000 per such rejected lease ("**Rejection Fees**").

24.     The Debtors heavily negotiated for a fiduciary out provision. After a robust negotiation, the parties agreed to include a fiduciary out, provided that the Buyer receive a termination fee of $3,800,000, plus Buyer's reasonable and documented out-of-pocket expenses (including reasonable attorneys' fees), payable to Buyer in the event of a termination of the APA in connection with an Alternative Transaction (as defined in the APA).  The Termination Fee will constitute an allowed administrative expense claim and will be held in escrow from the proceeds of any such Alternative Transaction pending payment to Buyer. To qualify as an Alternative Transaction, the transaction must provide for a cash purchase price for the Purchased Assets that exceeds the Purchase Price, plus the Assumed Liabilities, plus the Termination Fee, and plus a minimum overbid of $10 million. Buyer's $10,000,000 deposit is subject to forfeiture or refund in accordance with the terms of the APA.

25.     To ensure that the equity holders would not receive a windfall for an exercise of the fiduciary out, the Buyer and certain equity holders of Seller entered into a side letter agreement (the "**Side Letter**") pursuant to which such equity holders (the "**Equity Holders**") agreed to turn over to Buyer any distributions received on account of an Alternative Transaction in excess of the amount such equity holders would have received under the APA.  Approximately 65% of Equity Holders support the Sale and have signed the Side Letter.

26.     Through this Motion, the Debtors respectfully submit that, in the exercise of their sound business judgment following an extensive prepetition marketing process, the APA

represents the highest and best available offer for the Purchased Assets on a totality-of-the-circumstances basis--considering deal certainty, speed of closing, limited conditionality, and overall value to the estates--and that consummating the Sale through a pre-petition negotiated transaction, is in the best interests of the Debtors' estates, creditors, and other parties in interest. Moreover, the Debtors require immediate liquidity to fund operations and the administration of the Chapter 11 Cases.

## **Basis for Relief Requested**

**I.      The Sale Should Be Approved as a Sound Exercise of the Debtors' Business Judgment Pursuant to Section 363(b) of the Bankruptcy Code**

27.      The Court may authorize a debtor to sell property of the estate outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Courts in the Fifth Circuit have approved a debtor's request to sell property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such sale is supported by sound business reasons. *See, e.g.*, *In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989). Once a debtor has articulated a valid business justification,

"the business judgment rule . . . is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company*." In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); *see also In re Friedman's, Inc.*, 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005) (the business judgment rule "is a policy of judicial restraint born of the recognition that directors are, in most cases, more qualified to make business decisions than are judges," and courts "should approve an exercise of a debtor's business judgment unless it is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim or caprice.") (quotation omitted).

28.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. 11 U.S.C. § 1107(a); *see In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (citations omitted). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Accordingly, approval of the Sale is a proper exercise of the Court's authority under sections 105(a) and 1107(a) of the Bankruptcy Code, as such relief is necessary for the Debtors to fulfill their fiduciary duty to preserve the value of the Purchased Assets for the benefit of their estates, creditors, and other parties in interest.

29.     The Sale reflects the exercise of the Debtors' sound business judgment. Prior to the Petition Date, the Debtors conducted an extensive, yet tailored, marketing process with respect to

the Purchased Assets and ultimately determined that the APA represents the highest and best available offer for the Purchased Assets on a totality-of-the-circumstances basis, considering deal certainty, speed of closing, limited conditionality, and overall value to the estates. Proceeding with the Sale to Buyer under the terms of the APA, rather than pursuing an additional public auction process, will preserve the value of the Sites, avoid the additional costs, delay, and execution risk associated with conducting a formal auction, and enable the Debtors to consummate the Sale within the timeframe required by the APA.

30.     Any delay in consummating the Sale could jeopardize the availability of the APA and the value of the Sites, to the detriment of the Debtors' estates and stakeholders. The Debtors submit that the relief sought in this Motion will not burden the Debtors but will instead help them maximize the value of their estates. Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Sale.

31.     The Purchase Price is fair and reasonable. Pursuant to the APA, Buyer agreed to pay an aggregate purchase price of $105,000,000 in cash for the Purchased Assets related to the fifty-one (51) Sites (comprised of a $10,000,000 deposit paid into escrow and $95,000,000 payable at Closing), subject to certain adjustments, plus $50 for the Texas Leases, in each case in addition to Buyer's assumption of the Assumed Liabilities. The Debtors believe that the Purchase Price is a premium to market price, which was offered in connection with the direct sale structure. The Debtors assert, in the exercise of their business judgment, that the Purchase Price, together with the certainty of closing and limited conditionality offered by Buyer, represents the highest and best value reasonably obtainable for the Purchased Assets under the circumstances.

32.     The Debtors have provided, or will provide, adequate and reasonable notice of this Motion and the Sale, as set forth in the Notice section below, to the U.S. Trustee, all counterparties

to the Assumed Leases, and all other parties entitled to notice under the Bankruptcy Rules and the Local Bankruptcy Rules. The Debtors submit that such notice is good and sufficient and that no further notice is required.

