**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **And Go Concepts, LLC,** *et al.*, | ) | **Case No. 26-90753 (ARP)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |

**MOTION AND MEMORANDUM OF SALT RIVER PROJECT AND TUCSON ELECTRIC POWER COMPANY TO: (A) VACATE, AND/OR RECONSIDER, AND/OR MODIFY ORDER (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES; (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES; (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; AND (IV) GRANTING RELATED RELIEF; AND (B) DETERMINE ADEQUATE ASSURANCE OF PAYMENT AS TO THE UTILITIES**
[Relates To Docket No. 57]

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

Salt River Project ("SRP") and Tucson Electric Power Company ("TEP") collectively, the "Utilities"), hereby move this Court (the "Motion") pursuant to Rule 60 of the Federal Rules of Civil Procedure, made applicable in Bankruptcy under Federal Rules of Bankruptcy Procedure 9024, to (A) vacate and/or reconsider, and/or modify the *Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment To Utility Companies; (II) Establishing Procedures For Resolving Objections By Utility Companies; (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Service; and (IV) Granting Related Relief* (the "Utility Order") (Docket

MOTION TO VACATE – PAGE 1

No. 57), and (B) to determine adequate assurance of payment as to the Utilities pursuant to 11 U.S.C. § 366(c).  In support of their Motion, the Utilities respectfully set forth the following:

**Introduction**

The plain language of Section 366(c)(2) requires a Chapter 11 debtor to provide a utility with adequate assurance of payment that is satisfactory to the utility within 30 days of the petition date.  If a debtor believes the amount of the utility's request pursuant to Section 366(c)(2) needs to be modified, the debtor can file a motion pursuant to Section 366(c)(3) seeking to modify the amount of the utility's request, which is to be heard after "notice and a hearing."  Here, the Debtors completely ignored all of the foregoing statutory requirements, including the notice requirements of Section 366 and the Utilities' due process rights, by filing the *Debtors' Emergency Motion For An Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment To Utility Companies; (II) Establishing Procedures For Resolving Objections By Utility Companies; (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Service; and (IV) Granting Related Relief* (the "Utility Motion") (Docket No. 9) on the August 4, 2026 petition date (the "Petition Date"), and scheduling it and having it heard on an *ex parte* final basis on August 7, 2026.  Unfortunately the Debtors' blatant disregard for the substantive and notice requirements of Section 366 and the Utilities' due process rights was rewarded with entry of the Utility Order, which the Utilities are now required to set aside by this Motion to assert their lawful rights.

Exhibit "J" of the *Affidavit of Service* (the "Affidavit") (Docket No. 42) reflects that the Utilities were supposedly "served" via overnight delivery with the Utility Motion, *Notice of Telephonic and Video Conference Hearing on Emergency Motions* (the "Notice") (Docket No. 26), and *Agenda For Hearing on August 7, 2026* (the "Agenda") (Docket No. 27) on August 5, 2026, with the final hearing on the Utility Motion scheduled to take place on August 7, 2026 at

1:00 p.m.   Exhibit "J" reflects that the overnight delivery to the Utilities was not sent to the attention of any person, let alone a person authorized to accept service of process on behalf of the Utilities.   As such, the Utilities never received proper or timely notice and an opportunity to be heard with respect to the final hearing on the Utility Motion that took place a day after the Utilities supposedly were served with the pleadings mentioned above.

The Utility Order provides that this Court found that "due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided . . ."  Utility Order at page 2.  As the Utilities did not receive proper or timely notice of the final hearing on the Utility Motion held one day after the Utilities supposedly received copies of the Utility Motion, Notice, and Agenda via overnight delivery, it is respectfully difficult to ascertain how a lack of any proper or timely "notice" could somehow be considered appropriate.  Nowhere in the Utility Motion is there any explanation for why "emergency relief" and a final order were required without proper notice or an opportunity to be heard being provided to the impacted Utilities.

The Utility Order also provides that "the legal and factual bases set forth in the Motion establish just cause for the relief granted herein . . ."  Utility Order at page 2.  The Utilities are not aware of the factual or legal bases for the findings that: (i) holding a hearing on no proper or timely notice to the Utilities was appropriate, or (ii) just cause was established at the *ex parte* final hearing that took place the day after the Utility Motion, Notice and Agenda were supposedly received by the Utilities via overnight delivery, justified the relief granted in the Utility Order.

