**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I)(A) APPROVING AUCTIONS AND BIDDING PROCEDURES, (B) APPROVING PROCEDURES FOR SELECTION OF ONE OR MORE STALKING HORSE BIDDERS AND BID PROTECTIONS, (C) SCHEDULING BID DEADLINES AND AUCTIONS, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (E) APPROVING THE FORM APA, (F) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (G) ESTABLISHING PROCEDURES FOR THE ABANDONMENT OR DISPOSITION OF CERTAIN UNSOLD GOODS AND EQUIPMENT, AND (H) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER AT 2:00 P.M. (CENTRAL TIME) ON AUGUST 18, 2026, IN COURTROOM 400, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ." CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

And Go Concepts, LLC, and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Preliminary Statement

1. The Debtors filed a motion to sell 65 leasehold interests and other property (collectively, the "**Bulk Sale Assets**") to Dutch Bros on August 6, 2026 (the "**Dutch Bros Sale Motion**"). *See* Dkt. 39. The Court will conduct a hearing on the Dutch Bros Sale Motion on September 1, 2026. This Motion relates to the sale of the Debtors' assets that are not Bulk Sale Assets.

2. For purposes of this Motion, "**Western Group Assets**" means the leasehold interests and associated assets located in Arizona and Nevada, and "**Central Group Assets**" means the leasehold interests and associated assets located in Texas and Oklahoma. The Assets subject to this sale process comprise 82 sites divided into the Western Group Assets and the Central Group Assets. The Debtors seek entry of an order, substantially in the form attached hereto, (1) approving

bidding procedures (the "**Bidding Procedures**"), which are attached hereto as **Exhibit 1**[2]; (2) approving procedures for the selection of one or more stalking horse bidders and bid protections of up to 3%, pre-authorized without further Court approval; (3) scheduling bid deadlines and two auctions (collectively, the "**Auctions**"), to be conducted on consecutive days: Auction 1 for the Western Group Assets on October 1, 2026, and Auction 2 for the Central Group Assets on October 2, 2026; (4) approving the form and manner of notice thereof; (5) establishing procedures for the assumption and assignment of contracts and leases; (6) establishing procedures for the abandonment or disposition of certain unsold goods and equipment; and (7) granting related relief; and a further order, substantially in the form attached hereto, (a) authorizing the sale of assets free and clear of all liens, claims, encumbrances, and other interests; (b) authorizing assumption and assignment of assumed contracts and leases; and (c) granting related relief. The same Bidding Procedures, deadlines, and requirements shall apply uniformly to both asset groups. No bid may combine Central Group Assets with any Western Group Assets, or vice versa, and each bid must be submitted separately for one asset group (or a subset thereof). The Form APA will be posted to the electronic data room.

3. The proposed sale process provides a structured framework to maximize value from the Debtors' remaining assets through competitive bidding. The Bidding Procedures are flexible, allowing bids for all or any portion of either asset group, including individual locations, packages of locations, IP-only, equipment-only, or any other combination within a single asset group, ensuring the broadest possible participation and maximum competitive tension without permitting cross-group bids. The same Bidding Procedures, deadlines, and requirements shall apply uniformly to both asset groups. The procedures also establish a mechanism for designating one or

[2] Capitalized terms that are used but not defined herein shall have the meanings given to them in the Bidding Procedures.

more stalking horse bidders, if appropriate, to provide price certainty while preserving competition.

4. Notwithstanding the foregoing bifurcated structure, the Sellers' Board of Managers (the "**Board**") shall have the right, in the exercise of its fiduciary duties, to collapse or desegregate the two-group auction structure and conduct a single, unified Auction for all Assets if the Board determines that doing so would increase overall value to the Debtors' estates. Such determination may be made at any point prior to the conclusion of the applicable Auction(s). In the event of such desegregation, the Sellers shall provide reasonable advance notice to all Acceptable Bidders, any consultation parties, and the Office of the United States Trustee, and the Bidding Procedures shall apply to the unified Auction on a consolidated basis.

**Jurisdiction and Venue**

5. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 6003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas.

**Background**

8. On August 4, 2026, and August 5, 2026 (collectively, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3]

9. Salad and Go was founded in 2013 in Gilbert, Arizona as a quick-service, drive-through restaurant chain. The Debtors' mission was to provide fresh, affordable, health-focused food as an alternative to traditional fast food, using a compact, drive-through-only model.

10. The Debtors' operating model utilized small-footprint units with no dine-in seating and, in many locations, no kitchen, hood, grill, or fryer. Fresh ingredients were prepared, portioned, and distributed from centralized food-production facilities—a "central kitchen" or commissary model—to individual store locations.

