# EXHIBIT 2

**Summary of Proposed**
**Terms and Conditions**

# SUMMARY OF PROPOSED TERMS AND CONDITIONS
## SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT FACILITY

*August 16, 2026*

*For efficiency and simplicity, the parties intend for this term sheet, once approved by and incorporated into the DIP Orders, to serve as the operative DIP financing document (in lieu of a separate long-form DIP credit agreement), subject only to such supplemental security, guaranty, or ancillary documentation as may be required to grant, perfect, and evidence the DIP Liens. This term sheet remains non-binding until such approval and incorporation, and is subject in all respects to (i) satisfactory completion of due diligence, (ii) approval of the Bankruptcy Court on an interim and final basis, and (iii) internal credit approvals. Bracketed items [●] remain to be confirmed.*

| | |
|---|---|
| **Debtor / Borrower** | And Go Concepts, LLC (the "Borrower" or "Debtor"), as debtor and debtor-in-possession in its chapter 11 case (the "Chapter 11 Case") pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), Case No. 26-90753 (ARP) (Jointly Administered) (the "Case"). |
| **Guarantors** | Except for Garland New Market LLC and AGC-North Texas Facilities, LLC, each other entity that commences a chapter 11 case jointly administered with the Borrower (each, a "Guarantor" and, collectively with the Borrower, the "Loan Parties" or the "Debtors"). The identities of the Guarantors shall be conformed to the voluntary petitions and related corporate-authority resolutions. |
| **DIP Lender** | Rucio Investment Sarl (together with its successors and permitted assigns, the "DIP Lender"), providing new-money financing only. No prepetition secured lender roll-up is contemplated. The DIP Lender is acting as sole underwriter and initial provider of the Commitment. |
| **Equity Participation Right** | In light of the Residual Fee described below being funded out of, and diluting, residual proceeds otherwise available to holders of equity interests in the Debtor, the DIP Lender shall offer each existing member of the Debtors the right (but not the obligation) to participate in the DIP Facility (whether by sub-participation, assignment, or such other mechanic as the parties may agree) on a pro rata basis in accordance with each such member's percentage ownership of the Debtor's outstanding membership interests as of the Petition Date (the "Participation Right"). The Participation Right shall be offered on the same economic terms (including interest rate and Residual Fee) as apply to the DIP Lender's own Commitment, and the mechanics, notice period, and deadline for members to elect to participate shall be set forth in the DIP Orders or as otherwise agreed by the parties consistent with this term sheet, subject to any consent, transfer restriction, or right of first refusal provisions in the Debtors' governing documents. Members who do not elect to participate within the applicable notice period shall have no further right to fund any portion of the DIP Facility. |
| **DIP Facility** | A new-money, senior secured, superpriority delayed-draw term loan facility (the "DIP Facility") in an aggregate principal amount of up to USD $20,000,000 (the "Commitment"), comprised of two tranches:<br>• Tranche A: USD $10,000,000, available upon entry of the Interim DIP Order (as defined below) and satisfaction of customary conditions precedent.<br>• Tranche B: USD $10,000,000, available in increments of USD $2,000,000, and only following (i) entry of an order of the Bankruptcy Court approving the sale of a material portion of the Debtor's assets pursuant to section 363 of |

