**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**STIPULATION AND AGREED ORDER TO TERMINATE THE (I) MASTER SERVICES AND LICENSE AGREEMENT, (II) SHARED SERVICES AND EMPLOYEE SECONDMENT AGREEMENT, AND (III) GUEST GIVE AGREEMENT BETWEEN THE DEBTORS AND SALAD AND GO CHARITIES**

**WHEREAS**, And Go Concepts, LLC, doing business under the trade name Salad and Go (the "**Company**" or "**Debtor**"), is a debtor in the above-captioned Chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division; and

**WHEREAS**, Salad and Go Charities (the "**Charity**") is a not-for-profit corporation incorporated under the laws of the State of Texas and recognized as exempt from U.S. federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and is the non-debtor counterparty to each of the agreements described herein; and

**WHEREAS**, the Company and the Charity are parties to that certain Master Services and License Agreement dated September 16, 2024 (the "**Master Agreement**"), pursuant to which the Company provides the Charity with operational resources, including communications, marketing,

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.

creative services, event planning, and financial planning support; annual program funding; personnel services, including a Charity Director and Program Manager on a secondment basis; travel management; office space and equipment; website and e-commerce support; insurance; and a license to use certain trademarks, including Brand-Only Marks on a non-exclusive basis and Charity-Focused Marks on an exclusive basis; and

**WHEREAS**, the Company and the Charity are parties to that certain Shared Services and Employee Secondment Agreement (Brandi Hale – Executive Director), effective January 1, 2026 (the "**Shared Services Agreement**"), entered into pursuant to the Master Agreement, which documents the secondment of Brandi Hale to the Charity as Executive Director and establishes the associated cost-sharing and reimbursement framework whereby the Charity reimburses the Company for the allocated portion of the seconded employee's salary, payroll taxes, benefits costs, and other employment-related expenses; and

**WHEREAS**, the Company and the Charity are parties to that certain Charitable Campaign and License Agreement dated September 20, 2024 (the "**Guest Give Agreement**" and, collectively with the Master Agreement and the Shared Services Agreement, the "**Agreements**"), pursuant to which the Company may conduct month-long charitable promotions known as "Guest Give" at its retail stores during which the Company collected monetary donations from customers for the benefit of the Charity, and each party grants the other a limited, non-exclusive license to use the other's trademarks and promotional materials in connection with the Campaign (as defined in the Guest Give Agreement); and

**WHEREAS**, in light of the Debtors' cessation of restaurant operations and the Charity's planned wind-down, the Debtor and the Charity have determined that continued performance

under the Agreements is neither feasible nor in the best interests of either party, and accordingly the parties desire to terminate the Agreements; and

**WHEREAS**, the Debtor and the Charity have agreed to the termination of the Agreements on the terms and conditions set forth herein.

**NOW, THEREFORE**, it is stipulated by the parties and upon approval by the Bankruptcy Court, ordered that:

1. The Master Services and License Agreement dated September 16, 2024, by and between the Company and the Charity, shall terminate effective as of August 23, 2026 (the "**Termination Date**").

2. The Shared Services and Employee Secondment Agreement (Brandi Hale – Executive Director), effective January 1, 2026, by and between the Company and the Charity, shall terminate effective as of the Termination Date.

3. The Charitable Campaign and License Agreement dated September 20, 2024, by and between the Company and the Charity, shall terminate effective as of the Termination Date. All remaining Promotion Periods and any Renewal Terms (each as defined in the Guest Give Agreement) are hereby terminated, and no further Promotions shall be conducted under the Guest Give Agreement.

4. Except as expressly set forth herein or as otherwise provided in the surviving provisions of the Agreements, upon the Termination Date, all obligations of the parties under the Agreements shall cease.

5. The Charity shall cease using the Charity-Focused Marks on and after the Termination Date. For the avoidance of doubt, the Charity shall not receive any rights in the Brand-Only Marks (as defined in the Master Agreement and set forth on Exhibit A thereto), which shall remain the exclusive property of the Company.