33.     Buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code. The APA was negotiated between the Debtors and Buyer at arm's length and in good faith, without collusion or fraud of any kind. The Buyer was selected through a competitive bidding. There is no pre-existing relationship between Buyer and the Debtors or their insiders, and the terms of the APA reflect arm's-length negotiations. *See* 11 U.S.C. § 363(m) (reversal or modification on appeal of a sale authorized under section 363(b) of the Bankruptcy Code does not affect the validity of the sale to a good faith purchaser); *see also Bleaufontaine, Inc. v. Roland Int'l (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (a lack of good faith in a bankruptcy sale requires a showing of fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders). Accordingly, the Debtors request that the Court find that Buyer is a good faith purchaser entitled to the full protections of section 363(m) of the Bankruptcy Code.

   II.     **The Narrow Universe of Qualified Buyers Justifies the Sale Without a Further Public Auction Process**

34.     Unlike many operating businesses, whose assets can be acquired and operated by a broad universe of financial and strategic purchasers, the Sites are purpose-built for a single-use, drive-thru-only format with no dine-in seating and no kitchen, hood, grill, or fryer. The universe of purchasers able to acquire the Sites in bulk, and to do so on the timetable the Debtors' liquidity requires, is therefore exceptionally narrow

35.     The Sites are drive-thru-only locations occupying a compact footprint of approximately 800 to 1,500 square feet, with no dine-in seating and no kitchen, hood, grill, or

fryer, meaning that only operators with a compatible drive-thru-native operating model can utilize the Sites without incurring the material cost, delay, and permitting risk associated with reconfiguring the premises.

36.     To identify the universe of potential purchasers capable of acquiring and operating the Purchased Assets, the Debtors' advisors screened the U.S. restaurant and beverage chain concepts market of scale against a series of criteria, including (i) a drive-thru-native operating model with no indoor seating, (ii) established scale of approximately 300 or more U.S. locations, (iii) sufficient financial resources to fund and integrate a transaction of this size, (iv) a small-footprint, hood-less format compatible with the Sites, (v) an interest in expanding density in, or entering, the Phoenix, Arizona market, and (vi) a proven, funded expansion engine capable of absorbing a large number of units at once.

37.     Applying these criteria, the Debtors determined that only three operators nationally satisfied all of the applicable criteria, and one of those three was not interested in the full portfolio.

38.     Given this exceptionally narrow universe of qualified purchasers, subjecting the Sale to a further public auction process would have been unlikely to attract additional credible, competing bids, and instead would have exposed the Debtors' estates to additional cost, delay, and execution risk without any reasonable prospect of enhancing recoveries. Proceeding with a targeted, negotiated sale process directed at the small number of strategically and financially qualified buyers, rather than an open-ended public auction, was therefore a sound exercise of the Debtors' business judgment and reasonably calculated to maximize value for the benefit of the Debtors' estates and creditors.

**III.**   **The Sale Should Be Approved Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f) of the Bankruptcy Code**

39.   Section 363(f) of the Bankruptcy Code permits a debtor to sell property of the estate free and clear of liens, claims, encumbrances, and interests if any one of the five conditions set forth in section 363(f)(1)-(5) is satisfied, as section 363(f) is written in the disjunctive. *See In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."). The Debtors submit that they will be able to demonstrate, with respect to each holder of a lien, claim, encumbrance, or interest in the Purchased Assets, that one or more of the standards set forth in section 363(f) has been satisfied, including that such holder has consented, or is deemed to have consented, to the Sale, or could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. Any such liens, claims, encumbrances, and interests shall attach to the proceeds of the Sale with the same validity, priority, and effect as they had against the Purchased Assets immediately prior to the Sale.

40.   Accordingly, the Sale should be authorized free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale.

41.   Further, neither Buyer nor any of its affiliates is a successor to the Debtors or their estates by reason of any theory of law or equity, and neither Buyer nor any of its affiliates will assume, or be responsible for, any liability or obligation of the Debtors or their estates, except as expressly provided in the APA. The Debtors therefore request that the Court find that Buyer's acquisition of the Purchased Assets shall be free and clear of any successor liability claims or other

transferee liability of any kind, whether known or unknown as of the Closing, other than the Assumed Liabilities or as otherwise provided in the APA.

**IV.    The Assumption and Assignment of the Assumed Leases Should Be Approved Pursuant to Section 365 of the Bankruptcy Code**

42.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, subject to the Court's approval, may assume and assign any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). A debtor's determination to assume and assign an unexpired lease is subject only to the business judgment standard and will not be disturbed absent a showing that the decision was clearly an unreasonable exercise of such judgment. *See Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990). The assumption and assignment of the Assumed Leases to Buyer is a necessary and integral part of the Sale and reflects the Debtors' sound business judgment.

43.    Pursuant to the APA, at or prior to Closing, the Debtors will pay, or cause to be paid, all Required Cure Costs (as defined in the APA) necessary to cure any defaults under the Assumed Leases, as and to the extent required by section 365(b)(1) of the Bankruptcy Code. The Debtors' good-faith calculation of the Cure Costs associated with each Assumed Lease is set forth on the schedule attached hereto as **Exhibit B**. Any Lease Counterparty wishing to object to the proposed Cure Costs for its Assumed Lease, or to the proposed assumption and assignment of its Assumed Lease, must timely file and serve an objection to this Motion.