The *Procedures For Complex Chapter 11 Cases In the Southern District of Texas (Effective September 18, 2024)* (the "Complex Cases Procedures") provide that final orders on motions filed pursuant to Section 366 of the Bankruptcy Code "(i) do not prejudice the right of a utility to

propose alternative procedures; and (ii) provide for a hearing not later than 30 days after the petition date upon any timely filed **objection** to the adequate assurance procedures." Complex Case Procedures at ¶ B.4.f. (emphasis added). The Utility Order does not set forth a deadline for objections to the Utility Motion or set a final hearing on the Utility Motion to take place within 30 days of the Petition Date. Rather, Section 4.(ix) of the Utility Order provides that if the Debtors and a utility are not able to reach a resolution within fourteen (14) days of the receipt of an Additional Assurance Request (that can be made at any time), the Debtors will request a hearing before the Court to determine adequate assurance of payment pursuant to Section 366(c)(3) of the Bankruptcy Code.

Moreover, without providing the Utilities with proper or timely notice and an opportunity to be heard, the Utility Order sets forth Adequate Assurance Procedures for utilities regarding any "Additional Assurance Request" for additional or different adequate assurance of payment. Specifically, Section 4.(vi) of Utility Order provides:

> The Additional Assurance Request must be made in writing and contain the following information: (i) set forth the location(s) for which utility services are provided, the account number(s) for such location(s) and the outstanding balance for each such account; (ii) a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or surety bonds; and (iii) explain why the utility provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

The foregoing procedures imposed on the Utilities through entry of the *ex parte* Utility Order are not permitted pursuant to the express terms of Section 366 and should be vacated by this Court in their entirety. Accordingly, the Utilities are filing this Motion to vacate the Utility Order,

which is not in accord with the express provisions of Section 366 of the Bankruptcy Code and the Complex Case Procedures, and request that this matter be set for the next available hearing date.

The Utilities are seeking the following cash deposits from the Debtors as assurance of payment under Section 366(c)(2), which are amounts that they are authorized to obtain pursuant to applicable state law: (a) SRP - $89,100 (2-month); and (b) TEP - $30,773 (2.5-month).  For the reasons set forth herein, the Utilities request that this Court promptly vacate the Utility Order as to the Utilities and order the Debtors to immediately provide the Utilities with adequate assurance of payment in the form of cash deposits in the amounts set forth herein.

## Jurisdiction and Venue

1.  This Court has jurisdiction over this Motion under 28 U.S.C. § 1334(b).

2.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

3.  Venue of this Motion is proper in this district pursuant to 28 U.S.C. § 1409.

## Facts

## Procedural Facts

4.  On the Petition Date, the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

5.  The Debtors' Chapter 11 bankruptcy cases are being jointly administered.

## The Utility Motion

6.  On the Petition Date, the Debtors filed the Utility Motion.

7.  Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  In

addition, as the Utilities are corporations, Rule 7004(b)(3) requires service to be served "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ."

8.      The Affidavit reflects that the Utilities were supposedly "served" via overnight delivery with the Utility Motion, Notice, and Agenda on August 5, 2026, with the final hearing on the Utility Motion scheduled to take place on August 7, 2026 at 1:00 p.m.  Exhibit "J" of the Affidavit reflects that the overnight delivery to the Utilities was not sent to the attention of any person, let alone a person authorized to accept service of process on behalf of the Utilities.  As such, the Utilities never received proper or timely notice and an opportunity to be heard with respect to the final hearing on the Utility Motion that took place a day after the Utilities supposedly were served with the pleadings mentioned above.

9.      The Utility Order provides that this Court found "due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided . . ." Utility Order at page 2.  However, as set forth herein, nothing was appropriate regarding the Debtors' lack of any proper or timely notice to the Utilities regarding the Utility Motion and the final hearing on the Utility Motion that took place a day after the Utilities supposedly received a copy of the Utility Motion.

10.      The Utility Order also provides that "the legal and factual bases set forth in the Motion establish just cause for the relief granted herein . . ." Utility Order at page 2.  Respectfully, the Utilities are not aware of the factual or legal bases for the findings that: (i) a hearing on no proper or timely notice to the Utilities was appropriate, or (ii) just cause was established at the *ex*

*parte* final hearing that took place the day after the Utilities supposedly received copies of the Utility Motion, Notice and Agenda that justified the relief granted in the Utility Order.