11. At its peak, the Debtors operated approximately 146 locations across Arizona, Nevada, Texas, and Oklahoma. The rapid expansion into Texas and Oklahoma beginning in 2022, however, was challenged by (a) site accessibility and visibility issues, (b) building ahead of brand awareness in new markets, and (c) high fixed overhead from the Garland, Texas central kitchen facility (the "**Garland Facility**"), which imposed approximately $15–$20 million per year in fixed costs regardless of store-level performance.

12. In September 2025, the Debtors closed approximately 41 stores in Texas and Oklahoma. In January 2026, it announced the closure of all remaining Texas and Oklahoma stores. The Garland Facility ceased operations on or about January 11, 2026. In total, more than 70 Texas and Oklahoma stores were closed.

[3] All of the Debtors filed their voluntary petitions on August 4, 2026, except for AGC Topco, LLC and AGC Holdco, LLC, which filed their voluntary petitions on August 5, 2026, and have subsequently been jointly administered with the other debtors under Case No. 26-90753.

13. Despite the downsizing, the remaining approximately 70 Arizona and Nevada restaurants were approximately break-even at the store level after central kitchen cost allocation. However, corporate overhead, dead rent on closed-store leases, and administrative costs created unsustainable cash burn that ultimately necessitated the chapter 11 filing.

14. Prior to the Petition Date, the Debtors ceased restaurant operations at approximately 75 sites but continued paying rent through July 31, 2026, to preserve lease value. Shortly after the Petition Date, the Debtors ceased all remaining restaurant operations and are no longer operating any locations. The Debtors also engaged Stout Risius Ross, LLC ("**Stout**") and its managing director, Douglas Brickley, to serve as financial advisor and to market and sell the Debtors' remaining assets.

15. On August 15, 2026, the Sellers engaged Hilco Real Estate, LLC ("**Hilco**") to assist with negotiations with landlords regarding the resolution of leases in the Central region. In connection therewith, the Sellers reserve the right to remove any lease or leases from the Central Group Assets at any time prior to the applicable Bid Deadline. In the event the Sellers exercise such right, the Sellers shall post a notice of such removal in the electronic data room within forty-eight (48) hours of such determination.

16. The Debtors' prepetition marketing efforts identified several strategic purchasers for the leasehold portfolio. Because the Debtors' compact drive-through format does not include traditional kitchen infrastructure (no hood, grill, or fryer), the universe of potential buyers who can use the locations without significant capital expenditure is narrower than for a typical restaurant lease portfolio. Nevertheless, the marketing process generated significant interest, with indications received from parties for varying numbers of locations ranging from small packages to a substantial percentage of the entire portfolio.

17. As a result of the operational wind-down, closures, and the pending sale of the Bulk Sale Assets, the Debtors' estates are now, in practical economic terms, heavily concentrated in the monetization of leasehold real estate interests, FF&E and equipment, intellectual property, permits and licenses, and other residual assets. This Motion addresses all Assets not subject to the pending sale motion at Docket No. 39 (as supplemented) or the central kitchen asset process, so the two sale processes are complementary rather than duplicative.

## <u>The Assets</u>

18. Excluding the Bulk Sale Assets, the Debtors seek to sell all or substantially all of their assets (the "**Assets**"), or any portion thereof, either as a going concern or as a liquidation. The Assets comprise approximately 82 sites divided into the Western Group Assets and the Central Group Assets. The Bidding Procedures permit Qualified Bidders to bid on all or any portion of either asset group, including individual locations, packages of locations, intellectual property only, equipment only, or any other combination within a single asset group, but no Qualified Bid may combine assets from both groups.

19. The Assets include, but are not limited to:

a. Unexpired leases of non-residential real property comprising 82 sites across Arizona, Nevada, Texas, and Oklahoma, together with all rights thereunder, including any landlord deposits, security deposits (where transferable), and lease-related claims and rights;

b. Site-level personal property, furniture, fixtures, signage, equipment, smallwares, supplies, and inventory located at each leased premises;

c. Intellectual property, including the "Salad and Go" trade name and trademarks, recipes, proprietary operating systems, brand identity, goodwill, and related intangible assets;

d. Permits, licenses, and governmental authorizations, to the extent transferable under applicable law;

e. Books, records, and other documentation necessary to transfer or support the Assets; and

f. Any and all other assets of the Debtors' estates not otherwise excluded from this sale process.