| | |
|---|---|
| | the Bankruptcy Code (the "Sale Order") and (ii) the Sale Hearing (as defined below) having concluded with the Bankruptcy Court approving the sale, in each case in form and substance reasonably acceptable to the DIP Lender. Following satisfaction of the foregoing conditions, Tranche B shall be available to be drawn in up to five (5) draws of USD $2,000,000 each, on such dates and subject to such advance notice as set forth in the DIP Orders or as otherwise agreed by the parties consistent with this term sheet. In addition: (x) as a condition precedent to each Tranche B draw, the APA shall remain in full force and effect and no party shall have delivered a notice of termination thereunder or a notice asserting a Material Adverse Effect; and (y) as a condition precedent to the first Tranche B draw only, the Debtors shall deliver a certificate confirming that projected net Sale Proceeds, after giving effect to all Site Adjustment Amounts, Required Cure Costs, and Lease Expenses then known, are not less than 150% of the DIP Obligations that would be outstanding if the entire Commitment were funded. Once condition (y) has been satisfied or waived at the first Tranche B draw, it shall not be retested at any subsequent Tranche B draw, and the remaining Tranche B draws shall not be subject to any condition relating to the size of the sale; provided that if the aggregate Site Adjustment Amounts increase by more than USD $5,000,000 after the first Tranche B draw, condition (y) shall be retested once at the next Tranche B draw. The DIP Lender may waive either condition in writing. For purposes of the compliance requirements and calculations in (y), on the dates such certificates are due, the Debtors shall include any asset sales or assignments of leases for value that have been approved by a Final Order of the Bankruptcy Court and are reasonably expected to generate net sale proceeds to the bankruptcy estates, in each case net of cure costs, commissions, and closing adjustments. |
| **Use of Proceeds** | Proceeds of the DIP Facility shall be used solely for: (i) working capital and general corporate purposes of the Debtors during the Case, (ii) payment of costs and expenses of administering the Case, including U.S. Trustee fees, (iii) payment of adequate protection obligations (if any) as approved by the Bankruptcy Court, (iv) other purposes consistent with the Approved Budget (as defined below) and the DIP Orders, in each case subject to the Carve-Out; and (v) any other customary uses in chapter 11 cases of similar size and nature. |
| **Sale Hearing / Milestones** | The Debtor shall comply with the following milestones (collectively, the "Milestones"), each of which may only be extended with the prior written consent of the DIP Lender (it being understood that email consent is sufficient). As the Debtor has entered into a signed asset purchase agreement for a sale of assets to Boersma Bros. LLC (the "APA") with the proposed purchaser, no bidding procedures or auction process is contemplated with respect to the purchased assets in the APA, and the sale will proceed by motion to approve the sale on the terms of the APA (subject to the Debtor's fiduciary duties and any higher or better offer requirements imposed by the Bankruptcy Court, if applicable):<br>• Petition Date: August 4, 2026 and August 5, 2026.<br>• Entry of Interim DIP Order: on or before August 21, 2026<br>• Filing of Sale Motion (seeking approval of the APA): filed August 4, 2026 [Dkt. No. 11]<br>• Entry of Final DIP Order: on or before September 15, 2026<br>• Sale Hearing: to be held, and Sale Order approving the APA entered, on or before September 1, 2026 |

| | |
|---|---|
| | • Closing of the Sale: on or before December 31, 2026 (the Outside Date under the APA)<br><br>Additional Sale Processes: entry of an order approving bidding procedures for the additional asset sales and lease assignments referenced above, on or before August 28, 2026; conclusion of any auction, on or before November 1, 2026; entry of an order approving any such sale or assignment, on or before November 15, 2026; and closing of any such sale or assignment, on or before December 15, 2026.<br>*Failure to achieve any Milestone shall, unless waived in writing by the DIP Lender, constitute an immediate Event of Default. Each Milestone deadline shall be automatically extended on a day-for-day basis to the extent it is not satisfied solely by reason of the Bankruptcy Court's calendar or scheduling, and the Sale Hearing/Sale Order Milestone shall be satisfied upon entry of the Sale Order notwithstanding that it has not then become a Final Order.* |
| **Maturity** | The earliest of: (i) January 31, 2027, (ii) three business days following the closing date of the sale contemplated by the APA, (iii) the effective date of any chapter 11 plan with respect to the Debtor, (iv) conversion of the Case to chapter 7, (v) dismissal of the Case, and (vi) acceleration following an Event of Default (the "Maturity Date"). |
| **Mandatory Prepayments** | The Debtor shall pay or prepay the DIP Obligations as follows, unless waived in writing by the DIP Lender:<br><br>• Except for the Residual Fee, an amount of the net proceeds of any sale of assets approved by the Bankruptcy Court, including the sale approved at the Sale Hearing (collectively, the "Sale Proceeds") equal to the then-outstanding DIP Obligations shall be paid directly to the DIP Lender at closing of each such sale, subject only to the Carve-Out, until the DIP Obligations have been indefeasibly paid in full in cash; no distribution of Sale Proceeds shall be made to any other secured claim, administrative expense, priority claim, general unsecured claim, or equity interest ahead of such payment, except solely for the Carve-Out and, to the extent applicable, amounts that constitute PACA/PASA trust assets that are not property of the Debtors' estates. Any Sale Proceeds in excess of the amount required to repay the DIP Obligations in full shall not be subject to this mandatory prepayment and shall be distributed in accordance with the Bankruptcy Code and applicable orders of the Bankruptcy Court;<br><br>• 100% of the net proceeds of any other asset disposition, extraordinary receipt (including, for the avoidance of doubt, any Rejection Fees and any Deposit forfeited to or retained by the Debtors under the APA), or recapitalization outside the ordinary course of business shall be paid within two business days of receipt, up to the amount of the then-outstanding DIP Obligations; and<br><br>100% of the net proceeds of any DIP, exit, recapitalization or other financing provided by another lender shall be paid within two Business Days after any such other financing is provided to Debtor. Amounts prepaid may not be reborrowed. Unless the DIP Lender otherwise directs, Sale Proceeds and other mandatory prepayment amounts applied under this section shall be applied: first, to the DIP Lender's documented out-of-pocket professional fees and expenses; second, to accrued interest; third, to outstanding principal; and last, to any other DIP Obligations then due, in each case until indefeasibly paid in full in cash. For the avoidance of doubt, the Residual Fee is not part of this waterfall and is not accelerated by any prepayment or repayment of the DIP Facility; it remains payable solely upon the Full Recovery Trigger described under "Fees" below. |