6. On and after the Termination Date, and subject to Paragraph 7 below, the Charity shall cease all use of the Brand-Only Marks, the Charity-Focused Marks, and any other trademark, service mark, trade name, logo, domain name, copyrighted work, or other intellectual property owned by the Company (collectively, the "**Company IP**"), and shall not make, authorize, or license any new use of the Company IP, including in connection with any solicitation, fundraising, campaign, event, publication, advertisement, or promotional activity.

7. Notwithstanding Paragraph 6 above or any provision of the Agreements to the contrary, the Charity shall have no obligation to remove, recall, delete, destroy, take down, alter, or seek the removal of any materials bearing or incorporating the Company IP that were created, published, posted, distributed, or otherwise placed into circulation on or before the Termination Date (collectively, the "**Residual Materials**"), including any such materials appearing on websites, social media platforms, search engine results, third party publications or directories, internet archives, printed collateral, signage, or merchandise, and the Charity shall have no obligation to monitor or police the Company IP or any third party use thereof. The Residual Materials may remain in place on an as is, where is basis. The continued existence, availability, or passive display of the Residual Materials shall not constitute use of the Company IP by the Charity for purposes of Paragraph 6, provided that the Charity does not republish, boost, promote, or otherwise affirmatively redistribute any Residual Materials on or after the Termination Date. The Company, on behalf of itself and its successors and assigns, including any purchaser or assignee

of the Company IP, covenants not to assert any claim against the Charity or its officers, directors, employees, or agents arising from the continued existence of the Residual Materials.

8. Nothing in this Stipulation and Agreed Order shall prohibit the Charity from (a) using its legal corporate name in connection with its wind-down, dissolution, and post-dissolution obligations, including in filings with any governmental authority, tax filings, banking and insurance matters, and donor, grantor, and recordkeeping communications, or (b) making truthful and factual references to its historical relationship with the Company.

9. Notwithstanding any provision of the Agreements to the contrary, the Charity shall cooperate with the Debtors' reasonable requests for access to the Charity's books and records relating to the Agreements and the Earmarked Charitable Funds through the earlier of (a) the closing of the Chapter 11 Cases or (b) the date that is twelve (12) months after the Termination Date.

10. The Charity shall pay to the Company any outstanding reimbursable costs accrued under the Shared Services Agreement prior to the Termination Date within thirty (30) days of receipt of the Company's final invoice therefor, consistent with Section 6.4 of the Shared Services Agreement.

11. The parties acknowledge that disbursement of the Earmarked Charitable Funds (as defined in the Amended Cash Management Motion [Dkt. No. 170]) has been or shall be made pursuant to the Final Cash Management Order [Dkt. No. 226] entered in connection therewith, and that the termination of the Guest Give Agreement shall not affect or impair the authorization to disburse such funds.

12. Nothing in this Stipulation and Agreed Order shall constitute a waiver or release of any claims, rights, or defenses that any party may have against the other arising under or in connection with any Agreement prior to the Termination Date.

13. This Court retains jurisdiction to enforce the terms of this Stipulation and Agreed Order.

DATED: ________________, 2026

________________________________________
THE HONORABLE ALFREDO R. PÉREZ
UNITED STATES BANKRUPTCY JUDGE

Respectfully submitted this 15th day of September 2026.

*/s/ Brandi Hale*
Name: Brandi Hale
Title: Executive Director
Salad and Go Charities

*/s/ Adiza Fraser*
Name: Adiza Fraser
Title: President
Salad and Go Charities

**REED SMITH LLP**

*/s/ Omar J. Alaniz*
OMAR J. ALANIZ
SBN: 24036866
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
Email: OAlaniz@reedsmith.com
*Counsel for And Go Concepts, LLC*

**AGREED ORDER**

It is so ORDERED that the above Stipulation is APPROVED, and the termination of the Agreements (as defined in the Stipulation) is approved effective as of the Termination Date.

DATED: ________________, 2026

________________________________________
THE HONORABLE ALFREDO R. PÉREZ
UNITED STATES BANKRUPTCY JUDGE