44.    The Debtors further request that the Assumed Leases be assumed and assigned to Buyer, inclusive of all renewal options thereunder, notwithstanding any provision therein, or in applicable non-bankruptcy law, that purports to restrict, condition, or prohibit such assignment, including any Use Restriction (as defined in the APA) that would otherwise limit Buyer's use of

the leased premises for the operation of its business. Section 365(f)(1) of the Bankruptcy Code provides that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease." 11 U.S.C. § 365(f)(1). Courts have consistently held that section 365(f) reaches beyond express anti-assignment clauses to encompass provisions that have the practical effect of preventing assignment--so-called "de facto" anti-assignment clauses. *See In re Rickel Home Centers, Inc.*, 240 B.R. 826, 831–32 (Bankr. D. Del. 1999) (holding that a permitted-use clause restricting premises to "home improvement centers" constituted a de facto anti-assignment clause because "the practical effect of the use restriction is to prevent the trustee from assigning the leases to the only potential assignees"); *In re U.L. Radio Corp.*, 19 B.R. 537, 543 (Bankr. S.D.N.Y. 1982) ("[A]ny lease provision, not merely one entitled 'anti-assignment clause', would be subject to the court's scrutiny regarding its anti-assignment effect."); *In re ANC Rental Corp.*, 277 B.R. 226, 239–40 (Bankr. D. Del. 2002) (extending *Rickel* to hold that use restrictions limiting the universe of permissible assignees are de facto anti-assignment clauses). Accordingly, to the extent any Assumed Lease restricts the permitted use of the premises to the operation of a "Salad and Go" restaurant or a specific brand name, thereby rendering the lease unassignable to any third party, such restriction constitutes a de facto anti-assignment provision that section 365(f)(1) of the Bankruptcy Code overrides as a matter of law. To the extent any Assumed Lease contains a Use Restriction, such Use Restriction should, to the maximum extent permitted by applicable law, be deemed unenforceable against Buyer, and the Assumed Leases should be assumed and assigned to Buyer free and clear of any such Use Restriction.

45.     In addition, pursuant to section 365(f)(2)(B) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). Buyer is a publicly traded company listed on the New York Stock Exchange (NYSE: BROS) with annual revenue exceeding $1 billion, approximately 25% year-over-year revenue growth, and a 30-year operating history.

46.     Buyer operates over 1,177 drive-thru-only locations across more than 25 states, including Arizona, Nevada, California, and Texas, which are the same markets as the Sites. Buyer's drive-thru-only format occupies approximately 800 to 1,500 square feet with double drive-thru lanes, which is identical to the physical footprint of the Sites, meaning no material physical alterations to any premises would be required, traffic patterns would remain unchanged, and the operational footprint is fully compatible with existing site plans.

47.     Buyer employs over 10,000 people and maintains average unit volumes exceeding $2 million per location. Buyer is headquartered in Tempe, Arizona, the same city as several of the Sites. In light of Buyer's financial strength, operating history, identical physical format, and proven track record in the same geographic markets as the Sites, Buyer's payment of the Required Cure Costs in accordance with the APA, together with Buyer's promise to perform the Debtors' obligations under the Assumed Leases from and after the Closing, constitutes adequate assurance of Buyer's future performance under the Assumed Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

**V.     The Cure Amount Schedule**

48.     The Debtors prepared (i) a schedule setting forth the Assumed Leases proposed to be assumed and assigned to Buyer pursuant to the APA, attached hereto as **Exhibit A** (the "**Assumed Lease Schedule**"), and (ii) a schedule setting forth the Debtors' good-faith calculation

- 19 -

of the Cure Costs, if any, required to cure defaults under each Assumed Lease, attached hereto as **Exhibit B** (the "**Cure Amount Schedule**").

49.     Notice of this Motion, together with the Assumed Lease Schedule and the Cure Amount Schedule, will be served on each non-Debtor counterparty to an Assumed Lease (each, a "**Lease Counterparty**").

### Waiver of Bankruptcy Rules 6004(a), 6004(h), and 6006(d)

50.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude the Sale Order from (a) the fourteen-day stay period under Bankruptcy Rule 6004(h) applicable to orders authorizing the use, sale, or lease of property, and (b) the fourteen-day stay period under Bankruptcy Rule 6006(d) applicable to orders authorizing the assignment of an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code, such that the Sale Order shall be immediately effective and enforceable upon its entry.

### Application of Sale Proceeds

51.     Unless an order approving the Debtors' motion for approval of a DIP facility provides otherwise, the net proceeds of the Sale (after payment of Cure Costs, Lease Expenses, and other amounts required to be paid at Closing pursuant to the APA) shall be retained by the Debtors' estates and distributed in accordance with a chapter 11 plan, a distribution motion, or further order of this Court. The Debtors shall reserve from the Sale proceeds amounts sufficient to pay all quarterly fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 until the earlier of the closing of the Chapter 11 Cases or the entry of a final decree. Nothing in this Motion or the Sale Order shall be deemed to authorize any distribution of Sale proceeds to any creditor or interest holder except as set forth herein or as otherwise ordered by the Court.