11.     Because the Utilities were not properly or timely served with the Utility Motion and the Debtors never attempted to contact the Utilities regarding their adequate assurance requests prior to the filing of the Utility Motion, the Utilities had no opportunity to respond to the Utility Motion or otherwise be heard at the *ex parte* final hearing on the Utility Motion that took place on August 7, 2026, despite the fact that Section 366(c)(3) (presuming this was the statutory basis for the relief sought by the Debtors) expressly requires that there be "notice and a hearing" to the Utilities.

12.     In the Utility Motion, the Debtors improperly sought to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is a bank account containing approximately $204,898.43 that supposedly reflects approximately one half of the Debtors' monthly utility charges, less any deposits held utility companies and any amounts supported by a surety bond issued in favor of any such utility company that are in excess of any outstanding prepetition amounts (the "Bank Account").  Utility Motion at ¶ 15.  The Debtors' proposal that the monies contained in the Bank Account should be net of prepetition deposit amounts or surety bond amounts in excess of any outstanding prepetition amounts does not make sense because the Debtors do not know if any of the prepetition deposit amounts will remain after recoupment of prepetition deposits against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code or if any surety bond amounts will remain after payment of final prepetition debt.  Simply put, when the Utility Motion was filed on the Petition Date, the Debtors did not know what the actual final prepetition debt amounts owed to the Utilities would be because the Utilities had not provided the Debtors with

MOTION TO VACATE – PAGE 7

final prepetition bills to avoid any assertion that the Utilities may have violated the automatic stay by issuing final prepetition bills to the Debtors.

13.     The Debtors propose to "deposit" $204,898.43 into the Bank Account, refer to the monies contained in the Bank Account as the "Adequate Assurance Deposit," and refer to the Bank Account as the "Utility Deposit Account." Utility Motion at ¶ 15.  However, monies contained in an escrow account controlled by a customer of a utility such as the proposed Bank Account are not recognized by any state public utility commission as a "cash deposit" provided by a customer to a utility.  Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated utility bank account.  Simply put, the Debtors are not proposing to provide any of their utilities with cash deposits as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

14.     The Bank Account is an unacceptable form of adequate assurance of payment for the Utilities and should not have been considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by the Utilities under Section 366(c)(2).

15.     The Debtors proposed that the monies contained in the Bank Account for each utility provider will be returned to the Debtors upon the earlier of (i) the Debtors' termination of utility services from such utility companies if there are no outstanding disputes related to post-petition amounts due, (ii) as to each amount of money contained in the Bank Account for a utility company, the assignment of a lease pertaining to such utility company, or (iii) the conclusion of the Debtors' Chapter 11 cases, if not applied sooner.  Utility Motion at ¶ 16.  As the Utilities bill the Debtors in arrears, and the Utilities would likely provide post-petition utility goods/services to

the Debtors through the effective date of any plan, or a lease rejection date, any monies contained in the Bank Account should not be returned to the Debtors until the Debtors confirm that they have paid in full all of their post-petition charges owed to the Utilities.

16.     The Utility Motion did not address why the Bank Account would be underfunded with supposedly two-weeks of utility charges, less any prepetition deposits or surety bonds amounts held by the Debtors' utility providers, when the Debtors know that the Utilities are required by applicable state laws, regulations, or tariffs to bill the Debtors monthly.  Moreover, presumably the Debtors want the Utilities to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition.  Accordingly, if the Bank Account is relevant, which the Utilities dispute, the Debtors need to explain: (A) Why they are only proposing to deposit supposed two-week amounts, less any prepetition deposit amounts or surety bond amounts, into the Bank Account; and (B) How such an insufficient amount could even begin to constitute adequate assurance of payment for the Utilities' monthly bills.

17.     The Utility Motion did not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2).  Rather, without providing any specifics, the Debtors contended that the Bank Account, "in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business," allegedly constitutes sufficient adequate assurance of future payment to the Debtors' utility providers in full satisfaction of Section 366 of the Bankruptcy Code.  Utility Motion at ¶ 18.

**The Utility Order**

18.     Following the *ex parte* final hearing on the Utility Motion that took place on August 7, 2026, this Court entered the Utility Order that same day.

19.     The Utility Order granted the Debtors' proposed form of adequate assurance of payment in the form of the Bank Account.

20.     The Utility Providers List attached as Exhibit "1" to the Utility Order reflects that the that the Bank Account will contain the following amounts on behalf of the Utilities: (a) SRP - $17,501.20; and (b) TEP - $4,948.11.