20. For the avoidance of doubt, the Assets do not include (i) assets associated with the Debtors' central kitchen facilities or (ii) the Bulk Sale Assets. To the extent any assets fall out of or are excluded from the Bulk Sale Assets, the Debtors reserve rights to include such assets in this process if doing so maximizes value and is consistent with applicable Court orders and notice requirements.

21. Additionally, the Sellers reserve the right, in connection with ongoing landlord negotiations being conducted by Hilco, to remove any lease or leases from the Central Group Assets at any time prior to the applicable Bid Deadline. In the event the Sellers exercise such right, the Sellers shall post a notice in the electronic data room within forty-eight (48) hours of such determination. For the avoidance of doubt, this reservation shall not affect the Western Group Assets or the sale process with respect thereto.

**<u>Summary of the Bidding Procedures</u>**

22. The following summarizes the key dates and deadlines under the proposed Bidding Procedures:

a. **August 18, 2026:** Bid Procedures Hearing

b. **August 20, 2026:** Delivery of Bid Procedures, Auction Notice, Form APA, Cure Schedule, and data room access

c. **August 28, 2026, at 5:00 p.m. CT:** Deadline to submit LOI expressing stalking horse interest

d. **September 11, 2026, at 5:00 p.m. CT**: Deadline to submit binding stalking horse agreements

e. **September 17, 2026:** Announcement of stalking horse(s), if any

f. **September 24, 2026, at 5:00 p.m. CT:** Bid Deadline

g. **September 29, 2026:** Notification of Qualified Bidders

h. **October 1 and October 2, 2026, at 10:00 a.m. CT:** Auctions on consecutive days—Auction 1 for the Western Group Assets on October 1, 2026, and Auction 2 for the Central Group Assets on October 2, 2026

i. **October 6, 2026:** Sale Hearing (subject to court availability)

23. Key features of the Bidding Procedures include a Potential Bidder/Acceptable Bidder framework; the ability of bidders to submit stalking horse interests; the Sellers' right (but not obligation) to select one or more stalking horses by September 11, 2026; bid protections of up to 3% pre-authorized without further Court approval; the ability to designate multiple stalking horses provided there are no overlapping properties and no stalking horse bid spans both asset groups; Qualified Bid requirements including a 10% deposit, no financing contingencies, and demonstration of adequate assurance of future performance; a "highest or otherwise best" standard for bid evaluation; mix-and-match authority to combine components of different bids within the same asset group; a prohibition on cross-group bidding requiring each Qualified Bid to pertain solely to the Western Group Assets or the Central Group Assets (or a subset thereof); the same Bidding Procedures, deadlines, and requirements applying uniformly to both asset groups; and designation of a Back-Up Bidder for each Auction.

24. The prepetition marketing process and post-petition interest demonstrate that a competitive process will maximize value for the estates. Multiple parties have expressed interest in portions of the portfolio, supporting the flexible bid structure and mix-and-match authority that allows the Debtors to assemble the highest-value combination of bids.

25. All communications regarding the sale process shall be coordinated through Stout and its managing director, Douglas Brickley, who will manage the data room, respond to due diligence requests, and facilitate bidder inquiries.

**Stalking Horse Procedures**

26. The Bidding Procedures authorize the Debtors, in their business judgment and in consultation with any consultation parties, to designate one or more stalking horse bidders for either or both asset groups without further Court approval. Any stalking horse bidder shall be designated for only one asset group, and no stalking horse bid may span or combine the Western Group Assets and the Central Group Assets. Any stalking horse designation shall be made by September 17, 2026, with bid protections (including break-up fees and expense reimbursement) not to exceed 3% of the applicable purchase price, pre-authorized by the Bid Procedures Order.

27. The Debtors may designate multiple stalking horses, including separate stalking horses for each asset group, provided that no two stalking horse bids cover the same properties or assets and no stalking horse bid spans both asset groups. Each stalking horse bidder must satisfy all Qualified Bid requirements, including the execution of a binding asset purchase agreement on substantially the terms of the Form APA and the deposit of the required good-faith deposit.

28. The Debtors are under no obligation to select any stalking horse bidder. If no stalking horse is designated for a particular asset group, the applicable Auction will proceed without a stalking horse bid, and the Qualified Bid with the highest or otherwise best value will serve as the opening bid at the Auction for the applicable Assets.

**Assumption and Assignment Procedures**

29. By no later than August 20, 2026, the Debtors will distribute a schedule setting forth cure amounts (the "**Cure Schedule**") to all non-debtor counterparties to executory contracts and unexpired leases that may be assumed and assigned in connection with the sale. The Cure Schedule will set forth the Debtors' good-faith estimates of the amounts necessary to cure any defaults under each contract or lease pursuant to section 365(b) of the Bankruptcy Code.