| | |
|---|---|
| **Interest Rate** | 8.00% per annum, fixed, calculated on the basis of a 360-day year for actual days elapsed, payable in kind or in cash monthly in arrears. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at the non-default rate plus 2.00% per annum (the "Default Rate"), payable on demand (which may be paid in kind upon such demand). All payments in respect of the DIP Obligations shall be made free and clear of, and without deduction or withholding for, any taxes; if any such deduction or withholding is required by applicable law, the amount payable shall be increased as necessary so that the DIP Lender receives the amount it would have received had no such deduction or withholding been made. |
| **Fees** | Residual Fee: a one-time fee equal to 20.00% of the Commitment (i.e., USD $4,000,000) (the "Residual Fee"), payable solely and exclusively upon (i) the reserve for all disputed and undisputed unpaid claims and any amounts budgeted under a chapter 11 plan (e.g., administrative expenses, priority claims, and a winddown budget reasonably acceptable to the DIP Lender) or (ii) indefeasible payment in full in cash of all allowed claims against the Debtor's estate (the "Full Recovery Trigger"). Any chapter 11 plan shall require payment of the Residual Fee promptly upon the Full Recovery Trigger. The Residual Fee shall be: (i) non-recourse to the Debtor's estate and payable solely out of amounts that would otherwise be distributable to holders of equity/membership interests in the Debtor; (ii) junior in right of payment to all allowed administrative expense, priority, secured, and general unsecured claims in the Case; (iii) expressly not an administrative expense claim, and not entitled to priority under section 503(b), 507(a), or 507(b) of the Bankruptcy Code; and (iv) excluded from the mandatory prepayment waterfall described above, such that no prepayment or repayment of the DIP Facility shall accelerate or trigger payment of the Residual Fee absent satisfaction of the Full Recovery Trigger. The DIP Orders shall further provide that (A) the Residual Fee shall be paid out of amounts otherwise distributable to holders of equity/membership interests prior to any distribution to such holders, and any chapter 11 plan, structured dismissal order, or other order providing for distributions to such holders shall so provide; and (B) the Residual Fee is a fee payable to the DIP Lender in its capacity as such, and does not constitute a distribution received by any equity holder on account of an Alternative Transaction for purposes of, and is not subject to turnover under, the side letter agreement described in the Sale Motion (the "Side Letter"). The Plan Administrator for the chapter 11 plan shall be reasonably acceptable to the DIP Lender and the Debtors.<br>• Commitment Fee: none. Waived by the DIP Lender in consideration of the Residual Fee described above.<br>• Closing Fee: none. Waived by the DIP Lender in consideration of the Residual Fee described above.<br>• Underwriting Fee: none. Waived by the DIP Lender in consideration of the Residual Fee described above.<br>*Because the Residual Fee is payable solely from residual amounts otherwise distributable to equity/members and only after all creditors are paid in full, it does not burden the estate or general creditor recoveries. This should be disclosed as such in the DIP motion, alongside the Equity Participation Right described above, to pre-empt any characterization of the fee as an estate cost or as disguised insider self-dealing.* |
| **Priority and Liens** | Pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, the DIP Lender shall be granted continuing, valid, binding, enforceable, non- |