**Reservation of Rights**

52.     Nothing contained herein is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code, other than the assumption and assignment of the Assumed Leases as expressly set forth herein. Likewise, if the Court grants the relief sought herein, entry of the Sale Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

**Notice**

53.     The Debtors will provide notice of this Motion, the Assumed Lease Schedule, and the Cure Amount Schedule, to the following parties or their respective counsel: (a) the Office of the United States Trustee Program for the Southern District of Texas (the "**U.S. Trustee**"); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; (f) the state attorneys general for states in which the Debtors conduct business; (g) other regulatory agencies having a regulatory or statutory interest in these cases; (h) Buyer and its counsel; (i) all counterparties to the Assumed Leases; (j) the Equity Holders party to the Side Letter; and (k) any party that has requested notice

- 21 -

pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Sale Order (i) approving the

sale of the Purchased Assets to Buyer pursuant to the APA; (ii) authorizing the Sale free and clear

of all liens, claims, encumbrances, and interests; (iii) authorizing and approving the assumption

and assignment of the Assumed Leases to Buyer; and (iv) granting such other and further relief as

the Court may deem just and appropriate

Dated: August 6, 2026                                      Respectfully submitted,
       Houston, Texas


*/s/ Omar J. Alaniz*
**REED SMITH LLP**                                         **REED SMITH LLP**
Omar J. Alaniz (24040402)                                  Amalia Sax-Bolder (*pro hac vice* pending)
Dylan T.F. Ross (24104435)                                 1900 Lawrence Street, Suite 2800
Haley B. Bray (24143584)                                   Denver, CO 80202
2850 N. Harwood Street, Suite 1500                         Telephone: 303.552.3800
Dallas, TX 75201                                           Fax:       303.552.3799
Telephone: 469.680.4200                                    E-mail:   asaxbolder@reedsmith.com
Fax:       469.680.4299
E-mail:   oalaniz@reedsmith.com
          dylan.ross@reedsmith.com
          hbray@reedsmith.com


*Proposed Counsel for Debtors and Debtors*
*in Possession*


## Certificate of Service

I certify that on August 6, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

*/s/ Omar J. Alaniz*
Omar J. Alaniz

**Exhibit A**

**Assumed Lease Schedule**

**Arizona and Nevada Leases**

| Store | Address | Market |
|---|---|---|
| 1102 | 910 S. Cooper Rd., Gilbert, AZ 85233 | PHX |
| 1103 | 3299 E. Williams Field Rd., Gilbert, AZ 85295 | PHX |
| 1104 | 5259 E. Brown Rd, Mesa, AZ 85205 | PHX |
| 1105 | 9875 W. Lower Buckeye Rd., Tolleson, AZ 85353 | PHX |
| 1106 | 2006 W. Pinnacle Peak Rd., Phoenix, AZ 85027 | PHX |
| 1107 | 1040 W. Southern Ave., Mesa, AZ 85210 | PHX |
| 1108 | 17137 N. Litchfield Rd., Surprise, AZ 85374 | PHX |
| 1109 | 719 E. Bethany Home Rd., Phoenix, AZ 85014 | PHX |
| 1110 | 5985 W. Chandler Blvd., Chandler, AZ 85226 | PHX |
| 1111 | 251 S. Power Rd., Mesa, AZ 85206 | PHX |
| 1112 | 2323 N Scottsdale Rd, Scottsdale, AZ 85257 | PHX |
| 1113 | 21429 S. Ellsworth Rd., Queen Creek, AZ 85142 | PHX |
| 1114 | 21060 N. Cave Creek Rd., Phoenix, AZ 85024 | PHX |
| 1115 | 12601 N. Paradise Village Parkway, Phoenix, AZ 85032 | PHX |
| 1116 | 710 E. Dunlap Ave., Phoenix, AZ 85020 | PHX |
| 1117 | 1902 W. Northern Ave., Phoenix, AZ 85021 | PHX |
| 1119 | 3233 E. Indian School Rd., Phoenix, AZ 85018 | PHX |
| 1120 | 909 E. Broadway Rd., Tempe, AZ 85282 | PHX |
| 1121 | 3425 W. Greenway Rd., Phoenix, AZ 85053 | PHX |
| 1122 | 7800 South Priest Drive, Tempe, AZ 85284 | PHX |
| 1123 | 1804 E. Elliot Rd., Tempe, AZ 85284 | PHX |