21.     As set forth in the Introduction to this Motion, the procedures established on an *ex parte* basis are not appropriate or in accord with the provisions of Section 366 of the Bankruptcy Code.  Hence, the Utilities are filing this Motion to Vacate the Adequate Assurance Procedures as to the Utilities and the *ex parte* holding in Section 2 of the Utility Order that authorizes the Bank Account as adequate assurance of payment for the Debtors' utility companies.  It is unclear how such a holding could have been reached without providing the Utilities with proper and timely notice and an opportunity to be heard on the matter as required by applicable law.

**Facts Regarding the Utilities**

22.     Each of the Utilities provided the Debtors with prepetition utility goods and/or services and have continued to provide the Debtors with utility goods and/or services since the Petition Date.

23.     Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges.  Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently

imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they must cure the arrearage within a certain period of time or their service will be disconnected.  Accordingly, under the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the Utility could cease the supply of goods and/or services for a post-petition payment default.

24.     To avoid the need to bring witnesses and have lengthy testimony regarding the Utilities' regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles.  Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web site links to their respective tariffs and/or state laws, regulations, and/or ordinances are as follows:

SRP:   Rules and Regulations:
          http://www.srpnet.com/about/rulesregs.aspx
          Price Plans: https://www.srpnet.com/prices/pdfx/ratebook.pdf

TEP:   https://www.tep.com/customer/rates/

25.     Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' estimated prepetition debt and post-petition deposit requests are as follows:

| **Utility** | **No. of Accts.** | **Estimated Prepetition Debt** | **Deposit Request** |
|---|---|---|---|
| SRP | 34 | $67,847.36 | $89,100 (2-month) |
| TEP | 7 | $14,491.69 | $30,773 (2.5-month) |

26.     SRP held prepetition deposits plus interest totaling $36,988.11 that it recouped against the prepetition debt owing to SRP from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code.  No prepetition deposit amount remains after

recoupment.  SRP also holds a surety bond in the amount of $42,525 that it will make claims upon for payment of the prepetition debt that the Debtors owe to SRP.

### Discussion

**A.      THE UTILITY ORDER SHOULD BE VACATED AS TO THE UTILITIES BECAUSE IT WAS ENTERED IN VIOLATION OF THE UTILITIES' DUE PROCESS RIGHTS AND THE UTILITY MOTION WAS NOT PROPERLY SERVED ON THE UTILITIES.**

The relief sought by the Debtors in the Utility Motion was in violation of the Utilities' due process rights, Rules 7004(b)(3) and 9014 of the Federal Rules of Bankruptcy Procedure, and Section 366(c) of the Bankruptcy Code.

**1.      The Utility Motion Was Not Properly Served In Accordance With Rules 7004(b)(3) And 9014 Of The Federal Rules Of Bankruptcy Procedure.**

Bankruptcy Rules 7004 and 9014 require that service of a motion upon a corporation be made by mail to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law.  Specifically, Rule 4(b)(3) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7004, provides for service of process by mail on a corporation as follows:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is on authorized by appointment to receive service and the statute so requires, by also mailing a copy to the defendant.

Courts have held that the notice requirements set forth in Fed. R. Civ. P. 4(b)(3) are to be strictly adhered to and that service of process must be addressed to a specific officer, managing or general agent. *See In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 305 (D. Del. 2001) (holding that notices addressed to the "Asst. Controller" were deficient because "they failed to address any of the copies of the notice to a person of authority or to a person authorized to accept

service"); *see also In re Schoon*, 153 B.R. 48 (Bankr. N.D. Cal. 1993) (holding that notices addressed to "Attn: President" did not constitute valid service upon an officer and "makes a joke of the requirement that an officer be served"); *Addison v. Gibson Equipment Co., Inc. (In re Pittman Mechanical Contractors, Inc.)*, 180 B.R. 453 (Bankr. E.D.Va. 1995) (holding that because "nationwide service of process by first class mail was a rare privilege," notice addressed to "President or Corporate Officer" was improper because no individual was named).

Adequate and timely notice of the filing of a suit is an essential element of our judicial system.  As held by the Supreme Court of the United States and reiterated by Judge McKelvie in *Golden Books*, "due process of law in any proceeding which is to be accorded finality [requires] notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Rule 4(b)(3) operates to assure that a corporate defendant is placed on actual notice of a suit filed against it and strict compliance with this notice requirement, in turn, serves to protect its due process rights as well as assure that bankruptcy matters proceed expeditiously.  *Pittman Mechanical*, 180 B.R. at 457.