30. Non-debtor counterparties will have the right to object to the proposed cure amounts and to the adequate assurance of future performance provided by any proposed assignee. All unresolved objections will be adjudicated by the Court at or before the Sale Hearing. The Successful Bidder(s) shall be responsible for paying all cure amounts as a condition of assumption and assignment.

31. Many of the Debtors' leases contain use restrictions (e.g., limiting operations to "Salad and Go" or similar concepts) or require landlord consent to assignment. The assumption and assignment procedures are designed to provide robust adequate assurance protections while ensuring that anti-assignment clauses and use restrictions do not improperly impede the sale process, consistent with section 365(f) of the Bankruptcy Code.

**Abandonment and Disposition Procedures**

32. The Debtors seek approval of procedures for the abandonment or other disposition of unsold goods, equipment, furniture, fixtures, supplies, and other personal property (collectively, "**Unsold Property**") remaining at leased premises after the conclusion of the sale process. Such property may be burdensome to the estate or of inconsequential value and benefit to the estate within the meaning of section 554(a) of the Bankruptcy Code or may be disposed of under section 363(b) for sound business reasons.

33. The proposed abandonment and disposition procedures provide that the Debtors will serve notice on affected parties (including the landlord, any known secured creditors with interests in the property, the United States Trustee, and any committee) identifying the Unsold Property and the proposed disposition. Parties in interest shall have seven (7) calendar days from service of such notice to file an objection.

34. If no objection is timely filed, the Debtors may abandon or dispose of the Unsold Property without further Court order, by certification of no objection. If an objection is timely

filed, the matter will be set for hearing before the Court. The procedures preserve all rights of secured parties with interests in any Unsold Property, and any liens shall attach to the proceeds of any disposition.

35. For de minimis sales of Unsold Property (i.e., sales yielding proceeds below a threshold to be set in the Bid Procedures Order), the Debtors may consummate such sales without further Court approval, provided that liens attach to the proceeds and all secured parties receive notice. These procedures are subject to applicable law and any restrictions in the Court's orders.

## Basis for Requested Relief

### I. Sale of Assets Under Section 363(b)

36. Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The business judgment standard governs the Court's determination of whether to approve a sale under section 363(b). Courts approve section 363(b) sales when the debtor demonstrates a sound business purpose for the proposed transaction. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (applying business judgment standard to section 363(b) sales); *In re BNP Petroleum Corp.*, 642 F. App'x 429, 434–35 (5th Cir. 2016) (sale approved where debtor demonstrated business justification); *In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) (court should approve sale if there is legitimate business justification); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

37. Auction procedures are a well-established means of maximizing value for the estate and ensuring that the sale occurs at arm's length. *In re Trans World Airlines, Inc.*, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (auction procedure is an effective means for establishing arm's-length fair value). The proposed Bidding Procedures are designed to generate maximum competitive tension and ensure the highest or otherwise best value for the Debtors' estates.

## II. Sale Free and Clear Under Section 363(f)

38. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of any interest in such property if any one of five disjunctive conditions is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) the entity holding such interest consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007).

39. Failure to object to a proposed sale constitutes consent under section 363(f)(2). *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994); *In re Gabel*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985). The Debtors submit that one or more of the conditions of section 363(f) will be satisfied with respect to the sale of the Assets.

## III. Good Faith Purchaser Protection

40. Section 363(m) of the Bankruptcy Code provides that a reversal or modification of an authorization to sell does not affect the validity of a sale to a good faith purchaser unless such authorization and sale were stayed pending appeal. The competitive auction process proposed herein, comprising two Auctions conducted on consecutive days, ensures that the sale will be conducted at arm's length and that any Successful Bidder will be a good faith purchaser entitled to the protections of section 363(m).

## IV. Assumption and Assignment Under Section 365

41. Sections 365(a) and (f) of the Bankruptcy Code authorize a debtor in possession to assume and assign executory contracts and unexpired leases, subject to cure of existing defaults and adequate assurance of future performance. The decision to assume or reject an executory

contract or unexpired lease is governed by the business judgment standard. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008).

42. Section 365(f) provides that a debtor may assign an executory contract or unexpired lease notwithstanding any provision in the contract or lease, or in applicable law, that prohibits, restricts, or conditions assignment. Anti-assignment clauses and use restrictions do not bar assignment under section 365(f). *In re Rickel Home Centers, Inc.*, 240 B.R. 826, 831–32 (Bankr. D. Del. 1999); *In re U.L. Radio Corp.*, 19 B.R. 537, 543 (Bankr. S.D.N.Y. 1982); *In re ANC Rental Corp.*, 277 B.R. 226, 239–40 (Bankr. D. Del. 2002). This authority is particularly relevant given that many of the Debtors' leases contain use restrictions limiting operations to "Salad and Go" or similar concepts.