| | |
|---|---|
| | avoidable, and automatically perfected postpetition security interests (the "DIP Liens") on cash and all tangible, intangible, real and personal property of each Loan Party, whether now owned or hereafter acquired or created, prepetition or postpetition, including without limitation all equity interests owned by any Loan Party (other than equity interests in Garland New Market LLC and AGC-North Texas Facilities, LLC, which are excluded) and all insurance proceeds, and the proceeds of each of the foregoing (collectively, the "DIP Collateral"), to secure the DIP Obligations. The DIP Collateral shall not include, and there shall be no lien or claim of any kind on: (a) causes of action under chapter 5 of the Bankruptcy Code (or applicable state law equivalents) or the proceeds thereof, (b) claims against present or former directors, officers, or managers of the Debtor for breach of fiduciary duty or similar causes of action ("D&O Claims") or the proceeds thereof; and (c) any accounts held by an escrow agent in connection with this Chapter 11 case, including the professional fee escrow, the adequate assurance escrow, and any escrow account holding good faith deposits of potential buyers of the Debtors' assets; provided that, upon release of any such escrowed funds to a Debtor, such funds shall constitute DIP Collateral. The DIP Collateral shall further exclude any assets held in trust for the benefit of claimants under PACA or PASA to the extent such assets are not property of the Debtors' estates, and the DIP Liens shall be junior to any valid, perfected, and non-avoidable prepetition deposit account control agreement or account pledge (including any granted in connection with the NMTC QLICI loans described in the First Day Declaration).<br><br>• Superpriority claims: all obligations under the DIP Facility (the "DIP Obligations") shall constitute allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over any and all administrative expenses and unsecured claims of any kind, and, subject to entry of the Final DIP Order, priority over all other claims and administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out;<br><br>No priming: the DIP Facility does not prime any valid, perfected, and non-avoidable prepetition lien. The DIP Liens shall be effective and automatically perfected upon entry of the Interim DIP Order (subject to occurrence of the applicable closing/funding date), without the necessity of executing, filing, or recording any control agreements, financing statements, or other perfection documents; provided that the Debtor shall take such other commercially reasonable steps (including execution and filing of UCC financing statements) as the DIP Lender may reasonably request to further evidence and perfect the DIP Liens. |
| **Adequate Protection** | Because the DIP Facility does not prime any existing prepetition secured lender's liens (including the liens securing the NMTC QLICI loans, which are obligations of Debtors that are not Loan Parties and are not primed hereby), no adequate protection package under section 364(d) of the Bankruptcy Code is required. |
| **Carve-Out** | The DIP Liens and superpriority claims shall be subject to a customary carve-out (the "Carve-Out") for: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), plus statutory interest, if any, under 31 U.S.C. § 3717, in each case without regard to delivery of a Carve-Out Trigger Notice (as defined below); (b) reasonable fees and expenses of a chapter 7 trustee, if any, under section 726(b) of the Bankruptcy Code, up to an aggregate amount of USD $25,000 (also without regard to a Carve-Out Trigger Notice); and (c) to the extent allowed at any time, all accrued and unpaid fees and expenses of professionals retained by the Debtor, subject to amounts set forth in the Approved Budget, that (i) are incurred on or before the |