| 1124 | 777 W. Indian School Rd., Phoenix, AZ 85013 | PHX |
|---|---|---|
| 1125 | 3333 W. Peoria Ave., Phoenix, AZ 85029 | PHX |
| 1126 | 2020 W. Chandler Blvd., Chandler, AZ 85224 | PHX |
| 1127 | 3229 S. 48th St., Tempe, AZ 85282 | PHX |
| 1128 | 2814 S. Signal Butte Rd., Mesa, AZ 85212 | PHX |
| 1131 | 5501 E. Speedway Blvd., Tucson, AZ 85712 | TUC |
| 1132 | 8268 W. Deer Valley Rd., Peoria, AZ 85382 | PHX |
| 1133 | 10031 E. Southern Ave., Mesa, AZ 85209 | PHX |
| 1134 | 1322 E. Florence Blvd., Casa Grande, AZ 85122 | PHX |
| 1135 | 13838 N. Scottsdale Rd, Phoenix, AZ 85254 | PHX |
| 1137 | 4716 E. Ray Rd., Phoenix, AZ 85044 | PHX |
| 1138 | 17155 N. Tatum Blvd., Phoenix, AZ 85032 | PHX |
| 1143 | 1585 N Dysart Rd, Avondale, AZ 85392 | PHX |
| 1150 | 1754 W. Hunt Highway, San Tan Valley, AZ 85143 | PHX |
| 1151 | 2301 N 44th St, Phoenix, AZ 85008 | PHX |
| 1155 | 1302 S Kolb Rd, Tucson, AZ 85710 | TUC |
| 1157 | 3505 W Baseline Rd, Laveen, AZ 85339 | PHX |
| 1158 | 9121 W Glendale Ave, Glendale, AZ 85305 | PHX |
| 1159 | 2080 W River Rd, Tucson, AZ 85704 | TUC |
| 1161 | 7480 South Power Road, Gilbert, AZ 85297 | PHX |
| 1164 | 15437 W Cactus Rd, Surprise, AZ 85379 | PHX |
| 1165 | 7980 E Speedway Blvd, Tucson, AZ 85710 | TUC |
| 1168 | 4965 S Arizona Ave, Chandler, AZ 85248 | PHX |
| 1174 | 7480 S 59th Ave, Laveen, AZ 85339 | PHX |
| 1175 | 7560 W Lower Buckeye Rd, Phoenix, AZ 85043 | PHX |

| 1176 | 1956 South Country Club Drive, Mesa, AZ 85210 | PHX |
|---|---|---|
| 1903 | 2323 S Decatur Blvd, Las Vegas, NV 89102 | LAS |
| 1906 | 5325 S Fort Apache Rd, Las Vegas, NV 89148 | LAS |
| 1915 | 3385 S Durango Dr, Las Vegas, NV 89117 | LAS |
| 1917 | 1180 East Silverado Ranch Blvd, Las Vegas, NV 89123 | LAS |

**Texas and Oklahoma Leases**

| | | |
|---|---|---|
| 3064 N Goliad St, Rockwall, TX 75087 | 1431 | 3064 N Goliad St, Rockwall, TX 75087 |
| 1460 S Ferguson Pkwy, Anna, TX 75409 | 1452 | 1460 S Ferguson Pkwy, Anna, TX 75409 |
| 938 N Cooper St, Arlington, TX 76011 | 1421 | 938 N Cooper St, Arlington, TX 76011 |
| 1045 W Warrior Trail, Grand Prairie, TX 75052 | 1432 | 1045 W Warrior Trail, Grand Prairie, TX 75052 |
| 355 Lebanon Road, Frisco, TX 75036 | 1435 | 355 Lebanon Road, Frisco, TX 75036 |
| 4751 S Custer Rd McKinney, Mckinney, TX 75070 | 1440 | 4751 S Custer Rd McKinney , Mckinney, TX 75070 |
| 4601 Diaz Ave, Fort Worth, TX | 1407 | 3400 Hulen st., Fort Worth, TX 76107 |
| 3201 Lakeview Parkway, Rowlett, TX | 1419 | 3201 Lakeview Parkway, Rowlett, TX 75088 |
| 1400 Coit Rd, Plano TX | 1401 | 3940 W 15TH ST, Plano, TX 75075 |
| 10002 Marsh Ln, Dallas, TX | 1426 | 10002 Marsh Ln, Dallas, TX 75229 |
| 21021 Highland Knolls Dr, Katy, TX 77450 | 1513 | 21021 Highland Knolls Dr, Katy, TX 77450 |
| 18830 Noble Seven Ln, Sugar Land, TX 77479 | 1517 | 18830 Noble Seven Ln, Sugar Land, TX 77479 |
| 1209 E Kenosha Street, Broken Arrow, OK 74012 | 1702 | 1209 E Kenosha Street, Broken Arrow, OK 74012 |
| 11360 East 96th Street N, Owasso, OK 74055 | 1704 | 11360 East 96th Street N, Owasso, OK 74055 |