The Utilities are corporations.  Therefore, Rule 7004(b)(3) requires service to be served "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ."  In addition to the Rule 7004(b)(3) requirements, Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  The Affidavit reflects that the Utilities were not properly or timely "served" with the Utility Motion. As such, the Utilities never received notice and an opportunity to be heard with respect to the

Utility Motion.  Based on the foregoing, the Utility Order should be vacated as to the Utilities because the Utility Motion was not properly served on the Utilities pursuant to Rules 7004(b)(3) and 9014 of the Federal Rules of Bankruptcy Procedure for a final hearing on the Utility Motion that took place on August 7, 2026, the day after the Utilities supposedly received a copy of the Utility Motion via overnight delivery.

### 2.      Section 366 Of The Bankruptcy Code

With respect to Section 366(c) of the Bankruptcy Code, it specifically requires that a motion under Section 366(c)(3)(A) be determined after notice and a hearing.  Moreover, the Complex Case Procedures provide that final orders on motions filed pursuant to Section 366 of the Bankruptcy Code "(i) do not prejudice the right of a utility to propose alternative procedures; and (ii) provide for a hearing not later than 30 days after the petition date upon any timely filed **objection** to the adequate assurance procedures."  Complex Case Procedures at ¶ B.4.f. (emphasis added).

Accordingly, based on all of the foregoing, it is clear that the Utilities did not receive any proper or timely notice of the final hearing on the Utility Motion that took place on August 7, 2026 at 1:00 p.m., the day after the Utilities supposedly received a copy of the Utility Motion, Notice and Agenda via overnight delivery, thereby depriving the Utilities of the opportunity to prepare for and participate at a hearing that resulted in the entry of the final Utility Order that very same day.  Therefore, this Court should vacate the Utility Order as to the Utilities and permit the Utilities to be heard on the issues raised in the Utility Motion and in this Motion.

**B.**     **THE ADEQUATE ASSURANCE PROCEDURES SET FORTH IN THE UTILITY ORDER SHOULD BE VACATED AS TO THE UTILITIES BECAUSE THOSE PROCEDURES ARE NOT IN ACCORD WITH THE EXPRESS PROVISIONS OF SECTION 366 OF THE BANKRUPTCY CODE.**

The Adequate Assurance Procedures set forth in paragraph 4 of the *ex parte* Utility Order are not permitted pursuant to the express terms of Section 366 and the Complex Case Procedures and should be vacated by this Court in their entirety as to the Utilities.  Without providing the Utilities with proper or timely notice and an opportunity to be heard, the Utility Order sets forth Adequate Assurance Procedures for utilities regarding any "Additional Assurance Request" for adequate assurance of payment for additional or different adequate assurance of payment, which provides:

1.      Pursuant to Section 4.(vi), an Additional Assurance Request must be made in writing and contain the following information:  (i) set forth the location(s) for which utility services are provided, the account number(s) for such location(s) and the outstanding balance for each such account; (ii) a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or surety bonds; and (iii) explain why the utility provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

2.      Section 4.(ix) provides that if the Debtors and a utility are not able to reach a resolution within fourteen (14) days of the receipt of an Additional Assurance Request (that can be made at any time), the Debtors will request a hearing before the Court to determine adequate assurance of payment pursuant to Section 366(c)(3) of the Bankruptcy Code.

There is no basis in Section 366 or otherwise for these provisions to be included in the Utility Order.

        **C.**       **THE UTILITY ORDER SHOULD BE VACATED AS TO THE UTILITIES BECAUSE THE RELIEF PROVIDED IS NOT IN ACCORD WITH SECTION 366(c) OF THE BANKRUPTCY CODE.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the U.S. Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **<u>amount</u>** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **<u>amount</u>** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to actually setting the form and amount of the adequate

assurance of payment acceptable to the Debtors.  Accordingly, this Court should not reward the Debtors for their failure to comply with the plain requirements of Section 366(c) and should vacate the Utility Order as to the Utilities.  *See In re Viking Offshore (USA), Inc.*, 2008 WL 782449 at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The relief requested by Debtors would reverse the burden, by making an advance determination that the proposed assurance was adequate. . . . the court lacks the power to reverse the statutory framework for provision of adequate assurance of payment."); s*ee also In re Pilgrim's Pride Corporation*, Case No. 08-45664 (DML)(Docket No. 447), Bankr. N.D. Tex., *Memorandum Order* entered on January 5, 2009 (denying debtors' motion seeking to establish adequate assurance of payment).