**V. Abandonment Under Section 554**

43. Section 554(a) of the Bankruptcy Code permits a trustee or debtor in possession, after notice and a hearing, to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. Bankruptcy Rule 6007 requires that notice of a proposed abandonment be given to all creditors, indenture trustees, and committees, and provides for a hearing if a party in interest objects. The notice-and-objection framework proposed herein satisfies due process while allowing efficient disposition of property that the Debtors' estates cannot economically maintain or sell. Section 363(b) separately authorizes disposition of property in the ordinary course or for sound business reasons.

**VI. Notice**

44. Bankruptcy Rules 2002, 6004, 6006, and 9007 provide the framework for notice of sales and assumption/assignment of executory contracts and unexpired leases. Courts have broad discretion to determine the form and manner of notice that is appropriate under the circumstances.

The proposed notices—including the Auction Notice, which is attached hereto as **Exhibit 2** and provides notice of both Auctions; the notice of assumption and assignment (the "**Assumption Notice**"), which is attached hereto as **Exhibit 3**; the notice of abandonment or disposition (the "**Abandonment Notice**"), which is attached hereto as **Exhibit 4**; and the notice of auction results for each asset group (the "**Post-Auction Notice**"), which is attached hereto as **Exhibit 5**—provide comprehensive notice to all affected parties and satisfy the requirements of due process and the Bankruptcy Rules.

**Debtors' Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

45. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Notice**

46. Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Southern District of Texas; (b) all parties entitled to notice under Bankruptcy Rule 2002; (c) any official committee of unsecured creditors appointed in these cases (or, if no committee has been appointed, the Debtors' twenty largest unsecured creditors); (d) the DIP lender and its counsel; (e) all known secured parties asserting interests in the Assets; and (f) all parties who have expressed interest in acquiring the Assets. Additional notice will be provided via the

website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts and through the Auction Notice covering both Auctions to be distributed following entry of the Bid Procedures Order.

**Reservation of Rights**

47. The Debtors reserve their rights to modify the Bidding Procedures, the timeline, the form of notices, and all other aspects of the sale process in the exercise of their fiduciary duties, in consultation with any consultation parties and subject to further order of the Court. Nothing contained herein is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vii) an admission as to the validity of any liens satisfied pursuant to this Motion. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently. Without limiting the foregoing, the Sellers specifically reserve the right to remove any lease or leases from the Central Group Assets at any time prior to the applicable Bid Deadline in connection with ongoing landlord negotiations being conducted by Hilco Real Estate, LLC, subject to the notice provisions set forth in the Bidding Procedures.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order (a) approving the Bidding Procedures; (b) approving the stalking horse procedures and pre-

authorizing bid protections up to 3%; (c) scheduling the Auctions on consecutive days, with Auction 1 for the Western Group Assets on October 1, 2026, and Auction 2 for the Central Group Assets on October 2, 2026; (d) approving the form and manner of the Auction Notice, Assumption Notice, Abandonment Notice, and Post-Auction Notice; (e) authorizing the sale of the Assets free and clear of all liens, claims, encumbrances, and other interests; (f) authorizing assumption and assignment of the Assumed Contracts and Leases to the Successful Bidder(s); (g) establishing the abandonment and disposition procedures; (h) waiving the fourteen-day stay periods under Rules 6004(h) and 6006(d); and (i) granting such other and further relief as the Court deems just and proper.

Dated: August 16, 2026
Houston, Texas

Respectfully submitted,

*/s/ Omar J. Alaniz*

**REED SMITH LLP**
Omar J. Alaniz (24040402)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: 469.680.4200
Fax: 469.680.4299
E-mail: oalaniz@reedsmith.com

**REED SMITH LLP**
Amalia Sax-Bolder (admitted *pro hac vice*)
1900 Lawrence Street, Suite 2800
Denver, CO 80202
Telephone: 303.552.3800
Fax: 303.552.3799
E-mail: asaxbolder@reedsmith.com

*Proposed Counsel for Debtors and Debtors in Possession*

**Certificate of Accuracy**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify that the foregoing statements are true and accurate to the best of my knowledge.

*/s/ Omar J. Alaniz*
Omar J. Alaniz

**Certificate of Service**

I certify that on August 16, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

*/s/ Omar J. Alaniz*
Omar J. Alaniz