| | |
|---|---|
| | second business day following delivery of a Carve-Out Trigger Notice, or (ii) are incurred after such date, subject to an aggregate cap of USD $500,000.<br><br>“Carve-Out Trigger Notice” means a written notice delivered by the DIP Lender to the Debtor's lead restructuring counsel and the U.S. Trustee following an Event of Default, as further specified in the DIP Orders.<br><br>Professional Fee Reserve: contemporaneously with the initial funding of the DIP Facility, and on a weekly basis thereafter until delivery of a Carve-Out Trigger Notice, the Debtor shall transfer DIP Facility proceeds equal to budgeted weekly professional fees and expenses into a segregated escrow account (the “Professional Fee Reserve”), with notice to the DIP Lender. Amounts funded into the Professional Fee Reserve shall be deemed used upon deposit, and any amount remaining after payment of allowed fees shall constitute DIP Collateral. The Professional Fee Reserve shall not itself cap the professional fees included in the Carve-Out. |
| **Conditions Precedent** | • Entry of an interim order of the Bankruptcy Court, in form and substance reasonably acceptable to the DIP Lender, approving this term sheet and the DIP Facility on an interim basis (the “Interim DIP Order”), and, in due course, a final order (the “Final DIP Order” and, together with the Interim DIP Order, the “DIP Orders”), with this term sheet attached as an exhibit to, and incorporated by reference into, the DIP Orders;<br>• Delivery and Bankruptcy Court approval of a 3-week cash flow budget reasonably acceptable to the DIP Lender for an initial interim period, and prior to entry of the Final DIP Order, a 13-week cash flow budget reasonably acceptable to the DIP Lender (together, the “Approved Budget”), to be updated and re-approved periodically;<br>• Execution of such supplemental security agreements, guaranties, UCC financing statements, or other ancillary documents (if any) as the DIP Lender reasonably requires to grant, evidence, and perfect the DIP Liens, it being agreed that no separate long-form DIP credit agreement is contemplated, together with a schedule of all deposit and securities accounts of the Loan Parties identifying any account subject to a control agreement, account pledge, or third-party setoff right;<br>• No material adverse change in the business, assets, or prospects of the Debtor since the entry of the Interim DIP Order;<br>• Accuracy of representations and warranties and absence of any continuing default; and<br>• Payment of all fees and expenses (including DIP Lender’s professional fees[1]) then due. |
| **Budget / Reporting Covenants** | The Debtor shall deliver to the DIP Lender (i) the Approved Budget and periodic variance reports in form and substance reasonably satisfactory to the DIP Lender (with permitted variances of 15% on a line-item basis and 15% on a cumulative basis), (ii) weekly cash flow reporting, and (iii) such other financial and case-status reporting as the DIP Lender may reasonably request, including copies of all material pleadings filed in the Case. The Debtors shall also notify the DIP Lender in writing, within two (2) business days, of any notice delivered or received under |

[1] Payment of the DIP Lender’s professional fees shall be subject to a reasonableness standard.

| | |
|---|---|
| | Section 6.3(c) or Section 7.3 of the APA rejecting or excluding any Site, together with the aggregate Site Adjustment Amounts then applicable. |
| **Representations & Covenants** | Customary for facilities of this type, including affirmative covenants (delivery of financials, maintenance of insurance, compliance with the Approved Budget and Milestones, cooperation with sale process) and negative covenants (limitations on additional indebtedness, liens, asset dispositions outside the ordinary course or approved sale process, and amendments to first-day or sale-related orders without DIP Lender consent). |
| **Events of Default** | • Failure to make any payment of principal, interest, or fees when due, or failure to comply with the mandatory prepayment waterfall described above;<br>• Failure to meet any Milestone, or termination of the APA, unless concurrently replaced by a definitive agreement for an Alternative Transaction (as defined in the APA) providing for repayment of the DIP Obligations in full in cash at closing;<br>• Breach of the Approved Budget beyond permitted variances;<br>• Conversion of the Case to chapter 7, appointment of a chapter 11 trustee or examiner with expanded powers, or dismissal of the Case;<br>• Reversal, vacatur, or material modification of the DIP Orders without DIP Lender consent;<br>• Any lien or claim senior to or pari passu with the DIP Liens or superpriority claims (other than the Carve-Out and the Termination Fee payable to the purchaser under the APA) being granted or allowed; and<br>• Other customary defaults (cross-default, breach of representations, change of control, etc.), in each case subject to notice and cure periods to be negotiated. |
| **Remedies** | Upon an Event of Default that is not waived or cured within any applicable cure period, and following notice to the Debtor, any statutory committee, and the U.S. Trustee, and a hearing (unless waived or shortened by the Bankruptcy Court), the DIP Lender may, among other remedies, terminate the Commitment, declare all DIP Obligations immediately due and payable, and exercise remedies with respect to its collateral, subject to the terms of the DIP Orders. |
| **Waivers** | The DIP Orders shall include the following, with such provisions consistent with common practice in the Bankruptcy Court: (i) waiver of the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement the DIP Facility and permit exercise of remedies upon an Event of Default; and (ii) a waiver by the DIP Lender (not the Debtor) of any right to credit bid the DIP Obligations pursuant to section 363(k) of the Bankruptcy Code in connection with the sale of assets to Boersma Bros. LLC d/b/a Dutch Bros pursuant to the APA; provided that such waiver shall automatically terminate and be of no further force or effect upon any termination of the APA or upon the Debtors' pursuit of an Alternative Transaction (as defined in the APA). For the avoidance of doubt, the DIP Lender does not waive, and expressly reserves, its right to credit bid any outstanding DIP Obligations, except with respect to the Residual Fee, under section 363(k) of the Bankruptcy Code in connection with any other sale or disposition of the Debtors' assets, including any sale conducted pursuant to bidding procedures approved by the Bankruptcy Court. No waiver of the Debtor's or the estate's rights under section |