# EXHIBIT E
## CURE AMOUNT SCHEDULE
*Proposed Cure Costs Pursuant to 11 U.S.C. § 365(b)(1)*

| No. | Store # | Store Name / Location | Address | Market | Monthly Base Rent | CAM | Property Tax | Insurance | Other | Total Monthly Rent (Proposed Cure Amount) |
|---|---|---|---|---|---|---|---|---|---|---|
| **SCHEDULE A — Real Property Leases (Arizona & Nevada) — 51 Leases** | | | | | | | | | | |
| *Arizona — Phoenix Metro* | | | | | | | | | | |
| 1 | 1102 | Cooper & Warner | 910 S. Cooper Rd., Gilbert, AZ 85233 | PHX | $9,436.15 | - | - | - | - | **$9,436.15** |
| 2 | 1103 | Higley & Williamsfield | 3299 E. Williams Field Rd., Gilbert, AZ 85295 | PHX | $6,537.45 | - | - | - | - | **$6,537.45** |
| 3 | 1104 | Higley & Brown | 5259 E. Brown Rd, Mesa, AZ 85205 | PHX | $8,881.03 | $1,322.35 | - | - | - | **$10,203.38** |
| 4 | 1105 | Lower Buckeye & 99th Ave | 9875 W. Lower Buckeye Rd., Tolleson, AZ 85353 | PHX | $9,062.79 | - | - | - | - | **$9,062.79** |
| 5 | 1106 | Pinnacle Peak & 19th Ave | 2006 W. Pinnacle Peak Rd., Phoenix, AZ 85027 | PHX | $9,313.13 | - | - | - | - | **$9,313.13** |
| 6 | 1107 | Southern & Alma School | 1040 W. Southern Ave., Mesa, AZ 85210 | PHX | $9,968.97 | $860.40 | $68.32 | $14.20 | - | **$10,911.89** |
| 7 | 1108 | Litchfield & Bell | 17137 N. Litchfield Rd., Surprise, AZ 85374 | PHX | $10,446.60 | - | - | - | - | **$10,446.60** |
| 8 | 1109 | Bethany Home & 7th St | 719 E. Bethany Home Rd., Phoenix, AZ 85014 | PHX | $10,941.27 | - | - | - | - | **$10,941.27** |
| 9 | 1110 | Kyrene & Chandler | 5985 W. Chandler Blvd., Chandler, AZ 85226 | PHX | $8,109.20 | - | - | - | - | **$8,109.20** |
| 10 | 1111 | Power & Broadway | 251 S. Power Rd., Mesa, AZ 85206 | PHX | $9,248.05 | - | - | - | - | **$9,248.05** |
| 11 | 1112 | Scottsdale & Oak | 2323 N Scottsdale Rd, Scottsdale, AZ 85257 | PHX | $12,707.64 | - | - | - | - | **$12,707.64** |
| 12 | 1113 | Ellsworth & Rittenhouse | 21429 S. Ellsworth Rd., Queen Creek, AZ 85142 | PHX | $11,057.51 | $687.66 | - | - | - | **$11,745.17** |
| 13 | 1114 | Cave Creek & 101 | 21060 N. Cave Creek Rd., Phoenix, AZ 85024 | PHX | $8,848.48 | - | - | - | - | **$8,848.48** |
| 14 | 1115 | Tatum & Cactus | 12601 N. Paradise Village Parkway, Phoenix, AZ 85 | PHX | $15,355.18 | - | - | - | - | **$15,355.18** |
| 15 | 1116 | Dunlap & 7th St | 710 E. Dunlap Ave., Phoenix, AZ 85020 | PHX | $4,640.92 | - | - | - | - | **$4,640.92** |
| 16 | 1117 | Northern & 19th Ave | 1902 W. Northern Ave., Phoenix, AZ 85021 | PHX | $9,952.25 | - | $915.09 | - | - | **$10,867.34** |
| 17 | 1119 | Indian School & 32nd St | 3233 E. Indian School Rd., Phoenix, AZ 85018 | PHX | $13,291.25 | - | - | - | - | **$13,291.25** |
| 18 | 1120 | Broadway & Rural | 909 E. Broadway Rd., Tempe, AZ 85282 | PHX | $20,807.64 | $3,857.12 | - | - | - | **$24,664.76** |
| 19 | 1121 | Greenway & 35th Ave | 3425 W. Greenway Rd., Phoenix, AZ 85053 | PHX | $12,480.55 | - | - | - | - | **$12,480.55** |
| 20 | 1122 | Priest & Elliot | 7800 South Priest Drive, Tempe, AZ 85284 | PHX | $12,817.24 | - | - | - | - | **$12,817.24** |
| 21 | 1123 | Elliot & McClintock | 1804 E. Elliot Rd., Tempe, AZ 85284 | PHX | $12,960.72 | - | - | - | - | **$12,960.72** |
| 22 | 1124 | Indian School & 7th Ave | 777 W. Indian School Rd., Phoenix, AZ 85013 | PHX | $8,789.00 | $1,101.01 | - | - | $75.73 | **$9,965.74** |
| 23 | 1125 | Peoria & 35th Ave | 3333 W. Peoria Ave., Phoenix, AZ 85029 | PHX | $5,687.00 | $680.30 | $363.00 | - | - | **$6,730.30** |
| 24 | 1126 | Dobson & Chandler | 2020 W. Chandler Blvd., Chandler, AZ 85224 | PHX | $17,340.00 | $563.08 | - | - | - | **$17,903.08** |
| 25 | 1127 | 48th St & Southern | 3229 S. 48th St., Tempe, AZ 85282 | PHX | $9,565.05 | - | - | - | - | **$9,565.05** |
| 26 | 1128 | Signal Butte & Guadalupe | 2814 S. Signal Butte Rd., Mesa, AZ 85212 | PHX | $7,396.62 | - | - | - | - | **$7,396.62** |
| 27 | 1132 | 83rd Ave & Deer Valley | 8268 W. Deer Valley Rd., Peoria, AZ 85382 | PHX | $10,196.29 | - | $1,990.92 | - | - | **$12,187.21** |
| 28 | 1133 | Crismon & Southern | 10031 E. Southern Ave., Mesa, AZ 85209 | PHX | $13,292.41 | - | - | - | - | **$13,292.41** |
| 29 | 1134 | Colorado & Florence | 1322 E. Florence Blvd., Casa Grande, AZ 85122 | PHX | $5,880.42 | $382.08 | $615.93 | $27.29 | - | **$6,905.72** |
| 30 | 1135 | Scottsdale & Thunderbird | 13838 N. Scottsdale Rd, Phoenix, AZ 85254 | PHX | $15,820.20 | $258.50 | - | - | - | **$16,078.70** |
| 31 | 1137 | 48th St & Ray | 4716 E. Ray Rd., Phoenix, AZ 85044 | PHX | $18,017.45 | $495.39 | - | - | - | **$18,512.84** |