> **1.     The Debtors' Proposed Bank Account Is Not Relevant And Is Unsatisfactory Because It Does Not Provide the Utilities With Adequate Assurance of Payment.**

This Court should not have considered the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

i.     Unlike the statutorily approved forms of adequate assurance of payment, the Bank Account is not something held by the Utilities.  Accordingly, the Utilities have no control over how long the Bank Account will remain in place.

ii.     To access the Bank Account, the Utilities may have to incur the expense to draft, file and serve a default pleading with this Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

iii.     It is underfunded from the outset because the Utilities issue monthly bills in arrears and by the time a default notice is issued, the Debtors will have used approximately 60 days of commodity or service.

iv.    The Debtors should not close the Bank Account before all post-petition utility charges are paid in full.

v.     The Bank Account would be net of any prepetition deposits or surety bond amounts held by the Debtors' utility providers.

Accordingly, this Court should not have approved the Bank Account as adequate assurance as to the Utilities because the Bank Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

### 2.    The Debtors Have Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.

In the Utility Motion, the Debtors failed to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors did not provide this Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified. Accordingly, this Court should vacate the Utility Order as to the Utilities and require the Debtors to comply with the plain requirements of Section 366(c) with respect to the Utilities.

### E.    THIS COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), holding that an administrative expense,

without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

    i.     a cash deposit;
    ii.    a letter of credit;
    iii.   a certificate of deposit;
    iv.   a surety bond;
    v.    a prepayment of utility consumption; or
    vi.   another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate paying customers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

The Utilities bill the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. Each Utility then provides the Debtors with 20 to 30 days to pay the applicable bill, the timing of which is set forth in applicable state laws, tariffs or regulations. Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, the Utilities still have potential exposure of approximately 60 days of service based on their billing cycles. Furthermore, the amounts of the Utilities' deposit requests are the amounts

that the applicable state public service commissions, which are neutral third-party entities, permit the Utilities to request from their customers. The Utilities are not taking the position that the deposits that they are entitled to obtain under applicable state law are binding on this Court, but, instead are introducing those amounts as evidence of amounts that their regulatory entities permit them to request from their customers.

In contrast, the Debtors failed to address in the Utility Motion why this Court should modify, if at all, the amounts of the Utilities' adequate assurance of payment requests, which is the Debtors' statutory burden. Instead, the Debtors merely asked this Court to approve the Bank Account supposedly containing approximately 50% of the Debtors' monthly utility charges, less any prepetition deposit amounts or surety bond amounts held by the Debtors' utility providers. The Debtors did not provide an objective, much less an evidentiary, basis for their proposed adequate assurance in the form of the Bank Account.

Despite the fact that the Utilities continue to provide the Debtors with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive the Utilities of any adequate assurance of payment for which they are entitled to for continuing to provide the Debtors with valuable post-petition utility goods/services. Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

### Request for Hearing

The Utilities request that this Motion be heard before this Court to remedy the violations of their due process and Section 366 rights.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

i.    Vacating the Utility Order as to the Utilities;

ii.    Denying the Utility Motion as to the Utilities;

iii.    Awarding the Utilities the post-petition adequate assurance of payment deposits they have requested from the Debtors herein;

iv.    Awarding such other and further relief as this Court deems just and appropriate; and

v.    Scheduling a prompt hearing on this Motion.

Dated:  August 13, 2026

/s/ Weldon L. Moore, III
Weldon L. Moore III, Esq. (TX 14380500)
Sussman & Moore, LLP
2911 Turtle Creek Blvd., Suite 1100
Dallas, Texas  75219
Telephone:  (214) 378-8270
Facsimile:  (214) 378-8290
E-mail: wmoore@csmlaw.net

and

Russell R. Johnson III, Esq.
Virginia State Bar No. 31468
John M. Craig
Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com,
john@russelljohnsonlawfirm.com

*Co-Counsel for Salt River Project and Tucson Electric Power Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2026, a true and correct copy of the foregoing *Motion* was served via the Court's CM/ECF electronic notification system on all parties requesting same, and via email to the parties listed below.

Omar J. Alaniz
Dylan T.F. Ross
Haley B. Bray
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Email:  oalaniz@reedsmith.com, dylan.ross@reedsmith.com, hbray@reedsmith.com
*Debtors' Counsel*

Amalia Sax-Bolder
REED SMITH LLP
1900 Lawrence Street, Suite 2800
Denver, Colorado 80202
Email:  asaxbolder@reedsmith.com
*Debtors' Counsel*

Jayson B. Russ
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
Email:  jayson.b.ruff@usdoj.gov

/s/ Weldon L. Moore, III
Weldon L. Moore, III