| | |
|---|---|
| | 506(c) or section 552(b) of the Bankruptcy Code, and no "no marshaling" provision, is requested or contemplated. |
| **Expenses** | All reasonable and documented out-of-pocket fees, costs, and expenses of the DIP Lender (including fees and expenses of its counsel) incurred in connection with the DIP Facility and the Case shall be paid by the Debtor, subject to an aggregate cap of USD $325,000, with fees and expenses incurred through closing included for payment out of the first draw under the DIP Facility, and fees and expenses incurred thereafter payable as they come due up to the cap, subject to the DIP Orders. In addition, and not subject to the foregoing cap, the Debtors shall indemnify and hold harmless the DIP Lender and its affiliates and their respective officers, directors, employees, advisors, and agents from and against all losses, claims, damages, liabilities, and reasonable and documented out-of-pocket expenses arising out of or in connection with the DIP Facility or the Case, other than to the extent resulting from the gross negligence or willful misconduct of the indemnified party as determined by a final, non-appealable order of a court of competent jurisdiction. |
| **Insider Status; Disclosure** | The DIP Lender is an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code. The Debtor shall expressly disclose the DIP Lender's insider status, and shall separately identify each of the extraordinary provisions of the DIP Facility (including the Residual Fee, the Equity Participation Right, the DIP Liens, and the Carve-Out), in the DIP Motion in accordance with Bankruptcy Rule 4001(c)(1)(B), and shall request a finding that the DIP Lender is extending credit in good faith entitled to the protections of section 364(e) of the Bankruptcy Code in each of the DIP Orders. |
| **Amendments** | No amendment or waiver of any provision of this term sheet or the DIP Facility shall be effective unless in writing and agreed by the DIP Lender and the Debtor, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose given. |
| **Governing Law** | State of Delaware, without regard to conflict-of-laws principles, subject at all times to the exclusive jurisdiction of the Bankruptcy Court (U.S. Bankruptcy Court for the Southern District of Texas, Houston Division). |
| **Counsel to DIP Lender** | Okin Adams Bartlett Curry LLP |
| **Status of this Term Sheet** | This term sheet is intended, for efficiency and simplicity, to constitute the operative and controlling DIP financing document upon its approval by, and incorporation by reference into, the DIP Orders — the parties do not intend to negotiate or execute a separate long-form DIP credit agreement. Any mechanics not fully specified herein (e.g., draw notice periods, participation election deadlines) shall be set forth in the DIP Orders or agreed by the parties consistent with this term sheet. Until such Bankruptcy Court approval, this term sheet remains non-binding and does not constitute a commitment to lend. |

*[Remainder of page intentionally left blank — signature blocks / acknowledgment to follow, to be executed by the Debtor and the DIP Lender and attached as an exhibit to the DIP Orders.]*