## EXHIBIT E
## CURE AMOUNT SCHEDULE
*Proposed Cure Costs Pursuant to 11 U.S.C. § 365(b)(1)*

| No. | Store # | Store Name / Location | Address | Market | Monthly Base Rent | CAM | Property Tax | Insurance | Other | Total Monthly Rent (Proposed Cure Amount) |
|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 1138 | Tatum & Bell | 17155 N. Tatum Blvd., Phoenix, AZ 85032 | PHX | $9,909.16 | - | - | - | - | $9,909.16 |
| 33 | 1143 | Dysart & McDowell | 1585 N Dysart Rd, Avondale, AZ 85392 | PHX | $11,372.91 | - | - | - | - | $11,372.91 |
| 34 | 1150 | Gary & Hunt Hwy | 1754 W. Hunt Highway, San Tan Valley, AZ 85143 | PHX | $8,333.33 | - | - | - | - | $8,333.33 |
| 35 | 1151 | Oak & 44th St | 2301 N 44th St, Phoenix, AZ 85008 | PHX | $12,063.34 | $2,272.50 | - | - | - | $14,335.84 |
| 36 | 1157 | 35th Ave & Baseline | 3505 W Baseline Rd, Laveen, AZ 85339 | PHX | $9,432.50 | - | - | - | - | $9,432.50 |
| 37 | 1158 | 91st Ave & Glendale | 9121 W Glendale Ave, Glendale, AZ 85305 | PHX | $7,324.16 | $2,403.14 | - | - | - | $9,727.30 |
| 38 | 1161 | Power & Germann | 7480 South Power Road, Gilbert, AZ 85297 | PHX | $6,406.25 | - | - | - | - | $6,406.25 |
| 39 | 1164 | Cactus & Reems | 15437 W Cactus Rd, Surprise, AZ 85379 | PHX | $6,456.25 | $448.29 | - | - | - | $6,904.54 |
| 40 | 1168 | Arizona Ave & Chandler Heights | 4965 S Arizona Ave, Chandler, AZ 85248 | PHX | $9,350.00 | $426.97 | $525.30 | $76.50 | - | $10,378.77 |
| 41 | 1174 | Baseline & 59th | 7480 S 59th Ave, Laveen, AZ 85339 | PHX | $9,909.16 | - | - | - | - | $9,909.16 |
| 42 | 1175 | 75th & Lower Buckeye | 7560 W Lower Buckeye Rd, Phoenix, AZ 85043 | PHX | $8,185.84 | $236.40 | - | - | - | $8,422.24 |
| 43 | 1176 | Country Club & Baseline | 1956 South Country Club Drive, Mesa, AZ 85210 | PHX | $10,416.67 | - | - | - | - | $10,416.67 |
| *Arizona — Tucson* | | | | | | | | | | |
| 44 | 1131 | Speedway & Craycroft | 5501 E. Speedway Blvd., Tucson, AZ 85712 | TUC | $9,067.82 | - | - | - | - | $9,067.82 |
| 45 | 1155 | Kolb & 22nd | 1302 S Kolb Rd, Tucson, AZ 85710 | TUC | $9,880.41 | $288.68 | $1,055.88 | $12.77 | - | $11,237.74 |
| 46 | 1159 | River & La Cholla | 2080 W River Rd, Tucson, AZ 85704 | TUC | $7,370.00 | - | - | - | - | $7,370.00 |
| 47 | 1165 | Speedway & Patano | 7980 E Speedway Blvd, Tucson, AZ 85710 | TUC | $6,014.16 | - | ($97.08) | - | - | $5,917.08 |
| *Nevada — Las Vegas* | | | | | | | | | | |
| 48 | 1903 | Decatur & Sahara | 2323 S Decatur Blvd, Las Vegas, NV 89102 | LAS | $10,000.00 | $9,827.41 | $1,614.88 | $702.40 | - | $22,144.69 |
| 49 | 1906 | Fort Apache & Hacienda | 5325 S Fort Apache Rd, Las Vegas, NV 89148 | LAS | $10,416.67 | $2,325.63 | - | - | - | $12,742.30 |
| 50 | 1915 | Durango & Desert | 3385 S Durango Dr, Las Vegas, NV 89117 | LAS | $8,483.33 | $1,449.39 | - | - | - | $9,932.72 |
| 51 | 1917 | Silverado & Maryland | 1180 East Silverado Ranch Blvd, Las Vegas, NV 89 | LAS | $8,750.00 | $354.90 | $208.48 | $26.34 | - | $9,339.72 |
| **Subtotal — SCHEDULE A** | | | | | **$517,990.42** | **$30,241.20** | **$7,260.72** | **$859.50** | **$75.73** | **$556,427.57** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **SCHEDULE B — Texas Leases (Texas & Oklahoma) — 14 Leases** | | | | | | | | | | |
| *Texas — Dallas/Fort Worth* | | | | | | | | | | |
| 52 | 1401 | Plano & Coit | 3940 W 15th St, Plano, TX 75075 | DAL | $7,437.50 | - | - | - | - | $7,437.50 |
| 53 | 1407 | Hulen & Diaz/Fort Worth | 4601 Diaz Ave / 3400 Hulen St., Fort Worth, TX 761 | DAL | $11,250.00 | - | - | - | - | $11,250.00 |
| 54 | 1419 | Rowlett | 3201 Lakeview Parkway, Rowlett, TX 75088 | DAL | $7,916.66 | - | - | - | - | $7,916.66 |
| 55 | 1421 | Cooper/Arlington | 938 N Cooper St, Arlington, TX 76011 | DAL | $7,500.00 | - | - | - | - | $7,500.00 |
| 56 | 1426 | Marsh Ln/Dallas | 10002 Marsh Ln, Dallas, TX 75229 | DAL | $10,000.00 | - | - | - | - | $10,000.00 |
| 57 | 1431 | Goliad/Rockwall | 3064 N Goliad St, Rockwall, TX 75087 | DAL | $6,666.67 | $212.24 | - | - | - | $6,878.91 |
| 58 | 1432 | Warrior Trail/Grand Prairie | 1045 W Warrior Trail, Grand Prairie, TX 75052 | DAL | $7,500.00 | - | - | - | - | $7,500.00 |

**EXHIBIT E**
**CURE AMOUNT SCHEDULE**
*Proposed Cure Costs Pursuant to 11 U.S.C. § 365(b)(1)*

| No. | Store # | Store Name / Location | Address | Market | Monthly Base Rent | CAM | Property Tax | Insurance | Other | Total Monthly Rent (Proposed Cure Amount) |
|---|---|---|---|---|---|---|---|---|---|---|
| 59 | 1435 | Lebanon/Frisco | 355 Lebanon Road, Frisco, TX 75036 | DAL | $11,250.00 | - | - | - | - | $11,250.00 |
| 60 | 1440 | Custer/McKinney | 4751 S Custer Rd, McKinney, TX 75070 | DAL | $11,250.00 | - | - | - | - | $11,250.00 |
| 61 | 1452 | Ferguson/Anna | 1460 S Ferguson Pkwy, Anna, TX 75409 | DAL | $7,500.00 | - | - | - | - | $7,500.00 |
| *Texas — Houston* | | | | | | | | | | |
| 62 | 1513 | Highland Knolls/Katy | 21021 Highland Knolls Dr, Katy, TX 77450 | HOU | $5,000.00 | - | - | - | - | $5,000.00 |
| 63 | 1517 | Noble Seven/Sugar Land | 18830 Noble Seven Ln, Sugar Land, TX 77479 | HOU | $10,000.00 | - | - | - | - | $10,000.00 |
| *Oklahoma — Oklahoma City* | | | | | | | | | | |
| 64 | 1702 | Kenosha/Broken Arrow | 1209 E Kenosha Street, Broken Arrow, OK 74012 | OKC | $7,500.00 | - | - | - | - | $7,500.00 |
| 65 | 1704 | 96th Street/Owasso | 11360 East 96th Street N, Owasso, OK 74055 | OKC | $6,250.00 | - | - | - | - | $6,250.00 |
| **Subtotal — SCHEDULE B** | | | | | **$117,020.83** | **$212.24** | **$0.00** | **$0.00** | **$0.00** | **$117,233.07** |
| **GRAND TOTAL — ALL ASSUMED LEASES (65 Leases)** | | | | | **$635,011.25** | **$30,453.44** | **$7,260.72** | **$859.50** | **$75.73** | **$673,660.64** |

**Notes:**

1. Cure amounts represent the Debtors' good-faith estimate of amounts necessary to cure all defaults under each Assumed Lease as of the day hereof.

2. Total Monthly Rent includes Base Rent, Common Area Maintenance (CAM), Property Tax, Insurance, and Other occupancy charges.

3. Counterparties to Assumed Leases are encouraged to review the proposed Cure Amounts and file any objection within the deadline set forth in the Sale Notice.

4. The inclusion of any lease on this Cure Amount Schedule does not constitute a commitment by the Debtors to assume such lease. The Debtors reserve all rights to determine, in their business judgment, which leases will ultimately be assumed a