**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| **Debtors.**[1] | § | **(Jointly Administered)** |

**NOTICE OF REVISED PROPOSED ORDER APPROVING THE DEBTORS' NON-BULK SALE MOTION**

[Relates to Dkt. Nos. 97, 133, 196, 240, 490, and 558]

**PLEASE TAKE NOTICE** that on August 27, 2026, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed their Non-Bulk Sale Motion [Dkt. No. 196] (the "**Non-Bulk Sale Motion**")[2];

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider final approval of the Non-Bulk Sale Motion and the sales contemplated thereunder is scheduled for October 14, 2026, at 9:00am (prevailing Central Time);

**PLEASE TAKE FURTHER NOTICE** that on October 12, 2026, the Debtors filed a *Notice of Proposed Order Approving the Debtors' Non-Bulk Sale Motion* [Dkt. No. 558] (such proposed order therein, the "**Non-Bulk Sale Order**");

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning given to such terms in the Non-Bulk Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a revised Non-Bulk Sale Order (the "**Revised Non-Bulk Sale Order**"), which reflects comments received and incorporated;

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a redline of the Revised Non-Bulk Sale Order against the Non-Bulk Sale Order; and

**PLEASE TAKE FURTHER NOTICE** that any party in interest may obtain a copy of the Revised Non-Bulk Sale Order and related exhibits at no charge by emailing Debtors' counsel at rmclellarn@reedsmith.com or by accessing the filed version of this Notice on the Debtors' claim agent's website, https://restructuring.ra.kroll.com/AndGoConcepts/Home-Index.

Dated: October 14, 2026
Houston, Texas

Respectfully submitted,

*/s/ Omar J. Alaniz*
**REED SMITH LLP**
Omar J. Alaniz (24040402)
Haley B. Bray (24143584)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: 469.680.4200
Fax: 469.680.4299
Fax: 469.680.4299
E-mail: oalaniz@reedsmith.com
hbray@reedsmith.com

**REED SMITH LLP**
Amalia Sax-Bolder (admitted *pro hac vice*)
1900 Lawrence Street, Suite 2800
Denver, CO 80202
Telephone: 303.552.3800
Fax: 303.552.3799
E-mail: asaxbolder@reedsmith.com

*Counsel for Debtors and Debtors in Possession*

# **Exhibit A**

**Revised Non-Bulk Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| **Debtors.**[1] | § | **(Jointly Administered)** |

**ORDER (I) APPROVING THE NON-BULK SALE OF ASSETS TO THE SUCCESSFUL BIDDERS UNDER THEIR RESPECTIVE FINAL PURCHASE AGREEMENTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**
[Relates to Dkt. Nos. 97, 133, 196, 240, and 490]

Upon the motions [Dkt. Nos. 97, 133, and 196] (collectively, the "**Non-Bulk Sale Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), including And Go Concepts, LLC (the "**Seller**"), for entry of an order (this "**Non-Bulk Sale Order**") (a) approving and authorizing the sale (the "**Non-Bulk Sale**") of certain of the Debtors' assets, including unexpired leases, site-level personal property and FF&E, intellectual property (including the Salad and Go trade name, trademarks, recipes, operating systems, and related goodwill), permits, licenses, books and records, and all other assets not otherwise excluded

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.
[2] Capitalized terms used herein but not defined shall the meaning given to such terms in the Non-Bulk Sale Motion or the APA, as applicable. Unless the context otherwise requires, each reference in this Non-Bulk Sale Order to "the Buyer," the "Successful Bidder," the "Buyer Parties," the "APA," the "Purchase Price," the "Deposit," the Successful Bid," the "Closing," or the "Closing Date" shall refer to each Buyer and its Buyer Parties severally, and to such Buyer's APA, Purchase Price, Deposit, Successful Bid, Closing, and Closing Date, solely with respect to the Non-Bulk Sale Assets and Assumed Contracts/Leases acquired by such Buyer.

(collectively, the "**Non-Bulk Sale Assets**"), but excluding assets associated with the Debtors' central kitchen facilities and assets sold under the Bulk Sale Order, free and clear of liens, claims, encumbrances, and other interests, to each of the successful bidders identified on **Exhibit B** hereto (each, a "**Successful Bidder**" or "**Buyer**," and collectively, the "**Successful Bidders**" or "**Buyers**"), each under its respective final purchase agreement substantially in the forms attached hereto as Exhibits A-1 through A-6, respectively (collectively, **Exhibit A**) (each, as amended or modified, an "**APA**," and collectively, the "**APAs**"), and all other ancillary documents related thereto, (b) authorizing and approving the sale (including all actions taken or required to be taken in connection with the implementation and consummation of the Non-Bulk Sale) of the Non-Bulk Sale Assets, (c) authorizing the assumption and assignment of executory contracts and unexpired leases referenced in the APAs, upon the applicable Closing, and (d) granting related relief, all as more fully set forth herein and in the Non-Bulk Sale Motion; and the Court having entered the Order Approving Bidding Procedures, Auctions, and Related Relief [Dkt. No. 240] (the "**Bidding Procedures Order**") approving the Non-Bulk Bidding Procedures (as revised, the "**Non-Bulk Sale Bidding Procedures**" or "**Non-Bulk Bidding Procedures**"); and the Debtors having conducted a single, unified auction for all of the Non-Bulk Sale Assets on September 30, 2026 (the "**Non-Bulk Sale Auction**" or "**Non-Bulk Auction**"); and the Debtors having filed the *Notice of Auction Results, Successful Bidders for Non-Bulk Sale* [Dkt. No. 490] (the "**Notice of Auction Results**"); and the Debtors having determined that each Buyer submitted the highest or otherwise best bid for the Non-Bulk Sale Assets set forth opposite its name on Exhibit B and that each Buyer is a Successful Bidder for such Non-Bulk Sale Assets; and the Court having conducted a hearing on October 14, 2026 (the "**Non-Bulk Sale Hearing**"); and the Court having reviewed and considered the APAs, the Non-Bulk Sale Motion, all relief related thereto, the objections thereto,

and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Non-Bulk Sale Motion, including, among other things, the Declaration of Douglas J. Brickley [Dkt. No. 537-2] (the "**Brickley Declaration**") and the Buyers, including among other things, the statements made by counsel on the record at the hearing; and it appearing that due notice of the Non-Bulk Sale Motion, Non-Bulk Sale Hearing, and the APAs has been provided; and the Court having held a hearing on the Non-Bulk Sale and the relief requested in the Non-Bulk Sale Motion, at which time all parties were offered an opportunity to be heard with respect to the Non-Bulk Sale Motion; and it appearing that the relief requested in the Non-Bulk Sale Motion, solely with respect to the Approved Leases (as defined herein) and the other Non-Bulk Sale Assets approved herein, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Non-Bulk Sale Motion establish just cause for the relief granted herein; and after due deliberation it is hereby:

**FOUND, CONCLUDED, AND DETERMINED THAT:**[3]

A. **Petition Date.** On August 4, 2026, and August 5, 2026, (collectively, the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 24, 2026, the United States Trustee for the Southern District of Texas appointed the Official Committee of Unsecured Creditors (the "**Committee**"). Dkt. No. 154.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **Jurisdiction and Venue**. The Court has jurisdiction to consider the Non-Bulk Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and the Non-Bulk Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Statutory Predicates**. The statutory bases for the relief sought in the Non-Bulk Sale Motion are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the applicable Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**") and the Complex Case Procedures.

D. **Final Order**. This Non-Bulk Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Non-Bulk Sale Order and authorizes the closing of all transactions contemplated hereby and in the APA without regard to any stay or delay in its implementation, and expressly directs entry of judgment as set forth herein.

E. **Notice**. As evidenced by the certificates of service previously filed with the Court (including [Dkt. Nos. 165, 411, and 523]), proper, sufficient, and timely notice of the Non-Bulk Sale Motion, the Non-Bulk Sale Hearing, the Non-Bulk Sale, the Cure Amounts (as defined herein) and the transactions contemplated thereby and hereunder has been provided in accordance with sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and the Local Rules. The Debtors have complied with all obligations to

provide notice of the Non-Bulk Sale Motion, the Non-Bulk Auction, the Non-Bulk Sale Hearing, and the APAs. No other or further notice of the Non-Bulk Sale Motion, the Non-Bulk Auction, the Non-Bulk Sale Hearing, the APAs, or the Non-Bulk Sale is required. A reasonable opportunity to object or to be heard regarding the relief requested in the Non-Bulk Sale Motion was afforded to all interested persons and entities. The Debtors served a notice of their intent to assume and assign the Assumed Contracts/Leases (as defined herein) and of the related Cure Amounts (as defined herein) upon each counterparty to an executory contract or unexpired lease proposed to be assumed and assigned to a Buyer. The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect thereof. The Debtors filed and served the Notice of Auction Results on October 1, 2026, which identified the Successful Bidders and Back-Up Bidders and afforded counterparties a reasonable opportunity to object to adequate assurance of future performance by the Successful Bidders by October 6, 2026, at 5:00 p.m. (Central Time) (the "**Post-Auction Objection Deadline**").

F. **Sufficiency of Marketing**. The pre- and post-petition marketing process undertaken by the Debtors and their professionals, together with the Non-Bulk Sale Bidding Procedures and the competitive Non-Bulk Auction, which was conducted as a single, unified auction of all of the Non-Bulk Sale Assets on September 30, 2026, in which Qualified Bidders were permitted to submit competing bids for the Non-Bulk Sale Assets on an individual, combination, or aggregate basis and the Successful Bidders were selected based on the highest or otherwise best bids, was adequate and appropriate and was reasonably calculated to maximize the value of the Non-Bulk Sale Assets for the benefit of the Debtors' estates.

G. The Debtors filed and served a Supplemental Cure Notice [Dkt. No. 250] identifying the amounts required to cure any and all defaults and actual pecuniary losses to the

non-Debtor counterparties to unexpired leases and executory contracts that may be assumed and assigned in connection with the Non-Bulk Sales, including all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties are entitled to assert under the Bankruptcy Code with respect to such leases and contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to, such leases and contracts, including any accrued but unbilled or unpaid claims or obligations as of the Closing, including any claims on account of any valid indemnification obligations or repair and maintenance obligations. The service and provision of the Supplemental Cure Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of the assumption and assignment of the Assumed Contracts/Leases (as defined below) or establishing a Cure Amount (as defined below) for any respective Assumed Contract/Lease. Non-Debtor counterparties to the applicable executory contracts and unexpired leases had adequate opportunity to object to their assumption and assignment and to the cure amounts set forth in the Supplemental Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline for a non-Debtor counterparty to file an objection to the cure amounts set forth in the Supplemental Cure Notice (a "**Cure Objection**," and such deadline, the "**Cure Objection Deadline**") has expired. Certain non-Debtor counterparties timely filed Cure Objections, and the Debtors negotiated with those counterparties to resolve them. A revised cure schedule reflecting the resolution of those Cure Objections is attached hereto as

**<u>Exhibit C</u>** (the "**Revised Cure Schedule**"). The amounts set forth in the Revised Cure Schedule (collectively, the "**Cure Amounts**") are the amounts required to cure all defaults and actual pecuniary losses for each non-Debtor counterparty to an applicable assumed executory contract and unexpired lease approved for assumption and assignment by this Non-Bulk Sale Order (collectively, the "**Assumed Contracts/Leases**"), which unexpired leases are limited to the Approved Leases (as defined herein). To the extent any Cure Objection is not resolved by the Revised Cure Schedule, such Cure Objection has been withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any non-Debtor counterparty did not timely file a Cure Objection, such party shall be deemed to have consented to (x) the assumption and assignment of the Assumed Contract/Lease and (y) the cure amount set forth in the Supplemental Cure Notice, which shall be the Cure Amount for such Assumed Contract/Lease as reflected in the Revised Cure Schedule. Any non-Debtor counterparty that did not timely assert any additional amount beyond the stated cure amounts by the Cure Objection Deadline is deemed to have consented and is forever barred from asserting any such amount against any party, including the Buyer, the Debtors, and the Debtors' estates. Notwithstanding the foregoing, the Supplemental Cure Procedures set forth in Paragraphs 37(a) through 37(f) of this Non-Bulk Sale Order shall govern the assertion and resolution of any accrued but unbilled or unknown cure amounts not reflected in the Revised Cure Schedule.

H. **<u>Corporate Authority</u>**. The Debtors (i) have full corporate power and authority to execute, deliver, and perform their obligations under the APA and all other documents contemplated thereby and by this Non-Bulk Sale Order, and the Debtors' sale of the Non-Bulk Sale Assets has been duly and validly authorized by all necessary corporate or similar action; (ii) have all corporate power and authority necessary to consummate the transactions contemplated

by the APA; and (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. The Debtors' respective boards of directors or equivalent governing bodies have authorized the execution and delivery of the APA and the sale of the Non-Bulk Sale Assets to the Buyer. No consents or approvals, other than those expressly provided for herein or in the APA and entry of this Non-Bulk Sale Order, are required for the Debtors to consummate such transactions.

I. **No Fraudulent Transfer**. The consideration provided by the Buyer pursuant to the APA and this Non-Bulk Sale Order (i) was negotiated at arm's length, (ii) is fair and reasonable, (iii) is the highest or otherwise best offer for the Non-Bulk Sale Assets, and (iv) constitutes reasonably equivalent value and fair consideration (each as defined in the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code, as applicable) under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Buyer is fraudulently entering into the transactions contemplated by the APA under any law, including, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

J. The Debtors are the sole and lawful owners of the Non-Bulk Sale Assets. The Non-Bulk Sale Assets constitute property of the Debtors' estates and title to the Non-Bulk Sale Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Non-Bulk Sale Assets to the Buyer, in accordance with the APA and this Non-Bulk Sale Order, will be, as of the Closing

Date, a legal, valid, binding, and effective transfer of the Non-Bulk Sale Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtors to the Non-Bulk Sale Assets, free and clear of all claims, liens, encumbrances, and interests (other than Assumed Liabilities). Claims in the APA are defined by referencing the definition of "claim" in section 101(5) of the Bankruptcy Code and, the breadth of such definition includes, all debts arising under, relating to, or in connection with any act of the Debtors or claims, causes of action, liabilities, obligations, demands, guaranties, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, subleases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, derivative and vicarious liability, alter-ego, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, with the exception of property taxes (including, without limitation, claims on account of income taxes, sales and use taxes, excise taxes, payroll taxes, consumption taxes, Medicare taxes, employment taxes, or any other tax or impost of any kind), regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, or any other matters of any kind or nature, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including those that purport to give to any party a right or option to effect any forfeiture, modification, charges of interests of any kind or nature, profit sharing interest or termination of, any of the Debtors' or the Buyer's interests in the Non-Bulk Sale Assets, or any similar rights.

K. **Highest or Otherwise Best Offer**. Good and sufficient reasons for approval of the APAs and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Non-Bulk Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Through the Non-Bulk Auction, the Debtors selected each Successful Bidder as having submitted the highest or otherwise best offer for the applicable Non-Bulk Sale Assets set forth opposite its name on **Exhibit B**, with the next-highest or otherwise next-best bidder(s) designated as the Back-Up Bidder(s), as applicable and as set forth on Exhibit B. As demonstrated by the Brickley Declaration, the evidence proffered or adduced at the Non-Bulk Sale Hearing, and the representations of counsel made on the record at the Non-Bulk Sale Hearing, the Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that the immediate consummation of the Non-Bulk Sale to the Successful Bidders is necessary and appropriate to preserve and maximize the value of the Debtors' estates.

L. The transactions memorialized by each APA with the applicable Successful Bidder, selected through the Non-Bulk Auction, constitutes the highest or otherwise best offer for the applicable Non-Bulk Sale Assets. The consideration provided by each Buyer under its APA, including the assumption of the Assumed Liabilities, is fair and adequate and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Given the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price and other consideration payable under each APA, the proposed Non-Bulk Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, consistent with their fiduciary duties, and should be approved.

M. **Stalking Horse Bidders and Bid Protections**. In accordance with the Bidding Procedures Order and the Non-Bulk Sale Bidding Procedures, the Debtors designated three stalking horse bidders (each, a "**Stalking Horse Bidder**"): (i) Brew Culture, LLC, under the asset purchase agreement filed at Dkt. No. 452, for Store Nos. 1101, 1149, 1416, and 1440[4]; (ii) Swig Stores, LLC ("**Swig**"), under the asset purchase agreement filed at Dkt. No. 453, for Store Nos. 1108, 1124, 1127, 1140, 1144, 1145, 1146, 1163, 1702, 1704, and 1912; and (iii) Boersma Bros. LLC ("**Dutch Bros**"), under the asset purchase agreement filed at Dkt. No. 469 (the "**Dutch Bros Stalking Horse Agreement**"), for Store Nos. 1104, 1106, 1110, 1122, and 1174 (the "**Group B Assets**") for a purchase price of $4,000,000. Brew Culture, LLC and Swig were each the Successful Bidder for all of the Non-Bulk Sale Assets subject to their respective stalking horse agreements, and no Stalking Horse Bid Protections are payable to either of them. At the Non-Bulk Auction, the Group B Assets were separated: Brew Culture, LLC submitted the highest or otherwise best bids for Store Nos. 1104 and 1174, and Dutch Bros was the Successful Bidder only for Store Nos. 1106, 1110, and 1122. The sale of Store Nos. 1104 and 1174 to Brew Culture, LLC constitutes an Alternative Transaction under the Dutch Bros Stalking Horse Agreement, which entitles Dutch Bros to the Termination Fee of $120,000 provided in Section 9.2 thereof (the "**Dutch Bros Termination Fee**"). The Dutch Bros Termination Fee equals three percent (3%) of the cash purchase price under the Dutch Bros Stalking Horse Agreement. It therefore does not exceed the Stalking Horse Bid Protections authorized by paragraph 12 of the Bidding Procedures Order. Dutch Bros provided a material benefit to the Debtors' estates by setting a floor for bidding on the Group B Assets, which resulted in higher aggregate consideration for those assets. The

---

[4] The addresses for each store referenced in this paragraph M are reflected on Exhibit B attached hereto.

Dutch Bros Termination Fee is an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

N. The consummation of the Non-Bulk Sale and the assumption and assignment of the Assumed Contracts/Leases are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Non-Bulk Sale and the transactions contemplated thereby.

O. **Good Faith of the Buyer and the Debtors**. As demonstrated by (i) the Brickley Declaration; (ii) the testimony and other evidence proffered or adduced at the Non-Bulk Sale Hearing; and (iii) the representations of counsel made on the record at the Non-Bulk Sale Hearing, the APA was negotiated, proposed, and entered into by the Debtors and the Buyer, the Successful Bidder, and their respective management and boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, representatives, affiliates, related parties, all in their capacities as such, without collusion, in good faith, and as a result of arm's-length bargaining, and is substantively and procedurally fair to all parties.

P. The Non-Bulk Auction was conducted without collusion, and the Successful Bidder, their affiliates, and the Related Parties[5] of the Successful Bidder and their affiliates (each in their capacities as such, and collectively, the "**Buyer Parties**") are not insiders (as defined in section 101(31) of the Bankruptcy Code) of any of the Debtors. Neither the Debtors nor the Buyer

[5] "Related Parties" means, with respect to a person, such person's current and former affiliates, and each of its and their current and former affiliates' respective current and former directors, managers, officers, members, shareholders, unitholders, equityholders (regardless of whether such interests are held directly or indirectly), limited partners, general partners, investment committee members, managing members, principals, employees, agents, franchisees, trustees, representatives, attorneys, accountants, and each insurance, environmental, legal, investment, financial and other advisors and other consultants, agents and sub-advisors of or to such person and of or to such person's affiliates.

Parties, in their capacities as such, has engaged in any conduct that would cause or permit the Non-Bulk Sale or the APA to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code. Specifically, each of the Buyer Parties has not acted in a collusive manner with any person and the Purchase Price and other consideration payable under the APA were not controlled by any agreement among bidders. The Buyer Parties are purchasing the Non-Bulk Sale Assets in good faith, are good-faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, are therefore entitled to all of the protections afforded by such provision, and otherwise have proceeded in good faith in all respects in connection with these Chapter 11 Cases.

Q. The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors and the Buyer Parties, each in their capacities as such, have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R. **No *Sub Rosa* or *De Facto* Plan.** Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Non-Bulk Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

S. The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the Non-Bulk Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Non-Bulk Sale with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates, and the Non-Bulk Sale will provide the means for the Debtors to maximize distributions to creditors. The

Non-Bulk Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtors, (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities. Accordingly, the Non-Bulk Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors.

T. **No Successor Liability**. By virtue of the consummation of the transactions contemplated under the APA, (i) each of the Buyer and the Buyer Parties is not a continuation of any Debtor and its respective estate, there is not substantial continuity between the Buyer or the Buyer Parties and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer or the Buyer Parties; (ii) neither the Buyer nor the Buyer Parties, in their capacities as such, is holding itself out to the public as a continuation of the Debtors or their respective estates; (iii) the transactions do not amount to a consolidation, merger, or *de facto* merger of the Buyer or the Buyer Parties, and any or all of the Debtors and/or the Debtors' estates; and (iv) the Buyer and the Buyer Parties, in their capacities as such, are not a successor of any or all of the Debtors or their estates for any purpose, including, without limitation, under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such law, rule, or regulation), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, regulation, doctrine, or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine. Accordingly, the Buyer and the Buyer Parties, in their

capacities as such, are not and shall not be deemed a successor to any of the Debtors or their respective estates as a result of the consummation of the Non-Bulk Sale pursuant to the APA and this Non-Bulk Sale Order. Except for the Assumed Liabilities, (i) the transfer of the Non-Bulk Sale Assets to the Buyer and (ii) the assumption and assignment to the Buyer of the Assumed Contracts/Leases do not and will not subject the Buyer or the Buyer Parties, in their capacities as such, to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

U. **Free and Clear**. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and, therefore, the Debtors may sell the Non-Bulk Sale Assets free and clear of any liens, claims, defenses, and interests, in each case, in, on, or related to the Non-Bulk Sale Assets, including, in respect of the following: (i) all mortgages, covenants, liens (statutory or otherwise), deeds of trust, pledges, charges, security interests, encumbrances, or other interests of any kind or character whatsoever; (ii) all claims; (iii) all charges, claims, community property interests, pledges, conditions, equitable interests, liens (statutory or otherwise), options, security interests, and mortgages; and (iv) all liens, claims, encumbrances, rights, interests, and other interests of any kind or nature whatsoever, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, known or unknown, including rights or claims based on any successor or transferee liability.

V. The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the Non-Bulk Sale to the Buyer and the assumption of any

Assumed Liabilities by the Buyer were not free and clear of all liens, claims, encumbrances, and interests other than the Assumed Liabilities. The Debtors may sell the Non-Bulk Sale Assets free and clear of any lien, claim, encumbrance, or interest of any kind or nature whatsoever because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5) and 365 of the Bankruptcy Code has been satisfied. Each entity with a lien, claim, encumbrance, or interest in the Non-Bulk Sale Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Non-Bulk Sale Order, consented to the Non-Bulk Sale or is deemed to have consented to the Non-Bulk Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of such liens, claims, encumbrances, and interests who did not object, or withdrew their objections, to the Non-Bulk Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of liens, claims, encumbrances, and interests (other than the Assumed Liabilities) are adequately protected by having their liens, claims, encumbrances, or interests attach to the proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such liens, claims, encumbrances, or interests are asserted, subject to the terms of such liens, claims, encumbrances, or interests, with the same validity, force, and effect, and in the same order of priority, which such liens, claims, encumbrances, or interests now have against the Non-Bulk Sale Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

W. The injunction set forth in this Non-Bulk Sale Order against creditors and third parties pursuing liens, claims, encumbrances, or interests on the Non-Bulk Sale Assets is necessary to induce the Buyer to close the Non-Bulk Sale, and the issuance of such injunctive relief is

therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

X. **Cure/Adequate Assurance**. The Cure Amounts applicable to the Assumed Contracts/Leases included in the Successful Bids and approved at the Non-Bulk Sale Hearing, inclusive of the Required Cure Costs and Lease Expenses, are the amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code to cure all monetary defaults reflected in the Revised Cure Schedule. To the extent that additional amounts may be owed under section 365(b) of the Bankruptcy Code on account of accrued but unbilled obligations, year-end reconciliations, taxes, common area maintenance charges, or other amounts not reflected in the Revised Cure Schedule, such amounts shall be addressed through the Supplemental Cure Procedures set forth in this Non-Bulk Sale Order. Just Salad New York LLC ("**Just Salad**") bid for Store Nos. 1142, 1109, and 1152 (the "**Just Salad Leases**") for an aggregate Purchase Price of $92,938, inclusive of the Cure Amounts for the Just Salad Leases, and Just Salad shall pay the Cure Amounts for the Just Salad Leases to the extent set forth in its APA, with all such amounts credited against the Purchase Price. No other Buyer's Successful Bid included the payment of Cure Amounts. Accordingly, all Cure Amounts for Assumed Contracts/Leases other than the Just Salad Leases, and any Cure Amounts for the Just Salad Leases that are not Just Salad's responsibility under its APA, and all Supplemental Cure Claims (collectively, the "**Estate Cure Amounts**"), shall be paid by the Debtors' estates, and no Buyer other than Just Salad, to the extent set forth in its APA, shall have any liability for any Cure Amounts. Except as otherwise provided in this Order or in the relevant APA, no Buyer shall have any liability for any Supplemental Cure Claims and all parties shall be enjoined from seeking payments for any Estate Cure Amounts from any Buyer. The Cure Amounts applicable to the Assumed Contracts/Leases included in the Successful Bids

and approved at the Non-Bulk Sale Hearing shall not exceed the amounts set forth in the Revised Cure Schedule, except as may be supplemented through the Supplemental Cure Procedures set forth herein. To the extent that the Cure Amounts do not include all accrued but unbilled obligations, year-end reconciliations, or adjustment amounts that become due after the Closing Date in accordance with the terms of an Assumed Lease, such amounts shall be addressed through the Supplemental Cure Procedures set forth herein; provided, however, that (a) any indemnification obligations that come due or are asserted on or after the effective date of the assumption and assignment of such Assumed Lease regardless of whether such amounts relate to the period prior to or after the assignment date, and (b) any repair and maintenance obligations relating to the conditions at the premises subject to the Assumed Lease that may exist as of the assignment date, shall remain subject to the bar set forth herein, and any counterparty that did not timely assert such indemnification or repair and maintenance obligations by the applicable Cure Objection Deadline shall be forever barred and estopped from seeking payment for such amounts.

Y. To the extent any of the Assumed Contracts/Leases to be assigned to a Buyer contains provisions which would otherwise prohibit, restrict, or condition assignment of any Assumed Contract/Lease, or any applicable non-bankruptcy law would otherwise prohibit, restrict, or condition assignment of any Assumed Contract/Lease, including all renewal options, extension rights, expansion rights, and similar rights arising thereunder, such provisions and law has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365, as applicable. Without limiting the foregoing, any use restriction contained in any of the Assumed Contracts/Leases that purports to prohibit, restrict, condition, or limit the applicable Buyer's operation of the leased premises following the Closing Date constitutes an unenforceable restriction on assignment for

such Buyer's intended use in the ordinary course of its business within the meaning of section 365(f) of the Bankruptcy Code.

Z. Assumption and assignment of the Assumed Contracts/Leases to the Buyer pursuant to this Non-Bulk Sale Order and the APA, and full payment of any applicable Cure Amounts in accordance with the APA, shall result in the full release and satisfaction of any and all cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract/Lease at any time prior to the Closing Date, subject to any Supplemental Cure Claims asserted and resolved in accordance with the Supplemental Cure Procedures set forth herein. The assumption and assignment of the Assumed Contracts/Leases pursuant to the terms of this Non-Bulk Sale Order is integral to the APA, the Non-Bulk Sale, and the transactions contemplated thereby, is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.

AA. Each Buyer has the financial wherewithal to consummate the transactions contemplated by its APA, and its operating history and intended use and format compatibility with the applicable Sites were demonstrated at the Non-Bulk Sale Hearing. The payment of Cure Amounts and each Buyer's promise to perform the Debtors' obligations under the Assumed Contracts/Leases assigned to it from and after the applicable Closing constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code. The evidence presented at the Non-Bulk Sale Hearing demonstrating each Successful Bidder's ability to perform the obligations under the applicable Assumed Contracts/Leases after the applicable Closing Date shall constitute adequate assurance of future

performance within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

BB. Pursuant to section 365 of the Bankruptcy Code, the Debtors have demonstrated that the assumption and assignment to the Buyer, as the Successful Bidder, of the Assumed Contracts/Leases included in the APA is appropriate. All objections to the assumption and assignment of any of the Assumed Contracts/Leases included in the APA by the Buyer are hereby overruled; *provided*, *however*, that objections relating to the Reserved Leases (as defined herein) are not overruled and are reserved for hearing on October 20, 2026. To the extent that any counterparty failed or fails to timely object to the Scheduled Cure Amounts, such counterparty is deemed to have consented to such Scheduled Cure Amounts and the assumption and assignment of its respective Assumed Contract(s)/Lease(s) to the relevant Buyer in accordance with the APA; provided, however, that nothing herein shall bar or impair such counterparty's right to assert a Supplemental Cure Claim in accordance with the Supplemental Cure Procedures set forth herein.

CC. **Use Restrictions and Certain Other Restrictions Constitute De Facto Anti-Assignment Provisions**. To the extent any of the Assumed Contracts/Leases restricts the permitted use of the leased premises to the operation of a "Salad and Go" restaurant or a specific brand name, or otherwise imposes material restrictions on the applicable Buyer's ability to convert the leased premises from a "Salad and Go" restaurant to a typical restaurant of such Buyer's business or use such premises for a typical restaurant of such Buyer's business, any such restriction constitutes a de facto anti-assignment provision within the meaning of section 365(f)(1) of the Bankruptcy Code. Section 365(f)(1) permits assignment of an unexpired lease "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease." 11 U.S.C. § 365(f)(1). Such restrictions

are overridden by section 365(f)(1) and are unenforceable against Buyer. No evidence was presented that any landlord or other party subject to the terms of this Non-Bulk Sale Order would suffer actual and substantial detriment from the assignment of the Assumed Leases to the applicable Buyer, especially because of each Buyer's operating history, financial wherewithal, intended use, and compatibility with the Sites; no landlord or other party will suffer actual and substantial detriment from the assignment of the Assumed Leases to the applicable Buyer.

DD. **Compelling Circumstances for Immediate Sale**. To maximize the value of the Non-Bulk Sale Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts/Leases, occur within the time constraints set forth in the APA. Time is of the essence in consummating the transactions contemplated by the APA, the Sale and the assumption and assignment of the Assumed Contracts/Leases.

EE. **Cure Amount Schedule and Assumed Lease Schedule**. The Non-Bulk Sale process encompassed the unexpired leases identified on Schedule 1 to the Non-Bulk Sale Bidding Procedures, as such schedule may have been adjusted in accordance therewith, together with the other Non-Bulk Sale Assets. The Non-Bulk Sale Assets and the Assumed Contracts/Leases covered by this Non-Bulk Sale Order are limited to the Approved Leases (as defined herein) and the other Non-Bulk Sale Assets set forth on Exhibit B under the applicable APAs, and exclude the Reserved Leases (as defined herein), the central kitchen facility assets, and any other assets sold under the Bulk Sale Order. The Cure Amounts for the Assumed Contracts/Leases are set forth on the Revised Cure Schedule attached hereto as Exhibit C.

**IT IS HEREBY ORDERED THAT:**

1. The Non-Bulk Sale Motion, as supplemented and amended, is **GRANTED** as set forth herein.

2. **<u>The Sale is Approved</u>**. The Non-Bulk Sale to each Buyer of the Non-Bulk Sale Assets set forth opposite its name on Exhibit B and related assets as provided in the applicable APA, for the Purchase Price set forth therein and as contemplated by the applicable APA, is hereby **APPROVED** as set forth herein. The obligations of each Buyer under its APA and this Non-Bulk Sale Order are several and not joint, and no Buyer shall have any liability for the obligations of any other Buyer, including any Cure Amounts or Supplemental Cure Claims relating to Assumed Contracts/Leases assigned to another Buyer. The Closing of the Non-Bulk Sale to any Buyer is not conditioned on the Closing of the Non-Bulk Sale to any other Buyer, and the failure of any Buyer to close shall not affect the validity or effectiveness of this Non-Bulk Sale Order as to any other Buyer. This Non-Bulk Sale Order shall constitute a separate order with respect to each Buyer (and their respective Buyer Parties) and its APA, and any stay, reversal, modification, or vacatur as to any Buyer or APA shall not affect the validity, enforceability, or finality of this Non-Bulk Sale Order as to any other Buyer (and their respective Buyer Parties) and its APA.

3. **<u>Approved Leases</u>**. Notwithstanding anything to the contrary in this Non-Bulk Sale Order, the Non-Bulk Sale Motion, any APA, or Exhibit B, the sale, assumption, and assignment of unexpired leases approved by this Non-Bulk Sale Order apply solely to the unexpired leases for the following Store Nos., each as identified on Exhibit B, to the applicable Buyer set forth opposite such store on Exhibit B (collectively, the "**Approved Leases**"): 1101, 1103, 1104, 1106, 1107, 1108, 1109, 1110, 1113, 1122, 1124, 1127, 1134, 1140, 1142, 1144, 1145, 1146, 1149, 1152, 1163, 1164, 1168, 1174, 1416, 1422, 1440, and 1912. As used in this Non-Bulk Sale Order, the terms "Assumed Contracts/Leases" and "Assumed Leases," as they relate to unexpired leases, refer solely to the Approved Leases. No unexpired lease

other than an Approved Lease is assumed, assigned, or sold pursuant to this Non-Bulk Sale Order.

4. **Reserved Leases**. Any objections to the assumption and assignment to Swig of the unexpired leases for Store No. 1702 (1209 E. Kenosha St., Broken Arrow, OK 74012), whose landlord is Beyond Good, LLC, and Store No. 1704 (11360 E. 96th St. N., Owasso, OK 74055), whose landlord is Srikarvichu OK LLC (collectively, the "**Reserved Leases**"), including objections relating to adequate assurance of future performance and Cure Amounts, together with all rights, claims, and defenses of the Debtors, Swig, and the applicable landlords with respect thereto, are expressly reserved and shall be heard by the Court at the hearing scheduled for October 20, 2026, at [__:__ _.m.] (Central Time). Nothing in this Non-Bulk Sale Order authorizes or approves the sale, assumption, or assignment of the Reserved Leases, and the Reserved Leases shall not be assumed and assigned except pursuant to a further order of the Court.

5. **Effect of APAs**. Notwithstanding that any APA attached hereto as Exhibit A may include unexpired leases other than the Approved Leases, each APA is approved, and shall be effective and binding with respect to any unexpired lease, only if and to the extent the assumption and assignment of such lease has been approved by order of the Court. Without limiting the foregoing, the APA with Swig shall not apply to the Reserved Leases unless and until the Court enters an order approving the assumption and assignment of the Reserved Leases to Swig.

6. **Objections Overruled**. Any objections to the entry of this Non-Bulk Sale Order or the relief granted herein and requested in the Non-Bulk Sale Motion that have not been withdrawn,

waived, or settled as announced to the Court at the Non-Bulk Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice; *provided*, *however*, that objections relating to the Reserved Leases are not overruled and are reserved for hearing on October 20, 2026, as provided herein.

7. **Approval**. The APA (including, for the avoidance of doubt, any documents entered into in connection therewith) and all of the terms and conditions thereof are hereby approved in all respects subject to the terms hereof. Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors, as well as their officers, employees, and agents, without further order of the Court, are hereby authorized, empowered, and directed to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the APA, the Non-Bulk Sale, and the transactions contemplated thereby, including any Lease Amendments as contemplated by the APA, (b) consummate the Non-Bulk Sale in accordance with the terms and conditions of the APA and the instruments contemplated thereby, (c) transfer and assign all rights, title, and interest to all assets, property, licenses, and rights of the Debtors to be conveyed in accordance with the terms and conditions of the APA, and (d) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the APA, including the assumption and assignment of the Assumed Contracts/Leases, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, the Non-Bulk Sale, and this Non-Bulk Sale Order, and ancillary documents, including any actions that otherwise would require further approval by shareholders, members, or their boards of directors, as the case may be, without the need to obtain such approvals, to the Buyer. The Debtors

are hereby authorized to perform their covenants and undertakings as provided in the APA and any ancillary documents before or after the Closing Date without further order of the Court. Neither the Buyer nor the Debtors shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their obligations to do so in the APA and this Non-Bulk Sale Order have been met, satisfied, or waived, except as otherwise contemplated or provided for in the APA. Without limiting the foregoing, and notwithstanding anything to the contrary in this Non-Bulk Sale Order, the Buyer's rights under the APA, including any rights thereunder to exclude leases from the Assumed Contracts/Leases and to make corresponding adjustments to the Purchase Price, are approved.

8. This Non-Bulk Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors (including counterparties to Assumed Contracts/Leases), any holders of liens, claims, encumbrances, interests, or other interests in, against, or on all or any portion of, or landlords with respect to, the Non-Bulk Sale Assets (whether known or unknown), the Buyer, and all successors and assigns of the Buyer, the Non-Bulk Sale Assets, and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code or dismissal of these Chapter 11 Cases. This Non-Bulk Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, Committee, the Buyer, and the respective successors and assigns of each of the foregoing. Neither the APA nor any Transaction Document shall be subject to rejection, avoidance, or unwinding by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers.

9. **<u>Transfer of Non-Bulk Sale Assets Free and Clear of Liens, Claims, Encumbrances, and Interests</u>**. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy

Code, the Debtors are authorized and directed to transfer the Non-Bulk Sale Assets to the Buyer in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Non-Bulk Sale Assets and shall vest the Buyer with title in and to the Non-Bulk Sale Assets and the Buyer shall take title to and possession of the Non-Bulk Sale Assets free and clear of all liens, claims, encumbrances, interests and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), including obligations, demands, guarantees of or by the Debtors, debts, contractual commitments, restrictions, interests, radius, location, use, and exclusivity provisions, restrictive covenants, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or the Buyer or an affiliate, as the case may be, in the Lease (but only in connection with the assignment by the Debtor to the Buyer or an affiliate) or (B) in respect of any taxes), successor or successor-in-interest liability and claims in respect of the Excluded Liabilities, with all such liens, claims, encumbrances, interests, and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such liens, claims, encumbrances, or interests are asserted, subject to the terms of such liens, claims, encumbrances, or interests with the same validity, force, and effect, and in the same order of priority, which such liens, claims, encumbrances, or interests now have against the Non-Bulk Sale Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, and any successors in interest as applicable, may possess with respect thereto.

10. Unless otherwise expressly included in the definition of "Assumed Liabilities" in the APA, the Buyer shall not be responsible for any liens, claims, encumbrances, or interests,

including, without limitation, in respect of the following: (a) any mortgages, deeds of trust, and security interests; (b) any bulk transfer law or similar law; (c) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (d) any escheat or unclaimed property laws; (e) any of the Excluded Liabilities under the APA; and (f) any theories of successor or transferee liability.

11. All persons and entities that are in possession of some or all of the Non-Bulk Sale Assets on the Closing Date are directed to surrender possession of such Non-Bulk Sale Assets to the Buyer in accordance with the APA on the Closing Date or at such time thereafter as the Buyer may request. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary, in each case, at no expense to the Buyer, to release its liens, claims, encumbrances, interests, or other interests in the Non-Bulk Sale Assets, if any, other than the Assumed Liabilities.

12. If any person or entity that has filed statements or other documents or agreements evidencing liens, claims, encumbrances, or interests (other than the Assumed Liabilities that are not otherwise being discharged at Closing) on, against, or in, all or any portion of the Non-Bulk Sale Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of such liens, claims, encumbrances, interests, or other liens, claims, or interests, that the person or entity has or may assert with respect to all or any portion of the Non-Bulk Sale Assets, then the Buyer and the Debtors are each hereby authorized to (i) execute and file such statements, instruments, releases, and other documents in the name and on behalf of such person or entity with respect to the Non-

Bulk Sale Assets and otherwise seek relief from the Court pursuant to this Non-Bulk Sale Order, if necessary, or (ii) file, register, or otherwise record a certified copy of this Non-Bulk Sale Order, which, once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all liens, claims, encumbrances, or interests in the Non-Bulk Sale Assets of any kind or nature; *provided that*, notwithstanding anything in this Non-Bulk Sale Order or the APA to the contrary, the provisions of this Non-Bulk Sale Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Non-Bulk Sale Order.

13. On the Closing Date, this Non-Bulk Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Debtors' interests in the Non-Bulk Sale Assets. This Non-Bulk Sale Order is and shall be effective as a determination that, on the Closing Date, all liens, claims, encumbrances, interests, or other interests of any kind or nature whatsoever existing as to the Non-Bulk Sale Assets prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effectuated. This Non-Bulk Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the

foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

14. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A certified copy of this Non-Bulk Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens, claims, encumbrances, interests, and any other encumbrances of record, except the Assumed Liabilities.

15. **Exemptions from Transfer Taxes and Fees**. The transactions contemplated by the APA and this Non-Bulk Sale Order, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Non-Bulk Sale, are exempt from any and all document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee, regulatory filing or fee, or other similar tax, fee, or governmental assessment incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) to the maximum extent permitted by law.

16. **Prohibition of Actions Against the Buyer Parties**. Except for the Assumed Liabilities, the Buyer Parties, in their capacities as such, shall not have any liability or other obligation of the Debtors arising under or related to any of the Non-Bulk Sale Assets, including, without limitation, any liability for any liens, claims, encumbrances, or interests, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, without limitation, liabilities

on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date, including, but not limited to, the Excluded Liabilities.

17. Except with respect to the Assumed Liabilities, which, for the avoidance of doubt, shall not include any indemnification claims held or made by any person (including any counterparty to any non-residential real property lease), notwithstanding anything to the contrary herein or in any lease agreement relating to the Purchase Assets, all persons and entities, including, without limitation, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, landlords and other creditors, holding claims, liens, encumbrances, interests, or other interests of any kind or nature whatsoever against or in all or any portion of the Non-Bulk Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate) arising under or out of, in connection with, or in any way relating to the Debtors, the Non-Bulk Sale Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Non-Bulk Sale Assets to the Buyer in accordance with the APA are hereby forever barred, estopped, and permanently enjoined from asserting against the Buyer Parties, in their capacities as such, their successors or assigns, its property, or the Non-Bulk Sale Assets, such persons' or entities' liens, claims, encumbrances, or interests in, on, or to the Non-Bulk Sale Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer Parties, in their capacities as such, its assets, or its properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any encumbrance, lien, claim, or interest against the Buyer

Parties, in their capacities as such, their successors, their assets, or their properties; (d) asserting any right against any obligation due to the Buyer Parties, in their capacities as such; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Non-Bulk Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Non-Bulk Sale Assets or conduct any of the businesses operated with the Non-Bulk Sale Assets; and (g) asserting any claims for indemnification against any Buyer, in their capacities as such, in any way relating to or arising out of Buyer's or Seller's use or operation of the Purchased Assets. Following the Closing, no holder of any claim or interest shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such claim or interest.

18. To the extent that any contract counterparty has not objected to this Non-Bulk Sale Order, they are forever barred and estopped from raising claims against the Buyer Parties, in their capacities as such, based on provisions in the Assumed Contracts/Leases relating to radius, location, use, or exclusivity.

19. Nothing herein shall impair or prejudice the Debtors' and the Committee's ability to contest, in their sole discretion, the extent, validity, or amount of any lien, claim, encumbrance, or interest asserted against the Non-Bulk Sale Assets. Any such liens, claims, encumbrances, and interests shall attach to the proceeds of the Non-Bulk Sale with the same validity, priority, and effect as they had against the Non-Bulk Sale Assets immediately prior to the closing of the Non-Bulk Sale.

20. Notwithstanding the relief granted in this Non-Bulk Sale Order and any actions taken pursuant to such relief, except as otherwise provided herein, nothing in this Non-Bulk Sale

Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors or their estates under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Non-Bulk Sale Order or the Non-Bulk Sale Motion or any order granting the relief requested by the Non-Bulk Sale Motion; (e) other than with respect to the Assumed Contracts/Leases as expressly set forth herein, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or the Committee's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) other than with respect to the Assumed Contracts/Leases, an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Non-Bulk Sale Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim other than the Buyer as set forth herein; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease other than the Assumed Contracts/Leases.

21. To the greatest extent available under applicable law, the Buyer and its successors or assigns shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Non-Bulk Sale Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.

22. Pursuant to the terms of the APA, the Buyer and the Debtors shall use their reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary under applicable law to consummate and make effective the transactions contemplated by the APA, including, without limitation, with respect to any and all applications, notices, reports, disclosures, or other filings required under applicable law referenced in the APA.

23. No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Non-Bulk Sale Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

24. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Non-Bulk Sale Assets to the Buyer in accordance with the terms of this Non-Bulk Sale Order and the APA, including any person or entity that is party to a contract or lease with the Debtors.

25. The Buyer has given substantial consideration under the APA and this Non-Bulk Sale Order for the benefit of the Debtors, their estates, their creditors, and their other stakeholders.

The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential liens, claims, encumbrances, and interests pursuant to this Non-Bulk Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of liens, claims, encumbrances, or interests in or against any of the Debtors or any of the Non-Bulk Sale Assets, other than with respect to the Assumed Liabilities. The consideration provided by the Buyer for the Non-Bulk Sale Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

26. None of the Buyer nor any of the Buyer Parties, in their capacities as such, shall have or incur any liability to, or be subject to any action by, any of the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA, and the entry into and consummation of the sale of the Non-Bulk Sale Assets, except as expressly provided in the APA and this Non-Bulk Sale Order.

27. No bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Buyer and/or the transactions with the Debtors that are approved by this Non-Bulk Sale Order, including, without limitation, the APA and the Non-Bulk Sale.

28. **Back-Up Bidders**. The Back-Up Bidders and Back-Up Bids identified on Exhibit B are approved. Each Back-Up Bid shall remain open and irrevocable for thirty (30) days following the conclusion of the Non-Bulk Auction. If the applicable Successful Bidder fails to consummate its Non-Bulk Sale within such period, the applicable Back-Up Bidder shall automatically become the Successful Bidder for the applicable Non-Bulk Sale Assets upon twenty-four (24) hours' notice filed by the Debtors, and such Back-Up Bidder shall thereupon be deemed the Buyer for all purposes of this Non-Bulk Sale Order with respect to such Non-Bulk Sale Assets without further

order of the Court; *provided* that any contract counterparty affected by such designation shall have five (5) days to object to the assignment of its contract or lease to the Back-Up Bidder.

29. **Dutch Bros Termination Fee**. The Dutch Bros Termination Fee is approved and allowed as an administrative expense claim of Dutch Bros under section 503(b) of the Bankruptcy Code. The Debtors are authorized and directed to pay the Dutch Bros Termination Fee to Dutch Bros within five (5) days after the closing of the Non-Bulk Sale of Store Nos. 1104 and 1174 to Brew Culture, LLC, in accordance with Section 9.2 of the Dutch Bros Stalking Horse Agreement. Pending such payment, the Debtors shall hold in escrow, from the proceeds of such sale, an amount equal to the Dutch Bros Termination Fee, and such amount shall not constitute property of the Debtors' estates. The deposit posted by Dutch Bros under the Dutch Bros Stalking Horse Agreement shall be credited, returned, or applied in accordance with the terms of that agreement, the Non-Bulk Sale Bidding Procedures, and Dutch Bros' APA for Store Nos. 1106, 1110, and 1122. The Dutch Bros Termination Fee shall be Dutch Bros' sole and exclusive remedy on account of the termination of the Dutch Bros Stalking Horse Agreement as to Store Nos. 1104 and 1174. Except for the Dutch Bros Termination Fee, no break-up fee, termination fee, expense reimbursement, or other bid protection is approved or payable to any party in connection with the Non-Bulk Sale.

30. **Assumption and Assignment of Leases**. The Debtors are authorized and directed, pursuant to sections 105(a) and 365 of the Bankruptcy Code, to assume and assign to the Buyer, effective as of the Closing Date and in accordance with the purchase agreement, the Assumed Contracts/Leases included in the Successful Bid and approved at the Non-Bulk Sale Hearing (which, for the avoidance of doubt, as to unexpired leases are limited to the Approved Leases), free and clear of all claims, liens, encumbrances, interests, and other interests of any kind or nature

whatsoever (other than the Assumed Liabilities), and to execute and deliver to the Buyer such documents and instruments as are reasonably necessary to assign and transfer the Assumed Contracts/Leases and the Assumed Liabilities to the Buyer in accordance with the APA.

31. With respect to the Assumed Contracts/Leases included in the APA and approved at the Non-Bulk Sale Hearing: (a) each Assumed Contract/Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Contracts/Leases in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract/Lease in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contracts/Leases that prohibit or condition the assignment of such Assumed Contract/Lease or allow the party to such Assumed Contract/Lease to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assumed Contract/Lease, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract/Lease, in accordance with the APA, have been satisfied; (e) the Assumed Contracts/Leases shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of, the Buyer in accordance with the APA, notwithstanding any provision in any such Assumed Contract/Lease or applicable law (including any of the kind described in sections 365(b)(2), 365(b)(3), and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions assignment, and any such anti-assignment provision is void and unenforceable to the maximum extent permitted by applicable law, and pursuant to section 365(k) of the Bankruptcy Code; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the

Buyer shall be fully and irrevocably vested with all right, title, and interest in each Assumed Contract/Lease, including all renewal options, extension rights, expansion rights, and similar contractual rights thereunder, and pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts/Leases after such assumption and assignment to the Buyer in accordance with the APA.

32. Notwithstanding anything to the contrary in this Non-Bulk Sale Order, pursuant to sections 105(a) and 365(f) of the Bankruptcy Code, any use restriction contained in an Assumed Contract/Lease that purports to prohibit, restrict, condition, or limit the assignment of such Assumed Contract/Lease to Buyer (or its affiliates), or Buyer's (or its affiliates') operation of the leased premises for the Buyer's intended operations in the ordinary course of its business following Closing, shall be unenforceable against Buyer (or its affiliates) to the maximum extent permitted by applicable law. Notwithstanding any provision of any of the Assumed Contracts/Leases limiting the trade name, brand, concept, or type of retail operation, Buyer (and its affiliates) shall be authorized to operate the Assumed Contracts/Leases under its own trade name, trademarks, and retail concept, and any such restrictions are unenforceable pursuant to sections 363 and 365 of the Bankruptcy Code.

33. Except as expressly provided in this Non-Bulk Sale Order, each Assumed Contract/Lease shall remain in full force and effect in accordance with its terms following assignment to the Buyer. The assignment shall be *cum onere*, with the Buyer assuming the benefits and burdens of each Assumed Contract/Lease and performing all obligations arising or accruing thereunder from and after the Closing Date to the extent required under applicable law. Except as expressly provided in this Non-Bulk Sale Order, nothing in this Non-Bulk Sale Order shall rewrite, alter, annul, vary, or otherwise modify any provision of an Assumed Contract/Lease, and nothing

herein shall bar or impair a non-Debtor lessor from enforcing against the Buyer any default, breach, or obligation arising or accruing from and after the Closing Date.

34. All defaults and other obligations of the Debtors under the Assumed Contracts/Leases included in the APAs and approved at the Non-Bulk Sale Hearing that arise or accrue before the Closing Date (without giving effect to any acceleration clause or default provision of the kind described in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or promptly thereafter by payment of the Cure Amounts set forth in the Revised Cure Schedule, or such other amounts as agreed to between the applicable contract counterparty and the Seller, as follows: (a) Just Salad shall pay the Cure Amounts for the Just Salad Leases to the extent set forth in its APA; and (b) the Debtors shall pay all Estate Cure Amounts from the Debtors' estates, and the Debtors are authorized to pay the Estate Cure Amounts, including from the proceeds of the Non-Bulk Sale. The Cure Amounts set forth in the Revised Cure Schedule (the "**Scheduled Cure Amounts**"), as approved at the Non-Bulk Sale Hearing, are the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure such defaults, except as may be supplemented through the Supplemental Cure Procedures set forth herein, and no other amounts are due in connection with the assumption and assignment except as expressly preserved in this Non-Bulk Sale Order; *provided*, *however*, that, to the extent any Cure Amount set forth in the Revised Cure Schedule differs from the cure amount set forth in the Supplemental Cure Notice to which a counterparty timely filed a Cure Objection, the Cure Amount set forth in the Revised Cure Schedule shall be deemed the Scheduled Cure Amount for such Assumed Contract/Lease. A counterparty that did not timely object to the cure amount set forth in the Supplemental Cure Notice by the Cure Objection Deadline is deemed to have consented to such amount as its Scheduled Cure Amount and to the assumption and assignment of its Assumed Contract/Lease to the Buyer in

accordance with the APA and is forever barred and estopped from disputing such Scheduled Cure Amount against any party, including the Debtors, the Buyer, its affiliates, and related parties, each in their capacity as such; provided, however, that nothing herein shall bar or impair such counterparty's right to assert a Supplemental Cure Claim in accordance with the Supplemental Cure Procedures set forth herein.

35. The Cure Amounts satisfy all amounts accrued and billed through the Closing Date. To the extent that accrued but unbilled obligations, including year-end adjustments and reconciliation amounts for taxes, common area maintenance charges, utilities, insurance, promotion funds, royalties, fees, and other additional rent obligations that accrued prior to the Closing Date but are unbilled, not yet due, or subject to adjustment as of the Closing Date, become due after the Closing Date under an Assumed Lease, such amounts shall be addressed through paragraphs 47-48 herein or the Supplemental Cure Procedures set forth in this Non-Bulk Sale Order. Notwithstanding the foregoing, indemnification obligations that come due or are asserted on or after the effective date of the assumption and assignment, regardless of whether they relate to the period before or after the assignment date, or repair and maintenance obligations relating to conditions at the premises existing as of the assignment date, shall remain subject to the bar set forth herein, and any counterparty that did not timely assert such amounts by the applicable Cure Objection Deadline shall be forever barred and estopped from seeking payment for such amounts from any party. For the avoidance of doubt, (i) Just Salad shall be responsible for Cure Amounts for the Just Salad Leases only to the extent set forth in its APA, (ii) all such Cure Amounts paid by Just Salad shall be credited against its Purchase Price, (iii) all other Cure Amounts and Supplemental Cure Claims shall be paid by the Debtors' estates, and (iv) in no event shall the aggregate paid by Just Salad with respect to the Purchased Assets, including all Cure Amounts

paid by Just Salad, exceed its Purchase Price of $92,938.00. No Buyer other than Just Salad, to the extent set forth in its APA, shall have any liability for any Cure Amounts, and all parties shall be enjoined from seeking payments of such Cure Amounts, and no counterparty may seek payment of any Cure Amount or Supplemental Cure Claim from any Buyer or Buyer Party except Cure Amounts from Just Salad to the extent set forth in its APA. Any failure of the Debtors' estates to pay any Estate Cure Amount or Supplemental Cure Claim shall not give rise to any default under any Assumed Contract/Lease or any liability of or a claim against any Buyer or Buyer Party. Nothing herein shall affect Just Salad's obligation to reimburse or credit to the Debtors for any Asset Taxes that the Debtors paid prior to Closing attributed to any period following the Straddle Period (as the terms "Asset Taxes" and "Straddle Period" are used in the Just Salad APA).

36. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, except for the right to payment of any Cure Amount and the right to assert supplemental cure claims in accordance with the Supplemental Cure Procedures set forth herein, upon the Debtors' assignment of the Assumed Contracts/Leases to the Buyer and payment of the Cure Amounts, all contract counterparties are forever barred and permanently enjoined from raising or asserting against any party, including any of the Debtors, the Buyer, or the Buyer Parties, any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to an Assumed Contract/Lease that existed as of the Closing Date or arose by reason of the Closing. Unless otherwise agreed to in writing by the Debtors, the Buyer, and the appropriate counterparty, the Scheduled Cure Amounts included in the Revised Cure Schedule reflect the amounts necessary under section 365(b) of the Bankruptcy Code to cure all defaults under the Assumed Contracts/Leases, except as may be supplemented through the Supplemental Cure Procedures set forth herein. The Cure Amounts shall be paid by Just Salad to the extent set forth in its APA and

any excess Cure Amounts and all Supplemental Cure Claims shall be paid by the Debtors' estates, in each case in accordance with this Non-Bulk Sale Order. No default shall exist under any Assumed Contract/Lease, and no counterparty may (a) declare a default by the Buyer or otherwise take action against the Buyer based on the Debtors' financial condition, bankruptcy, or failure to perform any pre-Closing obligation under such Assumed Contract/Lease, or (b) otherwise take action against the Buyer as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under such Assumed Contract/Lease. Each non-Debtor counterparty to an Assumed Contract/Lease is hereby also forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Buyer, or the Buyer Parties, each in their capacities as such, or the property of any of them, any default or claim arising out of any indemnity obligations or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, other than Cure Amounts or Supplemental Cure Claims, and from imposing or charging against the Buyer, its affiliates, and related parties, each in their capacities as such, any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Buyer of any Assumed Contract/Lease in accordance with the APA, or (iii) imposing or charging against the Buyer any rent acceleration, assignment fee, increase, or other fee as a result of the assumption and assignment. The validity of the assumption and assignment shall not be affected by any dispute relating to the Cure Amounts.

37. **Supplemental Cure Procedures**.

(a) The Debtors shall file a notice of the closing of the Non-Bulk Sale transaction (the "**Closing Notice**") with the Bankruptcy Court within five (5) Business Days of the Closing Date.

The Closing Notice shall include the Closing Date and shall set forth the Supplemental Cure Claims Bar Date as defined herein.

(b) Each non-Debtor counterparty to an Assumed Contract/Lease shall have thirty (30) days after the Closing Date (the "**Supplemental Cure Claims Bar Date**") to file with the Bankruptcy Court a supplemental cure claim for any accrued but unbilled or unknown amounts that accrued after the Cure Objection Deadline but before the Closing Date and are not reflected in the Revised Cure Schedule that such counterparty asserts are owed under section 365(b)(1)(B) of the Bankruptcy Code (each, a "**Supplemental Cure Claim**"). Any non-Debtor counterparty that does not timely file a Supplemental Cure Claim by the Supplemental Cure Claims Bar Date shall be forever barred and estopped from asserting any such amounts. All Supplemental Cure Claims (including those relating to the Just Salad Leases) shall be the responsibility of the Debtors' estates (the party responsible for a Supplemental Cure Claim, the "**Responsible Party**"). Except as otherwise provided in this Order or the relevant APA, all parties shall be enjoined form seeking payment from any Buyer for any Supplemental Cure Claim.

(c) Each Supplemental Cure Claim must: (i) identify the applicable Assumed Contract/Lease; (ii) set forth a detailed calculation of the amounts claimed; (iii) attach all supporting documents, invoices, statements, or other evidence substantiating the amounts claimed; and (iv) be served on counsel for the Debtors and counsel for the Buyer in accordance with the notice provisions of this Non-Bulk Sale Order.

(d) The Responsible Party shall pay any undisputed Supplemental Cure Claim amounts within thirty (30) days of the filing of the applicable Supplemental Cure Claim.

(e) The Responsible Party may object to any disputed Supplemental Cure Claim amounts by filing an objection with the Bankruptcy Court within thirty (30) days of the filing of

the applicable Supplemental Cure Claim. Any disputed Supplemental Cure Claim amounts shall be resolved by the Bankruptcy Court upon hearing, with notice to the applicable contract counterparty, the Debtors, the applicable Buyer, and the Committee. Pending resolution of any disputed Supplemental Cure Claim, the Responsible Party shall pay any undisputed portion of such claim in accordance with the preceding paragraph.

(f) Nothing in these Supplemental Cure Procedures shall afford any non-Debtor counterparty any greater rights than those afforded under section 365 of the Bankruptcy Code with respect to the cure of defaults and the payment of actual pecuniary losses in connection with the assumption and assignment of the Assumed Contracts/Leases. The Supplemental Cure Procedures are intended solely to provide an orderly mechanism for the assertion and resolution of accrued but unbilled or unknown cure amounts under section 365(b)(1)(B) of the Bankruptcy Code.

38. The Buyer has demonstrated adequate assurance of future performance under the Assumed Contracts/Leases included in the Successful Bid and approved at the Non-Bulk Sale Hearing within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

39. **Successor Liabilities**. The consideration provided by the Buyer for the Debtors' rights, title, and interest in the Non-Bulk Sale Assets under the APA constitutes reasonably equivalent value and fair consideration for the Non-Bulk Sale Assets under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, and other applicable law within the meaning of section 544(b) of the Bankruptcy Code, under the laws of the United States, any state, territory, possession, or the District of Columbia. The sale of the Non-Bulk Sale Assets may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code, or any other provision of the Bankruptcy

Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal, state, or foreign laws.

40. None of the Buyer or the Buyer Parties, each in their capacities as such, as a result of any action taken in connection with the APA, the consummation of the transactions contemplated thereby, including, without limitation, the Non-Bulk Sale Transaction, or the transfer or operation of the Non-Bulk Sale Assets, shall be deemed to: (a) be a legal successor or successor employer to any Debtor (including, without limitation, with respect to any health or benefit plans) or otherwise be deemed a successor to any Debtor; (b) have, *de facto*, or otherwise, merged or consolidated with or into any Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of any Debtor or the enterprise of any Debtor, including, without limitation, in the case of each of (a)–(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, or the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"); or (ii) in respect of (1) any environmental liabilities, debts, claims or obligations arising from conditions existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances, or wastes), which may be asserted on any basis, including, without limitation, under CERCLA and (2) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine. Without limiting the generality of the foregoing, none of the Buyer or the Buyer Parties, each in their capacities as such, shall have any responsibility for any (a) liability or other obligation of the Debtors related to the Non-Bulk Sale Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. By virtue of the purchase of the Non-Bulk Sale Assets, none of the Buyer or the Buyer Parties, each in their capacities as such, shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective

businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon, but not limited to, any theory of antitrust, environmental (including, without limitation, CERCLA), successor or transferee liability, de facto merger or substantial continuity, or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, any liabilities or obligations related to or arising from any settlement or injunction or any liabilities on account of any taxes (including, without limitation, sales and use taxes) arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Non-Bulk Sale Assets, in each case, either (x) arising on or prior to the Closing Date, or (y) from and after the Closing Date, but which arise out of or relate to any act, omission, circumstances, breach, default or other event occurring before the Closing Date. The Buyer would not have acquired the Non-Bulk Sale Assets but for the foregoing protections against successor or transferee Liability.

41. **Good Faith**. The transactions contemplated by the APA are undertaken by the Buyer and the Buyer Parties, in their capacities as such, without collusion and in good faith (including as that term is used in section 363(m) of the Bankruptcy Code) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Non-Bulk Sale shall not affect the validity of the Non-Bulk Sale with the Buyer and the Buyer Parties, in their capacities as such, unless such authorization is duly stayed pending such appeal. Each of the Buyer and the Buyer Parties, in their capacities as such, is a good-faith purchaser of the Non-Bulk Sale Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

42. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APA in this Non-Bulk Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Non-Bulk Sale Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Non-Bulk Sale Order. All provisions of this Non-Bulk Sale Order are non-severable and mutually dependent. To the extent that this Non-Bulk Sale Order is inconsistent with any prior order or pleading with respect to the Non-Bulk Sale Motion in these Chapter 11 Cases, the terms of this Non-Bulk Sale Order shall control.

43. **Material Modifications**. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; *provided*, *further*, that any such modification, amendment, or supplement is served on the Committee within one (1) business day of execution; *provided*, *however*, that any modification, amendment, or supplement that has a material adverse effect on the Debtors' estates shall be (i) filed on the docket and served on the master service list, and (ii) parties in interest shall have five (5) days to object to any such amendment. Absent any such objection, such modification, amendment, or supplement shall be binding, and any timely objection shall be heard by the Court on an expedited basis.

44. **Escrow**. Pursuant to the applicable APA and the Non-Bulk Sale Bidding Procedures, each Buyer's Deposit may be held by the Escrow Agent pursuant to the applicable Escrow Agreement. Each Deposit and any proceeds thereof shall be held, administered, and

disbursed in accordance with the applicable APA and Escrow Agreement, and shall not constitute property of the Debtors' estates unless and until validly released to the Debtors pursuant to the terms thereof.

45. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan, any order confirming any such plan, or any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these Chapter 11 Cases to chapter 7 or dismissing these Chapter 11 Cases) or any related proceeding subsequent to entry of this Non-Bulk Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Non-Bulk Sale Order. To the extent that the Closing Date has not occurred prior to confirmation of any Chapter 11 plan, the Debtors may implement this Non-Bulk Sale Order through any confirmed Chapter 11 plan.

46. **Tax Provisions and Pre-Closing Rent**. The Debtor shall pay all obligations under Assumed Leases due prior to October 31, 2026, including obligations for payment of rent, additional rent, and Transaction Privilege Tax; provided, however, that any obligations to pay taxing authorities directly shall be governed by paragraphs 47 and 48 herein. In addition, the Debtors shall bear all rent, additional rent, and other charges under the Just Salad Leases attributable to periods prior to the Closing Date as provided in the applicable APA. In addition, and without limiting the foregoing, the Debtors shall bear all rent, additional rent, and other charges under all other Assumed Leases attributable to periods prior to the applicable Closing Date.

47. **Texas Taxing Authorities Provisions**. For the avoidance of doubt, and notwithstanding anything to the contrary in this Non-Bulk Sale Order or any APA, to the extent any of the Debtors' property in Texas subject to any ad valorem tax claims held by any of the Texas Taxing Authorities[6] is to be sold, the Debtors shall pay any delinquent taxes owed to the

[6] The term "**Texas Taxing Authorities**" is defined as all ad valorem taxing jurisdictions represented by the firms of Linebarger Goggan Blair & Sampson, LLP, Perdue, Brandon, Fielder, Collins & Mott LLP, McCreary Veselka Bragg

Texas Taxing Authorities with respect to the Non-Bulk Sale Assets for tax years 2025 and prior, including any accrued penalties and interest (the "**Delinquent Taxes**"), as soon as reasonably practicable after closing, but, in any event, no later than three (3) business days after closing; *provided, however*, the Debtors shall ensure that an amount sufficient to satisfy such Delinquent Taxes is set aside from the sale proceeds prior to making any disbursement of such proceeds to any other person or entity. The Texas Taxing Authorities' ad valorem tax liens securing payment of the Delinquent Taxes shall be retained against the sale proceeds until such time as the Delinquent Taxes are paid in full. Any property taxes owing to any of the Texas Taxing Authorities for tax year 2026 pertaining to the Non-Bulk Sale Assets shall become the responsibility of the Buyer and the 2026 ad valorem tax liens shall be retained against the Non-Bulk Sale Assets until said taxes, including any penalties and interest that may accrue, are paid in full. To the extent there is any proration between the Debtors and the Buyer with respect to the Non-Bulk Sale Assets for tax year 2026, the Debtors' pro-rated portion shall be credited to the Buyer at closing or on terms agreed upon by the Debtors and Buyer. Any dispute regarding any proration of the 2026 ad valorem taxes between the Debtors and Buyer shall have no effect on Buyer's responsibility to pay such taxes. At least three (3) business days before the applicable Closing, the Debtors shall deliver to the applicable Buyer a good-faith estimate, calculated on a per diem basis, of the prorated

---

and Allen, and Abernathy, Roeder, Boyd & Hullett, P.C., including but not limited to Bexar County, Dallas County, Town of Fairview, McLennan County, Town of Prosper, Prosper Independent School District, Rockwall CAD, Spring Independent School District, Meadowhill Regional Municipal Utility District, Fort Bend Independent School District, Fort Bend County Levee Improvement District #15, Frisco Independent School District, Fort Bend County Municipal Utility District #128, Fort Bend County Municipal Utility District #143, City of Katy, Fort Bend County Municipal Utility District #161, Fort Bend County Municipal Utility District #167, City of Rosenberg, Dickinson Independent School District, Clear Creek Independent School District, Harris County Municipal Utility District #433, City of Garland, Bell County Tax Appraisal District, Guadalupe County, City of Waco, Waco Independent School District, Tarrant County, City of Hurst, City of Allen, Allen Independent School District, Collin County, Collin College, City of Plano, Plano Independent School District, City of McKinney, McKinney Independent School District, and Princeton Independent School District (such Collin County entities, collectively, the "**Collin County Taxing Authorities**").

portion of the 2026 ad valorem taxes levied by the Texas Taxing Authorities on the applicable Non-Bulk Sale Assets that accrued prior to the applicable Closing Date (such prorated portion, the "**Debtors' Pre-Closing Tax Share**"). The estimated amount of the Debtors' Pre-Closing Tax Share shall be credited to the applicable Buyer against the Purchase Price at the applicable Closing. If the actual amount of the Debtors' Pre-Closing Tax Share, as determined from the final 2026 ad valorem tax statements issued by the Texas Taxing Authorities, exceeds the estimated amount credited at the applicable Closing, the Debtors (or any successor to the Debtors, including any liquidating trustee or plan administrator) shall pay the amount of such excess to the applicable Buyer. If the estimated amount credited at the applicable Closing exceeds the actual amount of the Debtors' Pre-Closing Tax Share, the applicable Buyer shall pay the amount of such excess to the Debtors (or any successor to the Debtors, including any liquidating trustee or plan administrator).

48. As to any 2026 property taxes that are the obligation of the Seller to pay under the applicable APA in states other than Texas (the "**Non-Texas Property Taxes**") that the Debtors are obligated to pay directly to such taxing authorities (the "**Non-Texas Taxing Authorities**"), the Debtors shall pay all such taxes to any taxing authorities that are due on or before October 31, 2026 that are attributable to periods prior to October 31, 2026. At least three (3) business days before the applicable Closing, the Debtors shall estimate the amount of any accrued but unpaid 2026 Non-Texas Property Taxes pertaining to the applicable Non-Bulk Sale Assets prior to such Closing based on the most recent information available to the Debtors (the "**Pre-Closing Non-Texas Accrued Property Taxes**"). The applicable Buyer shall deduct the Pre-Closing Non-Texas Accrued Property Taxes from the Purchase Price to be paid at Closing to the Debtors and shall pay such Pre-Closing Non-Texas Accrued Property Taxes to the Non-Texas Taxing Authorities at Closing. Following Closing, any unpaid property taxes for tax year 2026 pertaining to the

applicable Non-Bulk Sale Assets shall become the responsibility of the applicable Buyer. If the actual assessed amount of property taxes attributable to the 2026 period prior to Closing is higher than the Pre-Closing Non-Texas Accrued Property Taxes, the Debtors or their successor shall pay the difference to the applicable Buyer.

49. **Specific Objections**. With respect to store number 1108, at 17137 N. Litchfield Road, Surprise, AZ 85374 (the "**Litchfield Store**"), the following shall apply:

a. Permitted Use: Representations and Warranties of Landlord Regarding Demised Premises:

> With respect to the Litchfield Store, whose landlord is Miry and Zeev Rabinovitch Family Trust ("**Landlord**"), the first sentence of the second paragraph in section 1 (f) of the Ground Lease is modified as follows: Subject to an initial one hundred and eighty (180) day grace period starting on the closing date of the assignment transaction for Swig to refurbish and renovate the Store 1108 location (Rent and Additional Rent shall continue to be due and payable during the grace period), Tenant shall continuously use and occupy the entire Premises during the term of this Lease, which use and occupancy shall be solely for the purpose of conducting the business for the operation of a Swig beverage location, a specialty restaurant that sells non-alcoholic beverages, including flavored soda fountain drinks, energy drinks, fruit-flavored sparkling waters, hot chocolate, and dessert and/or snack items, including cookies, pretzel bites and frozen custard, and any related or incidental items thereto, and any other use authorized by Landlord in writing from time to time in Landlord's reasonable discretion, but for no other use ("**Permitted Use**") and for no other purpose or purposes whatsoever and under no other store name whatsoever, without the express written consent of Landlord, and Landlord consents and agrees that Swig's operation of the Ground Lease for a prototypical Swig location complies with the Ground Lease use and the CC&R's.[7]
>
> The cure payment established in the revised cure schedule of $22,170.24 shall be paid to the Landlord at closing. Lastly, at closing, Swig Holdco, Inc. (parent of Swig) shall execute and deliver a Guaranty in favor of the Landlord in the form and content attached to the Ground Lease for Store 1108.

---

[7] The remaining sentences of Section 1 (f) of the Ground Lease (including the entire Section 1 of the Ground Lease) for the Litchfield Store shall remain unchanged. All use restrictions in the Ground Lease and CC&R's shall remain in full force and effect.

50. **Provision applicable to Just Salad Lease of Higley Store**. The following provision applies with respect to the Ground Lease of Store No. 1142 located at 5218 E. Baseline Rd., Gilbert, AZ 85234 (the "**Higley Store**"). MSR Higley LLC ("**Higley Landlord**") is the landlord of the Ground Lease of the Higley Store (the "**Higley Lease**"). The Higley Lease is one of the Just Salad Leases that is being assigned to Buyer Just Salad (i.e., Just Salad New York LLC). As a condition to the assignment of the Debtors' interests in the Higley Lease to Just Salad, Just Salad Holdco LLC ("**JS Holdco**") shall execute a limited guaranty for the benefit of Higley Landlord (the "**Limited Guaranty/Higley Lease**"), in form and substance reasonably acceptable to Just Salad, JS Holdco and Higley Landlord, under which JS Holdco guaranties the obligations of Just Salad under the Higley Lease to pay Basic Monthly Rent that become due and payable during the Guaranty Period/Higley Lease. For purposes of this Non-Bulk Sale Order, "**Guaranty Period/Higley Lease**" shall mean the eighteen (18) month period commencing on the effective date of the assignment of the Higley Lease to Just Salad. If Just Salad does not default in the payment of Basic Monthly Rent that become due and payable during the Guaranty Period/Higley Lease, then the Limited Guaranty/Higley Lease shall terminate, and JS Holdco shall have no liability thereunder. Notwithstanding anything to the contrary contained in this Non-Bulk Sale Order or in the Limited Guaranty/Higley Lease, the total liability of JS Holdco under the Limited Guaranty/Higley Lease shall in no event exceed, and shall be limited to, the aggregate amount of Basic Monthly Rent payments that become due and payable by Just Salad under the Higley Lease for such eighteen (18) month period.

51. **<u>Provision applicable to Just Salad Lease of Bell Road Store</u>**. The following provision applies with respect to the Ground Lease of Store No. 1152 located at 16885 W. Bell Rd., Surprise, AZ 85374 (the "**Bell Road Store**"). Bell Road and Loop 303 LLP ("**Bell Road Landlord**") is the landlord of the Ground Lease of the Bell Road Store (as amended, the "**Bell Road Lease**"). The Bell Road Lease is one of the Just Salad Leases that is being assigned to Buyer Just Salad (i.e., Just Salad New York LLC). As a condition to the assignment of the Debtors' interests in the Bell Road Lease to Just Salad, JS Holdco shall execute a limited guaranty for the benefit of Bell Road Landlord (the "**Limited Guaranty/Bell Road Lease**"), in form and substance reasonably acceptable to Just Salad, JS Holdco and Bell Road Landlord, under which JS Holdco guaranties the obligations of Just Salad under the Bell Road Lease to pay Minimum Rent and Common Area Expenses that become due and payable during the Guaranty Period/Bell Road Lease. For purposes of this Non-Bulk Sale Order, "**Guaranty Period/Bell Road Lease**" shall mean the eighteen (18) month period commencing on the effective date of the assignment of the Bell Road Lease to Just Salad. If Just Salad does not default in the payment of Minimum Rent or Common Area Expenses that become due and payable during the Guaranty Period/Bell Road Lease, then the Limited Guaranty/Bell Road Lease shall terminate, and JS Holdco shall have no liability thereunder. Notwithstanding anything to the contrary contained in this Non-Bulk Sale Order or in the Limited Guaranty/Bell Road Lease, the total liability of JS Holdco under the Limited Guaranty/Bell Road Lease shall in no event exceed, and shall be limited to, the aggregate amount of Minimum Rent and Common Area Expenses payments that

become due and payable by Just Salad under the Bell Road Lease for such eighteen (18) month period.

52. **Survival**. The terms and provisions of this Non-Bulk Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto as of the date of the entry of this Non-Bulk Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting these Chapter 11 Cases from chapter 11 to chapter 7 or dismissing these Chapter 11 Cases, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Non-Bulk Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the Debtors and all other parties and their respective successors and permitted assigns, including any trustee (including one appointed under the plan), administrator, examiner, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases (including a chapter 7 trustee, if applicable) shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the APA and the terms of this Non-Bulk Sale Order.

53. **Calculation of Time**. All time periods set forth in this Non-Bulk Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54. **Further Assurances**. From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all instruments and certificates (including deeds, bills of sale, instruments of conveyance, powers of attorney, assignments, assumptions, and assurances), and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the

transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in the Buyer its right, title, and interest in and to the Non-Bulk Sale Assets.

55. **Automatic Stay**. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies or exercise any of its rights under the APA or any other Non-Bulk Sale-related document, including to give any notice under the APA or to terminate the APA pursuant to the terms thereof. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

56. **Retention of Jurisdiction**. This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Non-Bulk Sale Order and the APA, all amendments to any of the foregoing, and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Buyer in accordance with the APA; to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Non-Bulk Sale, including, without limitation, adjudicate any and all disputes concerning or relating to the Non-Bulk Sale, including any and all disputes with any counterparty to any executory contract or unexpired lease of the Debtors and any party that has, or asserts, possession, control, or other rights in respect of any of the Non-Bulk Sale Assets; to protect the Buyer against any claims, liens, encumbrances, or other interests in the Debtors or the Non-Bulk Sale Assets of any kind or nature whatsoever attaching to the proceeds of the Non-Bulk Sale; and to enter any orders under sections 105, 363, or 365 of the Bankruptcy Code with respect to the Assumed Contracts/Leases.

57. The requirements set forth in Bankruptcy Rules 4001, 6004(a), 6004(h), and 6006, and applicable Local Rules, are hereby waived.

58. Notwithstanding entry of this Non-Bulk Sale Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

59. The Debtors are authorized to take all actions necessary or appropriate to implement the relief granted in this Non-Bulk Sale Order.

Signed: ____________________, 2026

______________________________________
Alfredo R. Pérez
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

Asset Purchase Agreements of the Successful Bidders

**Exhibit A-1**

Asset Purchase Agreement between And Go Concepts, LLC and Beyond Salt and Pepper, LLC

**Exhibit A-2**

Asset Purchase Agreement between And Go Concepts, LLC and Brew Culture, LLC

**Exhibit A-3**

Asset Purchase Agreement between And Go Concepts, LLC
and Boersma Bros. LLC (Dutch Bros)

**Exhibit A-4**

Asset Purchase Agreement between And Go Concepts, LLC and Just Salad New York LLC

**Exhibit A-5**

Asset Purchase Agreement between And Go Concepts, LLC and Rita's Stores, LLC

**Exhibit A-6**

Asset Purchase Agreement between And Go Concepts, LLC and Swig Stores, LLC

**Exhibit B**

**Successful Bidders, Purchase Prices, and Back-Up Bidders**

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| Store #1103 – 3299 E. Williams Field Rd., Gilbert, AZ 85295 | Beyond Salt and Pepper, LLC | $1.00 | N/A | N/A |
| Store #1107 – 1040 W. Southern Ave., Mesa, AZ 85210 | Beyond Salt and Pepper, LLC | $1.00 | N/A | N/A |
| Store #1101 – 743 N. Gilbert Rd., Gilbert, AZ 85234 | Brew Culture, LLC | $500,000.00 | N/A | N/A |
| Store #1149 – 19485 W. Indian School Rd., Litchfield Park, AZ 85340 | Brew Culture, LLC | $500,000.00 | Dutch Bros., LLC | $1,000,000.00 |
| Store #1416 – 12556 N. Beach St., Fort Worth, TX 76244 | Brew Culture, LLC | $500,000.00 | Sip and Go, LLC | $511,111.00 |
| Store #1440 – 4751 S. Custer Rd., McKinney, TX 75070 | Brew Culture, LLC | $500,000.00 | N/A | N/A |
| Store #1174 – 7480 S. 59th Ave., Laveen, AZ 85339 | Brew Culture, LLC | $2,595,777.00 | Dutch Bros., LLC | $900,000.00 |
| Store #1104 – 5259 E. Brown Rd., Mesa, AZ 85205 | Brew Culture, LLC | $1,995,777.00 | Dutch Bros., LLC | $900,000.00 |
| Store #1106 – 2006 W. Pinnacle Peak Rd., Phoenix, AZ 85027 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1110 – 5985 W. Chandler Blvd., Chandler, AZ 85226 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1122 – 7800 S. Priest Dr., Tempe, AZ 85284 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1168 – 4965 S. Arizona Ave., Chandler, AZ 85248 | Dutch Bros., LLC | $1,300,000.00 | Swig Stores, LLC | $1,200,000.00 |
| Store #1164 – 15437 W. Cactus Rd., Surprise, AZ 85379 | Dutch Bros., LLC | $26,293.00 | Brew Culture, LLC | $25,777.00 |

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| Store #1142 – 5218 E. Baseline Rd., Gilbert, AZ 85234 | Just Salad New York LLC | $34,000.00 plus Cure Costs | N/A | N/A |
| Store #1109 – 719 E. Bethany Home Rd., Phoenix, AZ 85014 | Just Salad New York LLC | $10,000.00 plus Cure Costs | N/A | N/A |
| Store #1152 – 16885 W. Bell Rd., Surprise, AZ 85374 | Just Salad New York LLC | $10,000.00 plus Cure Costs | N/A | N/A |
| Store #1422 – 8448 Denton Hwy., Watauga, TX 76148 | Rita's Stores, LLC | $171,869.00 | N/A | N/A |
| Store #1127 – 3229 S. 48th St., Tempe, AZ 85282 | Swig Stores, LLC | $780,000.00 | N/A | N/A |
| Store #1108 – 17137 N. Litchfield Rd., Surprise, AZ 85374 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1124 – 777 W. Indian School Rd., Phoenix, AZ 85013 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1140 – 1730 E. Tucson Marketplace Blvd., Tucson, AZ 85713 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1144 – 90 W. Ocotillo Rd., Queen Creek, AZ 85140 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1145 – 18573 N. 59th Ave., Glendale, AZ 85308 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1163 – 17171 W. Yuma Rd., Goodyear, AZ 85338 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1146 – 125 N. Estrella Pkwy., Goodyear, AZ 85338 | Swig Stores, LLC | $400,000.00 | N/A | N/A |
| Store #1912 – 4925 Blue Diamond Rd., Las Vegas, NV 89139 | Swig Stores, LLC | $300,000.00 | N/A | N/A |
| Store #1702 – 1209 E. Kenosha St., Broken Arrow, OK 74012 **[Reserved Lease –** | Swig Stores, LLC | $100,000.00 | N/A | N/A |

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| **October 20, 2026 hearing; not approved hereby]** | | | | |
| Store #1704 – 11360 E. 96th St. N., Owasso, OK 74055 **[Reserved Lease – October 20, 2026 hearing; not approved hereby]** | Swig Stores, LLC | $100,000.00 | N/A | N/A |
| Store #1113 – 21429 S. Ellsworth Rd., Queen Creek, AZ 85142 | Swig Stores, LLC | $1,425,000.00 | Dutch Bros., LLC | $1,400,000.00 |
| Store #1134 – 1322 E. Florence Blvd., Casa Grande, AZ 85122 | Swig Stores, LLC | $1.00 | N/A | N/A |
| Intellectual Property | Beyond Salt and Pepper, LLC | $180,000.00 | AYG Acquisition Series | $151,112.00 |

# Exhibit B

**Redline Revised Non-Bulk Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **And Go Concepts, LLC, *et al.*,** | § | **Case No. 26-90753 (ARP)** |
| **Debtors.**[1] | § | **(Jointly Administered)** |

**ORDER (I) APPROVING THE NON-BULK SALE OF ASSETS TO THE SUCCESSFUL BIDDERS UNDER THEIR RESPECTIVE FINAL PURCHASE AGREEMENTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**
[Relates to Dkt. Nos. 97, 133, 196, 240, and 490]

Upon the motions [Dkt. Nos. 97, 133, and 196] (collectively, the "**Non-Bulk Sale Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), including And Go Concepts, LLC (the "**Seller**"), for entry of an order (this "**Non-Bulk Sale Order**") (a) approving and authorizing the sale (the "**Non-Bulk Sale**") of certain of the Debtors' assets, including unexpired leases, site-level personal property and FF&E, intellectual property (including the Salad and Go trade name, trademarks, recipes, operating systems, and related goodwill), permits, licenses, books and records, and all other

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are And Go Concepts, LLC (4415); SAG Corporate Services LLC (0810); AGC-Arizona Facilities, LLC (7507); AGC-North Texas Facilities, LLC (7091); Garland New Market LLC (6838); AGC Topco, LLC (6845); and AGC Holdco, LLC (0294). The location of the Debtors' service address for purposes of these chapter 11 cases is 909 E. Broadway Road, Tempe, AZ 85282. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/AndGoConcepts.

[2] Capitalized terms used herein but not defined shall the meaning given to such terms in the Non-Bulk Sale Motion or the APA, as applicable. Unless the context otherwise requires, each reference in this Non-Bulk Sale Order to "the Buyer," the "Successful Bidder," the "Buyer Parties," the "APA," the "Purchase Price," the "Deposit," the Successful Bid," the "Closing," or the "Closing Date" shall refer to each Buyer and its Buyer Parties severally, and to such Buyer's APA, Purchase Price, Deposit, Successful Bid, Closing, and Closing Date, solely with respect to the Non-Bulk Sale Assets and Assumed Contracts/Leases acquired by such Buyer.

assets not otherwise excluded (collectively, the "**Non-Bulk Sale Assets**"), but excluding assets associated with the Debtors' central kitchen facilities and assets sold under the Bulk Sale Order, free and clear of liens, claims, encumbrances, and other interests, to each of the successful bidders identified on **Exhibit B** hereto (each, a "**Successful Bidder**" or "**Buyer**," and collectively, the "**Successful Bidders**" or "**Buyers**"), each under its respective final purchase agreement substantially in the forms attached hereto as Exhibits A-1 through A~~-7~~-6, respectively (collectively, **Exhibit A**) (each, as amended or modified, an "**APA**," and collectively, the "**APAs**"), and all other ancillary documents related thereto, (b) authorizing and approving the sale (including all actions taken or required to be taken in connection with the implementation and consummation of the Non-Bulk Sale) of the Non-Bulk Sale Assets, (c) authorizing the assumption and assignment of executory contracts and unexpired leases referenced in the APAs, upon the applicable Closing, and (d) granting related relief, all as more fully set forth herein and in the Non-Bulk Sale Motion; and the Court having entered the Order Approving Bidding Procedures, Auctions, and Related Relief [Dkt. No. 240] (the "**Bidding Procedures Order**") approving the Non-Bulk Bidding Procedures (as revised, the "**Non-Bulk Sale Bidding Procedures**" or "**Non-Bulk Bidding Procedures**"); and the Debtors having conducted a single, unified auction for all of the Non-Bulk Sale Assets on September 30, 2026 (the "**Non-Bulk Sale Auction**" or "**Non-Bulk Auction**"); and the Debtors having filed the *Notice of Auction Results, Successful Bidders for Non-Bulk Sale* [Dkt. No. 490] (the "**Notice of Auction Results**"); and the Debtors having determined that each Buyer submitted the highest or otherwise best bid for the Non-Bulk Sale Assets set forth opposite its name on Exhibit B and that each Buyer is a Successful Bidder for such Non-Bulk Sale Assets; and the Court having conducted a hearing on October 14, 2026 (the "**Non-Bulk Sale Hearing**"); and the Court having reviewed and

considered the APAs, the Non-Bulk Sale Motion, all relief related thereto, the objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Non-Bulk Sale Motion, including, among other things, the Declaration of Douglas J. Brickley [Dkt. No. 537-2] (the "**Brickley Declaration**") and the Buyers, including among other things, the statements made by counsel on the record at the hearing; and it appearing that due notice of the Non-Bulk Sale Motion, Non-Bulk Sale Hearing, and the APAs has been provided; and the Court having held a hearing on the Non-Bulk Sale and the relief requested in the Non-Bulk Sale Motion, at which time all parties were offered an opportunity to be heard with respect to the Non-Bulk Sale Motion; and it appearing that the relief requested in the Non-Bulk Sale Motion, solely with respect to the Approved Leases (as defined herein) and the other Non-Bulk Sale Assets approved herein, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Non-Bulk Sale Motion establish just cause for the relief granted herein; and after due deliberation it is hereby:

**FOUND, CONCLUDED, AND DETERMINED THAT:**[3]

A. **Petition Date.** On August 4, 2026, and August 5, 2026, (collectively, the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 24, 2026, the United States

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Trustee for the Southern District of Texas appointed the Official Committee of Unsecured Creditors (the "**Committee**"). Dkt. No. 154.

B. **Jurisdiction and Venue**. The Court has jurisdiction to consider the Non-Bulk Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and the Non-Bulk Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Statutory Predicates**. The statutory bases for the relief sought in the Non-Bulk Sale Motion are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the applicable Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**") and the Complex Case Procedures.

D. **Final Order**. This Non-Bulk Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Non-Bulk Sale Order and authorizes the closing of all transactions contemplated hereby and in the APA without regard to any stay or delay in its implementation, and expressly directs entry of judgment as set forth herein.

E. **Notice**. As evidenced by the certificates of service previously filed with the Court (including [Dkt. Nos. 165, 411, and 523]), proper, sufficient, and timely notice of the Non-Bulk Sale Motion, the Non-Bulk Sale Hearing, the Non-Bulk Sale, the Cure Amounts (as defined herein) and the transactions contemplated thereby and hereunder has been provided in

accordance with sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and the Local Rules. The Debtors have complied with all obligations to provide notice of the Non-Bulk Sale Motion, the Non-Bulk Auction, the Non-Bulk Sale Hearing, and the APAs. No other or further notice of the Non-Bulk Sale Motion, the Non-Bulk Auction, the Non-Bulk Sale Hearing, the APAs, or the Non-Bulk Sale is required. A reasonable opportunity to object or to be heard regarding the relief requested in the Non-Bulk Sale Motion was afforded to all interested persons and entities. The Debtors served a notice of their intent to assume and assign the Assumed Contracts/Leases (as defined herein) and of the related Cure Amounts (as defined herein) upon each counterparty to an executory contract or unexpired lease proposed to be assumed and assigned to a Buyer. The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect thereof. The Debtors filed and served the Notice of Auction Results on October 1, 2026, which identified the Successful Bidders and Back-Up Bidders and afforded counterparties a reasonable opportunity to object to adequate assurance of future performance by the Successful Bidders by October 6, 2026, at 5:00 p.m. (Central Time) (the "**Post-Auction Objection Deadline**").

F. **Sufficiency of Marketing**. The pre- and post-petition marketing process undertaken by the Debtors and their professionals, together with the Non-Bulk Sale Bidding Procedures and the competitive Non-Bulk Auction, which was conducted as a single, unified auction of all of the Non-Bulk Sale Assets on September 30, 2026, in which Qualified Bidders were permitted to submit competing bids for the Non-Bulk Sale Assets on an individual, combination, or aggregate basis and the Successful Bidders were selected based on the highest

or otherwise best bids, was adequate and appropriate and was reasonably calculated to maximize the value of the Non-Bulk Sale Assets for the benefit of the Debtors' estates.

G. The Debtors filed and served a Supplemental Cure Notice [Dkt. No. 250] identifying the amounts required to cure any and all defaults and actual pecuniary losses to the non-Debtor counterparties to unexpired leases and executory contracts that may be assumed and assigned in connection with the Non-Bulk Sales, including all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties are entitled to assert under the Bankruptcy Code with respect to such leases and contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to, such leases and contracts, including any accrued but unbilled or unpaid claims or obligations as of the Closing, including any claims on account of any valid indemnification obligations or repair and maintenance obligations. The service and provision of the Supplemental Cure Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of the assumption and assignment of the Assumed Contracts/Leases (as defined below) or establishing a Cure Amount (as defined below) for any respective Assumed Contract/Lease. Non-Debtor counterparties to the applicable executory contracts and unexpired leases had adequate opportunity to object to their assumption and assignment and to the cure amounts set forth in the Supplemental Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline for a non-Debtor

counterparty to file an objection to the cure amounts set forth in the Supplemental Cure Notice (a "**Cure Objection**," and such deadline, the "**Cure Objection Deadline**") has expired. Certain non-Debtor counterparties timely filed Cure Objections, and the Debtors negotiated with those counterparties to resolve them. A revised cure schedule reflecting the resolution of those Cure Objections is attached hereto as **Exhibit C** (the "**Revised Cure Schedule**"). The amounts set forth in the Revised Cure Schedule (collectively, the "**Cure Amounts**") are the amounts required to cure all defaults and actual pecuniary losses for each non-Debtor counterparty to an applicable assumed executory contract and unexpired lease approved for assumption and assignment by this Non-Bulk Sale Order (collectively, the "**Assumed Contracts/Leases**"), which unexpired leases are limited to the Approved Leases (as defined herein). To the extent any Cure Objection is not resolved by the Revised Cure Schedule, such Cure Objection has been withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any non-Debtor counterparty did not timely file a Cure Objection, such party shall be deemed to have consented to (x) the assumption and assignment of the Assumed Contract/Lease and (y) the cure amount set forth in the Supplemental Cure Notice, which shall be the Cure Amount for such Assumed Contract/Lease as reflected in the Revised Cure Schedule. Any non-Debtor counterparty that did not timely assert any additional amount beyond the stated cure amounts by the Cure Objection Deadline is deemed to have consented and is forever barred from asserting any such amount against any party, including the Buyer, the Debtors, and the Debtors' estates. Notwithstanding the foregoing, the Supplemental Cure Procedures set forth in Paragraphs ~~34~~37(a) through ~~34~~37(f) of this Non-Bulk Sale Order shall govern the assertion and resolution of any accrued but unbilled or unknown cure amounts not reflected in the Revised Cure Schedule.

H. **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute, deliver, and perform their obligations under the APA and all other documents contemplated thereby and by this Non-Bulk Sale Order, and the Debtors' sale of the Non-Bulk Sale Assets has been duly and validly authorized by all necessary corporate or similar action; (ii) have all corporate power and authority necessary to consummate the transactions contemplated by the APA; and (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. The Debtors' respective boards of directors or equivalent governing bodies have authorized the execution and delivery of the APA and the sale of the Non-Bulk Sale Assets to the Buyer. No consents or approvals, other than those expressly provided for herein or in the APA and entry of this Non-Bulk Sale Order, are required for the Debtors to consummate such transactions.

I. **No Fraudulent Transfer**. The consideration provided by the Buyer pursuant to the APA and this Non-Bulk Sale Order (i) was negotiated at arm's length, (ii) is fair and reasonable, (iii) is the highest or otherwise best offer for the Non-Bulk Sale Assets, and (iv) constitutes reasonably equivalent value and fair consideration (each as defined in the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code, as applicable) under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Buyer is fraudulently entering into the transactions contemplated by the APA under any law, including, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

J. The Debtors are the sole and lawful owners of the Non-Bulk Sale Assets. The Non-Bulk Sale Assets constitute property of the Debtors' estates and title to the Non-Bulk Sale Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Non-Bulk Sale Assets to the Buyer, in accordance with the APA and this Non-Bulk Sale Order, will be, as of the Closing Date, a legal, valid, binding, and effective transfer of the Non-Bulk Sale Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtors to the Non-Bulk Sale Assets, free and clear of all claims, liens, encumbrances, and interests (other than Assumed Liabilities). Claims in the APA are defined by referencing the definition of "claim" in section 101(5) of the Bankruptcy Code and, the breadth of such definition includes, all debts arising under, relating to, or in connection with any act of the Debtors or claims, causes of action, liabilities, obligations, demands, guaranties, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, subleases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, derivative and vicarious liability, alter-ego, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, with the exception of property taxes (including, without limitation, claims on account of income taxes, sales and use taxes, excise taxes, payroll taxes, consumption taxes, Medicare taxes, employment taxes, or any other tax or impost of any kind), regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, or any other matters of any kind or nature, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases,

and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including those that purport to give to any party a right or option to effect any forfeiture, modification, charges of interests of any kind or nature, profit sharing interest or termination of, any of the Debtors' or the Buyer's interests in the Non-Bulk Sale Assets, or any similar rights.

K. **Highest or Otherwise Best Offer**. Good and sufficient reasons for approval of the APAs and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Non-Bulk Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Through the Non-Bulk Auction, the Debtors selected each Successful Bidder as having submitted the highest or otherwise best offer for the applicable Non-Bulk Sale Assets set forth opposite its name on **Exhibit B**, with the next-highest or otherwise next-best bidder(s) designated as the Back-Up Bidder(s), as applicable and as set forth on Exhibit B. As demonstrated by the Brickley Declaration, the evidence proffered or adduced at the Non-Bulk Sale Hearing, and the representations of counsel made on the record at the Non-Bulk Sale Hearing, the Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that the immediate consummation of the Non-Bulk Sale to the Successful Bidders is necessary and appropriate to preserve and maximize the value of the Debtors' estates.

L. The transactions memorialized by each APA with the applicable Successful Bidder, selected through the Non-Bulk Auction, constitutes the highest or otherwise best offer for the applicable Non-Bulk Sale Assets. The consideration provided by each Buyer under its

APA, including the assumption of the Assumed Liabilities, is fair and adequate and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Given the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price and other consideration payable under each APA, the proposed Non-Bulk Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, consistent with their fiduciary duties, and should be approved.

M. **Stalking Horse Bidders and Bid Protections**. In accordance with the Bidding Procedures Order and the Non-Bulk Sale Bidding Procedures, the Debtors designated three stalking horse bidders (each, a "**Stalking Horse Bidder**"): (i) Brew Culture, LLC, under the asset purchase agreement filed at Dkt. No. 452, for Store Nos. 1101, 1149, 1416, and 1440[4]; (ii) Swig Stores, LLC ("**Swig**"), under the asset purchase agreement filed at Dkt. No. 453, for Store Nos. 1108, 1124, 1127, 1140, 1144, 1145, 1146, 1163, 1702, 1704, and 1912; and (iii) Boersma Bros. LLC ("**Dutch Bros**"), under the asset purchase agreement filed at Dkt. No. 469 (the "**Dutch Bros Stalking Horse Agreement**"), for Store Nos. 1104, 1106, 1110, 1122, and 1174 (the "**Group B Assets**") for a purchase price of $4,000,000. Brew Culture, LLC and Swig were each the Successful Bidder for all of the Non-Bulk Sale Assets subject to their respective stalking horse agreements, and no Stalking Horse Bid Protections are payable to either of them. At the Non-Bulk Auction, the Group B Assets were separated: Brew Culture, LLC submitted the highest or otherwise best bids for Store Nos. 1104 and 1174, and Dutch Bros was the Successful Bidder only for Store Nos. 1106, 1110, and 1122. The sale of Store Nos. 1104 and 1174 to Brew Culture, LLC constitutes an Alternative Transaction under the Dutch Bros Stalking Horse Agreement, which entitles Dutch Bros to the Termination Fee of $120,000 provided in Section

[4] The addresses for each store referenced in this paragraph M are reflected on Exhibit B attached hereto.

9.2 thereof (the "**Dutch Bros Termination Fee**"). The Dutch Bros Termination Fee equals three percent (3%) of the cash purchase price under the Dutch Bros Stalking Horse Agreement. It therefore does not exceed the Stalking Horse Bid Protections authorized by paragraph 12 of the Bidding Procedures Order. Dutch Bros provided a material benefit to the Debtors' estates by setting a floor for bidding on the Group B Assets, which resulted in higher aggregate consideration for those assets. The Dutch Bros Termination Fee is an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

N. The consummation of the Non-Bulk Sale and the assumption and assignment of the Assumed Contracts/Leases are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Non-Bulk Sale and the transactions contemplated thereby.

O. **<u>Good Faith of the Buyer and the Debtors</u>**. As demonstrated by (i) the Brickley Declaration; (ii) the testimony and other evidence proffered or adduced at the Non-Bulk Sale Hearing; and (iii) the representations of counsel made on the record at the Non-Bulk Sale Hearing, the APA was negotiated, proposed, and entered into by the Debtors and the Buyer, the Successful Bidder, and their respective management and boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, representatives, affiliates, related parties, all in their capacities as such, without collusion, in good faith, and as a result of arm's-length bargaining, and is substantively and procedurally fair to all parties.

P. The Non-Bulk Auction was conducted without collusion, and the Successful Bidder, their affiliates, and the Related Parties[5] of the Successful Bidder and their affiliates (each

[5] "Related Parties" means, with respect to a person, such person's current and former affiliates, and each of its and their current and former affiliates' respective current and former directors, managers, officers, members,

in their capacities as such, and collectively, the "**Buyer Parties**") are not insiders (as defined in section 101(31) of the Bankruptcy Code) of any of the Debtors. Neither the Debtors nor the Buyer Parties, in their capacities as such, has engaged in any conduct that would cause or permit the Non-Bulk Sale or the APA to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code. Specifically, each of the Buyer Parties has not acted in a collusive manner with any person and the Purchase Price and other consideration payable under the APA were not controlled by any agreement among bidders. The Buyer Parties are purchasing the Non-Bulk Sale Assets in good faith, are good-faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, are therefore entitled to all of the protections afforded by such provision, and otherwise have proceeded in good faith in all respects in connection with these Chapter 11 Cases.

Q. The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors and the Buyer Parties, each in their capacities as such, have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R. **No *Sub Rosa* or *De Facto* Plan.** Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Non-Bulk Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

and their current and former affiliates' respective current and former directors, managers, officers, members, shareholders, unitholders, equityholders (regardless of whether such interests are held directly or indirectly), limited partners, general partners, investment committee members, managing members, principals, employees, agents, franchisees, trustees, representatives, attorneys, accountants, and each insurance, environmental, legal, investment, financial and other advisors and other consultants, agents and sub-advisors of or to such person and of or to such person's affiliates.

S. The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the Non-Bulk Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Non-Bulk Sale with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates, and the Non-Bulk Sale will provide the means for the Debtors to maximize distributions to creditors. The Non-Bulk Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtors, (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities. Accordingly, the Non-Bulk Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors.

T. **No Successor Liability**. By virtue of the consummation of the transactions contemplated under the APA, (i) each of the Buyer and the Buyer Parties is not a continuation of any Debtor and its respective estate, there is not substantial continuity between the Buyer or the Buyer Parties and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer or the Buyer Parties; (ii) neither the Buyer nor the Buyer Parties, in their capacities as such, is holding itself out to the public as a continuation of the Debtors or their respective estates; (iii) the transactions do not amount to a consolidation, merger, or *de facto* merger of the Buyer or the Buyer Parties, and any or all of the Debtors and/or the Debtors' estates; and (iv) the Buyer and the Buyer Parties, in their capacities as such, are not a successor of any or all of the

Debtors or their estates for any purpose, including, without limitation, under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such law, rule, or regulation), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, regulation, doctrine, or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine. Accordingly, the Buyer and the Buyer Parties, in their capacities as such, are not and shall not be deemed a successor to any of the Debtors or their respective estates as a result of the consummation of the Non-Bulk Sale pursuant to the APA and this Non-Bulk Sale Order. Except for the Assumed Liabilities, (i) the transfer of the Non-Bulk Sale Assets to the Buyer and (ii) the assumption and assignment to the Buyer of the Assumed Contracts/Leases do not and will not subject the Buyer or the Buyer Parties, in their capacities as such, to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

U. **Free and Clear**. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and, therefore, the Debtors may sell the Non-Bulk Sale Assets free and clear of any liens, claims, defenses, and interests, in each case, in, on, or related to the Non-Bulk Sale Assets, including, in respect of the following: (i) all mortgages, covenants, liens (statutory or otherwise), deeds of trust, pledges, charges, security interests, encumbrances, or other interests of any kind or character whatsoever; (ii) all claims; (iii) all charges, claims, community

property interests, pledges, conditions, equitable interests, liens (statutory or otherwise), options, security interests, and mortgages; and (iv) all liens, claims, encumbrances, rights, interests, and other interests of any kind or nature whatsoever, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, known or unknown, including rights or claims based on any successor or transferee liability.

V. The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the Non-Bulk Sale to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all liens, claims, encumbrances, and interests other than the Assumed Liabilities. The Debtors may sell the Non-Bulk Sale Assets free and clear of any lien, claim, encumbrance, or interest of any kind or nature whatsoever because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5) and 365 of the Bankruptcy Code has been satisfied. Each entity with a lien, claim, encumbrance, or interest in the Non-Bulk Sale Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Non-Bulk Sale Order, consented to the Non-Bulk Sale or is deemed to have consented to the Non-Bulk Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of such liens, claims, encumbrances, and interests who did not object, or withdrew their objections, to the Non-Bulk Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of liens, claims, encumbrances, and interests (other than the Assumed Liabilities) are adequately protected by having their liens, claims, encumbrances, or interests attach to the proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such liens, claims, encumbrances, or interests are asserted,

subject to the terms of such liens, claims, encumbrances, or interests, with the same validity, force, and effect, and in the same order of priority, which such liens, claims, encumbrances, or interests now have against the Non-Bulk Sale Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

W. The injunction set forth in this Non-Bulk Sale Order against creditors and third parties pursuing liens, claims, encumbrances, or interests on the Non-Bulk Sale Assets is necessary to induce the Buyer to close the Non-Bulk Sale, and the issuance of such injunctive relief is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

X. **Cure/Adequate Assurance**. The Cure Amounts applicable to the Assumed Contracts/Leases included in the Successful Bids and approved at the Non-Bulk Sale Hearing, inclusive of the Required Cure Costs and Lease Expenses, are the amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code to cure all monetary defaults reflected in the Revised Cure Schedule. To the extent that additional amounts may be owed under section 365(b) of the Bankruptcy Code on account of accrued but unbilled obligations, year-end reconciliations, taxes, common area maintenance charges, or other amounts not reflected in the Revised Cure Schedule, such amounts shall be addressed through the Supplemental Cure Procedures set forth in this Non-Bulk Sale Order. Just Salad New York LLC ("**Just Salad**") bid for Store Nos. 1142, 1109, and 1152 (the "**Just Salad Leases**") for an aggregate Purchase Price of $92,938, inclusive of the Cure Amounts for the Just Salad Leases, and Just Salad shall pay the Cure Amounts for the Just Salad Leases to the extent set forth in its APA, with all such amounts credited against the Purchase Price. No other Buyer's Successful

Bid included the payment of Cure Amounts. Accordingly, all Cure Amounts for Assumed Contracts/Leases other than the Just Salad Leases, and any Cure Amounts for the Just Salad Leases that are not Just Salad's responsibility under its APA, and all Supplemental Cure Claims (collectively, the "**Estate Cure Amounts**"), shall be paid by the Debtors' estates, and no Buyer other than Just Salad, to the extent set forth in its APA, shall have any liability for any Cure Amounts. Except as otherwise provided in this Order or in the relevant APA, no Buyer shall have any liability for any Supplemental Cure Claims and all parties shall be enjoined from seeking payments for any Estate Cure Amounts from any Buyer. The Cure Amounts applicable to the Assumed Contracts/Leases included in the Successful Bids and approved at the Non-Bulk Sale Hearing shall not exceed the amounts set forth in the Revised Cure Schedule, except as may be supplemented through the Supplemental Cure Procedures set forth herein. To the extent that the Cure Amounts do not include all accrued but unbilled obligations, year-end reconciliations, or adjustment amounts that become due after the Closing Date in accordance with the terms of an Assumed Lease, such amounts shall be addressed through the Supplemental Cure Procedures set forth herein; provided, however, that (a) any indemnification obligations that come due or are asserted on or after the effective date of the assumption and assignment of such Assumed Lease regardless of whether such amounts relate to the period prior to or after the assignment date, and (b) any repair and maintenance obligations relating to the conditions at the premises subject to the Assumed Lease that may exist as of the assignment date, shall remain subject to the bar set forth herein, and any counterparty that did not timely assert such indemnification or repair and maintenance obligations by the applicable Cure Objection Deadline shall be forever barred and estopped from seeking payment for such amounts.

Y. To the extent any of the Assumed Contracts/Leases to be assigned to a Buyer contains provisions which would otherwise prohibit, restrict, or condition assignment of any Assumed Contract/Lease, or any applicable non-bankruptcy law would otherwise prohibit, restrict, or condition assignment of any Assumed Contract/Lease, including all renewal options, extension rights, expansion rights, and similar rights arising thereunder, such provisions and law has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365, as applicable. Without limiting the foregoing, any use restriction contained in any of the Assumed Contracts/Leases that purports to prohibit, restrict, condition, or limit the applicable Buyer's operation of the leased premises following the Closing Date constitutes an unenforceable restriction on assignment for such Buyer's intended use in the ordinary course of its business within the meaning of section 365(f) of the Bankruptcy Code.

Z. Assumption and assignment of the Assumed Contracts/Leases to the Buyer pursuant to this Non-Bulk Sale Order and the APA, and full payment of any applicable Cure Amounts in accordance with the APA, shall result in the full release and satisfaction of any and all cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract/Lease at any time prior to the Closing Date, subject to any Supplemental Cure Claims asserted and resolved in accordance with the Supplemental Cure Procedures set forth herein. The assumption and assignment of the Assumed Contracts/Leases pursuant to the terms of this Non-Bulk Sale Order is integral to the APA, the Non-Bulk Sale, and the transactions contemplated thereby, is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.

AA. Each Buyer has the financial wherewithal to consummate the transactions contemplated by its APA, and its operating history and intended use and format compatibility with the applicable Sites were demonstrated at the Non-Bulk Sale Hearing. The payment of Cure Amounts and each Buyer's promise to perform the Debtors' obligations under the Assumed Contracts/Leases assigned to it from and after the applicable Closing constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code. The evidence presented at the Non-Bulk Sale Hearing demonstrating each Successful Bidder's ability to perform the obligations under the applicable Assumed Contracts/Leases after the applicable Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

BB. Pursuant to section 365 of the Bankruptcy Code, the Debtors have demonstrated that the assumption and assignment to the Buyer, as the Successful Bidder, of the Assumed Contracts/Leases included in the APA is appropriate. All objections to the assumption and assignment of any of the Assumed Contracts/Leases included in the APA by the Buyer are hereby overruled; *provided*, *however*, that objections relating to the Reserved Leases (as defined herein) are not overruled and are reserved for hearing on October 20, 2026. To the extent that any counterparty failed or fails to timely object to the Scheduled Cure Amounts, such counterparty is deemed to have consented to such Scheduled Cure Amounts and the assumption and assignment of its respective Assumed Contract(s)/Lease(s) to the relevant Buyer in accordance with the APA; provided, however, that nothing herein shall bar or impair such counterparty's right to assert a Supplemental Cure Claim in accordance with the Supplemental Cure Procedures set forth herein.

CC. **Use Restrictions and Certain Other Restrictions Constitute De Facto Anti-Assignment Provisions**. To the extent any of the Assumed Contracts/Leases restricts the permitted use of the leased premises to the operation of a "Salad and Go" restaurant or a specific brand name, or otherwise imposes material restrictions on the applicable Buyer's ability to convert the leased premises from a "Salad and Go" restaurant to a typical restaurant of such Buyer's business or use such premises for a typical restaurant of such Buyer's business, any such restriction constitutes a de facto anti-assignment provision within the meaning of section 365(f)(1) of the Bankruptcy Code. Section 365(f)(1) permits assignment of an unexpired lease "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease." 11 U.S.C. § 365(f)(1). Such restrictions are overridden by section 365(f)(1) and are unenforceable against Buyer. No evidence was presented that any landlord or other party subject to the terms of this Non-Bulk Sale Order would suffer actual and substantial detriment from the assignment of the Assumed Leases to the applicable Buyer, especially because of each Buyer's operating history, financial wherewithal, intended use, and compatibility with the Sites; no landlord or other party will suffer actual and substantial detriment from the assignment of the Assumed Leases to the applicable Buyer.

DD. **Compelling Circumstances for Immediate Sale**. To maximize the value of the Non-Bulk Sale Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts/Leases, occur within the time constraints set forth in the APA. Time is of the essence in consummating the transactions contemplated by the APA, the Sale and the assumption and assignment of the Assumed Contracts/Leases.

EE. **Cure Amount Schedule and Assumed Lease Schedule**. The Non-Bulk Sale process encompassed the unexpired leases identified on Schedule 1 to the Non-Bulk Sale Bidding Procedures, as such schedule may have been adjusted in accordance therewith, together with the other Non-Bulk Sale Assets. The Non-Bulk Sale Assets and the Assumed Contracts/Leases covered by this Non-Bulk Sale Order are ~~those~~limited to the Approved Leases (as defined herein) and the other Non-Bulk Sale Assets set forth on Exhibit B ~~and~~ under the applicable APAs, and exclude the Reserved Leases (as defined herein), the central kitchen facility assets, and any other assets sold under the Bulk Sale Order. The Cure Amounts for the Assumed Contracts/Leases are set forth on the Revised Cure Schedule attached hereto as Exhibit C.

**IT IS HEREBY ORDERED THAT:**

1. The Non-Bulk Sale Motion, as supplemented and amended, is **GRANTED** as set forth herein.

2. **The Sale is Approved**. The Non-Bulk Sale to each Buyer of the Non-Bulk Sale Assets set forth opposite its name on Exhibit B and related assets as provided in the applicable APA, for the Purchase Price set forth therein and as contemplated by the applicable APA, is hereby **APPROVED** as set forth herein. The obligations of each Buyer under its APA and this Non-Bulk Sale Order are several and not joint, and no Buyer shall have any liability for the obligations of any other Buyer, including any Cure Amounts or Supplemental Cure Claims relating to Assumed Contracts/Leases assigned to another Buyer. The Closing of the Non-Bulk Sale to any Buyer is not conditioned on the Closing of the Non-Bulk Sale to any other Buyer, and the failure of any Buyer to close shall not affect the validity or effectiveness of this Non-Bulk Sale Order as to any other Buyer. This Non-Bulk Sale Order shall constitute a

separate order with respect to each Buyer (and their respective Buyer Parties) and its APA, and any stay, reversal, modification, or vacatur as to any Buyer or APA shall not affect the validity, enforceability, or finality of this Non-Bulk Sale Order as to any other Buyer (and their respective Buyer Parties) and its APA.

3. **Approved Leases**. Notwithstanding anything to the contrary in this Non-Bulk Sale Order, the Non-Bulk Sale Motion, any APA, or Exhibit B, the sale, assumption, and assignment of unexpired leases approved by this Non-Bulk Sale Order apply solely to the unexpired leases for the following Store Nos., each as identified on Exhibit B, to the applicable Buyer set forth opposite such store on Exhibit B (collectively, the "**Approved Leases**"): 1101, 1103, 1104, 1106, 1107, 1108, 1109, 1110, 1113, 1122, 1124, 1127, 1134, 1140, 1142, 1144, 1145, 1146, 1149, 1152, 1163, 1164, 1168, 1174, 1416, 1422, 1440, and 1912. As used in this Non-Bulk Sale Order, the terms "Assumed Contracts/Leases" and "Assumed Leases," as they relate to unexpired leases, refer solely to the Approved Leases. No unexpired lease other than an Approved Lease is assumed, assigned, or sold pursuant to this Non-Bulk Sale Order.

4. **Reserved Leases**. Any objections to the assumption and assignment to Swig of the unexpired leases for Store No. 1702 (1209 E. Kenosha St., Broken Arrow, OK 74012), whose landlord is Beyond Good, LLC, and Store No. 1704 (11360 E. 96th St. N., Owasso, OK 74055), whose landlord is Srikarvichu OK LLC (collectively, the "**Reserved Leases**"), including objections relating to adequate assurance of future performance and Cure Amounts, together with all rights, claims, and defenses of the Debtors, Swig, and the applicable landlords with

respect thereto, are expressly reserved and shall be heard by the Court at the hearing scheduled for October 20, 2026, at [__:__ _.m.] (Central Time). Nothing in this Non-Bulk Sale Order authorizes or approves the sale, assumption, or assignment of the Reserved Leases, and the Reserved Leases shall not be assumed and assigned except pursuant to a further order of the Court.

5. **Effect of APAs**. Notwithstanding that any APA attached hereto as Exhibit A may include unexpired leases other than the Approved Leases, each APA is approved, and shall be effective and binding with respect to any unexpired lease, only if and to the extent the assumption and assignment of such lease has been approved by order of the Court. Without limiting the foregoing, the APA with Swig shall not apply to the Reserved Leases unless and until the Court enters an order approving the assumption and assignment of the Reserved Leases to Swig.

6. 3. **Objections Overruled**. Any objections to the entry of this Non-Bulk Sale Order or the relief granted herein and requested in the Non-Bulk Sale Motion that have not been withdrawn, waived, or settled as announced to the Court at the Non-Bulk Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice; *provided, however*, that objections relating to the Reserved Leases are not overruled and are reserved for hearing on October 20, 2026, as provided herein.

7. 4. **Approval**. The APA (including, for the avoidance of doubt, any documents entered into in connection therewith) and all of the terms and conditions thereof are hereby approved in all respects subject to the terms hereof. Pursuant to sections 363(b) and 363(f) of the

Bankruptcy Code, the Debtors, as well as their officers, employees, and agents, without further order of the Court, are hereby authorized, empowered, and directed to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the APA, the Non-Bulk Sale, and the transactions contemplated thereby, including any Lease Amendments as contemplated by the APA, (b) consummate the Non-Bulk Sale in accordance with the terms and conditions of the APA and the instruments contemplated thereby, (c) transfer and assign all rights, title, and interest to all assets, property, licenses, and rights of the Debtors to be conveyed in accordance with the terms and conditions of the APA, and (d) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the APA, including the assumption and assignment of the Assumed Contracts/Leases, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, the Non-Bulk Sale, and this Non-Bulk Sale Order, and ancillary documents, including any actions that otherwise would require further approval by shareholders, members, or their boards of directors, as the case may be, without the need to obtain such approvals, to the Buyer. The Debtors are hereby authorized to perform their covenants and undertakings as provided in the APA and any ancillary documents before or after the Closing Date without further order of the Court. Neither the Buyer nor the Debtors shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their obligations to do so in the APA and this Non-Bulk Sale Order have been met, satisfied, or waived, except as otherwise contemplated or provided for in the APA. Without limiting the foregoing, and notwithstanding anything to the contrary in this Non-Bulk Sale Order, the Buyer’s rights under the APA, including any rights thereunder to exclude leases from the

Assumed Contracts/Leases and to make corresponding adjustments to the Purchase Price, are approved.

8. ~~5.~~ This Non-Bulk Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors (including counterparties to Assumed Contracts/Leases), any holders of liens, claims, encumbrances, interests, or other interests in, against, or on all or any portion of, or landlords with respect to, the Non-Bulk Sale Assets (whether known or unknown), the Buyer, and all successors and assigns of the Buyer, the Non-Bulk Sale Assets, and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code or dismissal of these Chapter 11 Cases. This Non-Bulk Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, Committee, the Buyer, and the respective successors and assigns of each of the foregoing. Neither the APA nor any Transaction Document shall be subject to rejection, avoidance, or unwinding by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers.

9. ~~6.~~ **Transfer of Non-Bulk Sale Assets Free and Clear of Liens, Claims, Encumbrances, and Interests**. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Non-Bulk Sale Assets to the Buyer in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Non-Bulk Sale Assets and shall vest the Buyer with title in and to the Non-Bulk Sale Assets and the Buyer shall take title to and possession of the Non-Bulk Sale Assets free and clear of all liens, claims, encumbrances, interests and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), including obligations, demands, guarantees of or by the Debtors, debts, contractual commitments,

restrictions, interests, radius, location, use, and exclusivity provisions, restrictive covenants, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or the Buyer or an affiliate, as the case may be, in the Lease (but only in connection with the assignment by the Debtor to the Buyer or an affiliate) or (B) in respect of any taxes), successor or successor-in-interest liability and claims in respect of the Excluded Liabilities, with all such liens, claims, encumbrances, interests, and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such liens, claims, encumbrances, or interests are asserted, subject to the terms of such liens, claims, encumbrances, or interests with the same validity, force, and effect, and in the same order of priority, which such liens, claims, encumbrances, or interests now have against the Non-Bulk Sale Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, and any successors in interest as applicable, may possess with respect thereto.

10. ~~7.~~ Unless otherwise expressly included in the definition of "Assumed Liabilities" in the APA, the Buyer shall not be responsible for any liens, claims, encumbrances, or interests, including, without limitation, in respect of the following: (a) any mortgages, deeds of trust, and security interests; (b) any bulk transfer law or similar law; (c) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (d) any escheat or unclaimed property laws; (e) any of the Excluded Liabilities under the APA; and (f) any theories of successor or transferee liability.

11. ~~8.~~ All persons and entities that are in possession of some or all of the Non-Bulk Sale Assets on the Closing Date are directed to surrender possession of such Non-Bulk Sale Assets to the Buyer in accordance with the APA on the Closing Date or at such time thereafter as the Buyer may request. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary, in each case, at no expense to the Buyer, to release its liens, claims, encumbrances, interests, or other interests in the Non-Bulk Sale Assets, if any, other than the Assumed Liabilities.

12. ~~9.~~ If any person or entity that has filed statements or other documents or agreements evidencing liens, claims, encumbrances, or interests (other than the Assumed Liabilities that are not otherwise being discharged at Closing) on, against, or in, all or any portion of the Non-Bulk Sale Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of such liens, claims, encumbrances, interests, or other liens, claims, or interests, that the person or entity has or may assert with respect to all or any portion of the Non-Bulk Sale Assets, then the Buyer and the Debtors are each hereby authorized to (i) execute and file such statements, instruments, releases, and other documents in the name and on behalf of such person or entity with respect to the Non-Bulk Sale Assets and otherwise seek relief from the Court pursuant to this Non-Bulk Sale Order, if necessary, or (ii) file, register, or otherwise record a certified copy of this Non-Bulk Sale Order, which, once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all liens, claims, encumbrances, or interests in the Non-Bulk Sale Assets of any kind or nature; *provided that*, notwithstanding

anything in this Non-Bulk Sale Order or the APA to the contrary, the provisions of this Non-Bulk Sale Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Non-Bulk Sale Order.

13. ~~10.~~ On the Closing Date, this Non-Bulk Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Debtors' interests in the Non-Bulk Sale Assets. This Non-Bulk Sale Order is and shall be effective as a determination that, on the Closing Date, all liens, claims, encumbrances, interests, or other interests of any kind or nature whatsoever existing as to the Non-Bulk Sale Assets prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effectuated. This Non-Bulk Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

14. ~~11.~~ Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A certified copy of this Non-Bulk Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens, claims, encumbrances, interests, and any other encumbrances of record, except the Assumed Liabilities.

15. ~~12.~~ **Exemptions from Transfer Taxes and Fees**. The transactions contemplated by the APA and this Non-Bulk Sale Order, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Non-Bulk Sale, are exempt from any and all document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee, regulatory filing or fee, or other similar tax, fee, or governmental assessment incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) to the maximum extent permitted by law.

16. ~~13.~~ **Prohibition of Actions Against the Buyer Parties**. Except for the Assumed Liabilities, the Buyer Parties, in their capacities as such, shall not have any liability or other obligation of the Debtors arising under or related to any of the Non-Bulk Sale Assets, including, without limitation, any liability for any liens, claims, encumbrances, or interests, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, without limitation, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date, including, but not limited to, the Excluded Liabilities.

17. ~~14.~~ Except with respect to the Assumed Liabilities, which, for the avoidance of doubt, shall not include any indemnification claims held or made by any person (including any counterparty to any non-residential real property lease), notwithstanding anything to the contrary herein or in any lease agreement relating to the Purchase Assets, all persons and entities, including, without limitation, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, landlords and other creditors, holding claims, liens, encumbrances, interests, or other interests of any kind or nature whatsoever against or in all or any portion of the Non-Bulk Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate) arising under or out of, in connection with, or in any way relating to the Debtors, the Non-Bulk Sale Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Non-Bulk Sale Assets to the Buyer in accordance with the APA are hereby forever barred, estopped, and permanently enjoined from asserting against the Buyer Parties, in their capacities as such, their successors or assigns, its property, or the Non-Bulk Sale Assets, such persons' or entities' liens, claims, encumbrances, or interests in, on, or to the Non-Bulk Sale Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer Parties, in their capacities as such, its assets, or its properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any encumbrance, lien, claim, or interest against the Buyer Parties, in their capacities as such, their successors, their assets, or their properties; (d) asserting any right against any obligation due to the Buyer Parties, in their capacities as such; (e) commencing or continuing any action, in any

manner or place, that does not comply or is inconsistent with the provisions of this Non-Bulk Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Non-Bulk Sale Assets or conduct any of the businesses operated with the Non-Bulk Sale Assets; and (g) asserting any claims for indemnification against any Buyer, in their capacities as such, in any way relating to or arising out of Buyer's or Seller's use or operation of the Purchased Assets. Following the Closing, no holder of any claim or interest shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such claim or interest.

18. ~~15.~~ To the extent that any contract counterparty has not objected to this Non-Bulk Sale Order, they are forever barred and estopped from raising claims against the Buyer Parties, in their capacities as such, based on provisions in the Assumed Contracts/Leases relating to radius, location, use, or exclusivity.

19. ~~16.~~ Nothing herein shall impair or prejudice the Debtors' and the Committee's ability to contest, in their sole discretion, the extent, validity, or amount of any lien, claim, encumbrance, or interest asserted against the Non-Bulk Sale Assets. Any such liens, claims, encumbrances, and interests shall attach to the proceeds of the Non-Bulk Sale with the same validity, priority, and effect as they had against the Non-Bulk Sale Assets immediately prior to the closing of the Non-Bulk Sale.

20. ~~17.~~ Notwithstanding the relief granted in this Non-Bulk Sale Order and any actions taken pursuant to such relief, except as otherwise provided herein, nothing in this Non-Bulk Sale Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors or their estates under the Bankruptcy

Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Non-Bulk Sale Order or the Non-Bulk Sale Motion or any order granting the relief requested by the Non-Bulk Sale Motion; (e) other than with respect to the Assumed Contracts/Leases as expressly set forth herein, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or the Committee's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) other than with respect to the Assumed Contracts/Leases, an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Non-Bulk Sale Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim other than the Buyer as set forth herein; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease other than the Assumed Contracts/Leases.

21. ~~18.~~ To the greatest extent available under applicable law, the Buyer and its successors or assigns shall be authorized, as of the Closing Date, to operate under any license,

permit, registration, and governmental authorization or approval of the Debtors with respect to the Non-Bulk Sale Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.

22. ~~19.~~ Pursuant to the terms of the APA, the Buyer and the Debtors shall use their reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary under applicable law to consummate and make effective the transactions contemplated by the APA, including, without limitation, with respect to any and all applications, notices, reports, disclosures, or other filings required under applicable law referenced in the APA.

23. ~~20.~~ No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Non-Bulk Sale Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

24. ~~21.~~ All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Non-Bulk Sale Assets to the Buyer in accordance with the terms of this Non-Bulk Sale Order and the APA, including any person or entity that is party to a contract or lease with the Debtors.

25. ~~22.~~ The Buyer has given substantial consideration under the APA and this Non-Bulk Sale Order for the benefit of the Debtors, their estates, their creditors, and their other

stakeholders. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential liens, claims, encumbrances, and interests pursuant to this Non-Bulk Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of liens, claims, encumbrances, or interests in or against any of the Debtors or any of the Non-Bulk Sale Assets, other than with respect to the Assumed Liabilities. The consideration provided by the Buyer for the Non-Bulk Sale Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

26. ~~23.~~ None of the Buyer nor any of the Buyer Parties, in their capacities as such, shall have or incur any liability to, or be subject to any action by, any of the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA, and the entry into and consummation of the sale of the Non-Bulk Sale Assets, except as expressly provided in the APA and this Non-Bulk Sale Order.

27. ~~24.~~ No bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Buyer and/or the transactions with the Debtors that are approved by this Non-Bulk Sale Order, including, without limitation, the APA and the Non-Bulk Sale.

28. ~~25.~~ **Back-Up Bidders**. The Back-Up Bidders and Back-Up Bids identified on Exhibit B are approved. Each Back-Up Bid shall remain open and irrevocable for thirty (30) days following the conclusion of the Non-Bulk Auction. If the applicable Successful Bidder fails to consummate its Non-Bulk Sale within such period, the applicable Back-Up Bidder shall automatically become the Successful Bidder for the applicable Non-Bulk Sale Assets upon twenty-four (24) hours' notice filed by the Debtors, and such Back-Up Bidder shall thereupon be

deemed the Buyer for all purposes of this Non-Bulk Sale Order with respect to such Non-Bulk Sale Assets without further order of the Court; *provided* that any contract counterparty affected by such designation shall have five (5) days to object to the assignment of its contract or lease to the Back-Up Bidder.

29. ~~26.~~ **Dutch Bros Termination Fee**. The Dutch Bros Termination Fee is approved and allowed as an administrative expense claim of Dutch Bros under section 503(b) of the Bankruptcy Code. The Debtors are authorized and directed to pay the Dutch Bros Termination Fee to Dutch Bros within five (5) days after the closing of the Non-Bulk Sale of Store Nos. 1104 and 1174 to Brew Culture, LLC, in accordance with Section 9.2 of the Dutch Bros Stalking Horse Agreement. Pending such payment, the Debtors shall hold in escrow, from the proceeds of such sale, an amount equal to the Dutch Bros Termination Fee, and such amount shall not constitute property of the Debtors' estates. The deposit posted by Dutch Bros under the Dutch Bros Stalking Horse Agreement shall be credited, returned, or applied in accordance with the terms of that agreement, the Non-Bulk Sale Bidding Procedures, and Dutch Bros' APA for Store Nos. 1106, 1110, and 1122. The Dutch Bros Termination Fee shall be Dutch Bros' sole and exclusive remedy on account of the termination of the Dutch Bros Stalking Horse Agreement as to Store Nos. 1104 and 1174. Except for the Dutch Bros Termination Fee, no break-up fee, termination fee, expense reimbursement, or other bid protection is approved or payable to any party in connection with the Non-Bulk Sale.

30. ~~27.~~ **Assumption and Assignment of Leases**. The Debtors are authorized and directed, pursuant to sections 105(a) and 365 of the Bankruptcy Code, to assume and assign to the Buyer, effective as of the Closing Date and in accordance with the purchase agreement, the Assumed Contracts/Leases included in the Successful Bid and approved at the Non-Bulk Sale

Hearing (which, for the avoidance of doubt, as to unexpired leases are limited to the Approved Leases), free and clear of all claims, liens, encumbrances, interests, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), and to execute and deliver to the Buyer such documents and instruments as are reasonably necessary to assign and transfer the Assumed Contracts/Leases and the Assumed Liabilities to the Buyer in accordance with the APA.

31. 28. With respect to the Assumed Contracts/Leases included in the APA and approved at the Non-Bulk Sale Hearing: (a) each Assumed Contract/Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Contracts/Leases in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract/Lease in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contracts/Leases that prohibit or condition the assignment of such Assumed Contract/Lease or allow the party to such Assumed Contract/Lease to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assumed Contract/Lease, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract/Lease, in accordance with the APA, have been satisfied; (e) the Assumed Contracts/Leases shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of, the Buyer in accordance with the APA, notwithstanding any provision in any such Assumed Contract/Lease or applicable law (including any of the kind described in sections 365(b)(2), 365(b)(3), and 365(f) of the Bankruptcy Code) that prohibits,

restricts, or conditions assignment, and any such anti-assignment provision is void and unenforceable to the maximum extent permitted by applicable law, and pursuant to section 365(k) of the Bankruptcy Code; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest in each Assumed Contract/Lease, including all renewal options, extension rights, expansion rights, and similar contractual rights thereunder, and pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts/Leases after such assumption and assignment to the Buyer in accordance with the APA.

32. ~~29.~~ Notwithstanding anything to the contrary in this Non-Bulk Sale Order, pursuant to sections 105(a) and 365(f) of the Bankruptcy Code, any use restriction contained in an Assumed Contract/Lease that purports to prohibit, restrict, condition, or limit the assignment of such Assumed Contract/Lease to Buyer (or its affiliates), or Buyer's (or its affiliates') operation of the leased premises for the Buyer's intended operations in the ordinary course of its business following Closing, shall be unenforceable against Buyer (or its affiliates) to the maximum extent permitted by applicable law. Notwithstanding any provision of any of the Assumed Contracts/Leases limiting the trade name, brand, concept, or type of retail operation, Buyer (and its affiliates) shall be authorized to operate the Assumed Contracts/Leases under its own trade name, trademarks, and retail concept, and any such restrictions are unenforceable pursuant to sections 363 and 365 of the Bankruptcy Code.

33. ~~30.~~ Except as expressly provided in this Non-Bulk Sale Order, each Assumed Contract/Lease shall remain in full force and effect in accordance with its terms following assignment to the Buyer. The assignment shall be *cum onere*, with the Buyer assuming the

benefits and burdens of each Assumed Contract/Lease and performing all obligations arising or accruing thereunder from and after the Closing Date to the extent required under applicable law. Except as expressly provided in this Non-Bulk Sale Order, nothing in this Non-Bulk Sale Order shall rewrite, alter, annul, vary, or otherwise modify any provision of an Assumed Contract/Lease, and nothing herein shall bar or impair a non-Debtor lessor from enforcing against the Buyer any default, breach, or obligation arising or accruing from and after the Closing Date.

34. ~~31.~~ All defaults and other obligations of the Debtors under the Assumed Contracts/Leases included in the APAs and approved at the Non-Bulk Sale Hearing that arise or accrue before the Closing Date (without giving effect to any acceleration clause or default provision of the kind described in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or promptly thereafter by payment of the Cure Amounts set forth in the Revised Cure Schedule, or such other amounts as agreed to between the applicable contract counterparty and the Seller, as follows: (a) Just Salad shall pay the Cure Amounts for the Just Salad Leases to the extent set forth in its APA; and (b) the Debtors shall pay all Estate Cure Amounts from the Debtors' estates, and the Debtors are authorized to pay the Estate Cure Amounts, including from the proceeds of the Non-Bulk Sale. The Cure Amounts set forth in the Revised Cure Schedule (the "**Scheduled Cure Amounts**"), as approved at the Non-Bulk Sale Hearing, are the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure such defaults, except as may be supplemented through the Supplemental Cure Procedures set forth herein, and no other amounts are due in connection with the assumption and assignment except as expressly preserved in this Non-Bulk Sale Order; *provided*, *however*, that, to the extent any Cure Amount set forth in the Revised Cure Schedule differs from the cure amount set forth in the Supplemental

Cure Notice to which a counterparty timely filed a Cure Objection, the Cure Amount set forth in the Revised Cure Schedule shall be deemed the Scheduled Cure Amount for such Assumed Contract/Lease. A counterparty that did not timely object to the cure amount set forth in the Supplemental Cure Notice by the Cure Objection Deadline is deemed to have consented to such amount as its Scheduled Cure Amount and to the assumption and assignment of its Assumed Contract/Lease to the Buyer in accordance with the APA and is forever barred and estopped from disputing such Scheduled Cure Amount against any party, including the Debtors, the Buyer, its affiliates, and related parties, each in their capacity as such; provided, however, that nothing herein shall bar or impair such counterparty's right to assert a Supplemental Cure Claim in accordance with the Supplemental Cure Procedures set forth herein.

35. ~~32.~~ The Cure Amounts satisfy all amounts accrued and billed through the Closing Date. To the extent that accrued but unbilled obligations, including year-end adjustments and reconciliation amounts for taxes, common area maintenance charges, utilities, insurance, promotion funds, royalties, fees, and other additional rent obligations that accrued prior to the Closing Date but are unbilled, not yet due, or subject to adjustment as of the Closing Date, become due after the Closing Date under an Assumed Lease, such amounts shall be addressed through paragraphs ~~44-45~~47-48 herein or the Supplemental Cure Procedures set forth in this Non-Bulk Sale Order. Notwithstanding the foregoing, indemnification obligations that come due or are asserted on or after the effective date of the assumption and assignment, regardless of whether they relate to the period before or after the assignment date, or repair and maintenance obligations relating to conditions at the premises existing as of the assignment date, shall remain subject to the bar set forth herein, and any counterparty that did not timely assert such amounts by the applicable Cure Objection Deadline shall be forever barred and estopped from seeking

payment for such amounts from any party. For the avoidance of doubt, (i) Just Salad shall be responsible for Cure Amounts for the Just Salad Leases only to the extent set forth in its APA, (ii) all such Cure Amounts paid by Just Salad shall be credited against its Purchase Price, (iii) all other Cure Amounts and Supplemental Cure Claims shall be paid by the Debtors' estates, and (iv) in no event shall the aggregate paid by Just Salad with respect to the Purchased Assets, including all Cure Amounts paid by Just Salad, exceed its Purchase Price of $92,938.00. No Buyer other than Just Salad, to the extent set forth in its APA, shall have any liability for any Cure Amounts, and all parties shall be enjoined from seeking payments of such Cure Amounts, and no counterparty may seek payment of any Cure Amount or Supplemental Cure Claim from any Buyer or Buyer Party except Cure Amounts from Just Salad to the extent set forth in its APA. Any failure of the Debtors' estates to pay any Estate Cure Amount or Supplemental Cure Claim shall not give rise to any default under any Assumed Contract/Lease or any liability of or a claim against any Buyer or Buyer Party. Nothing herein shall affect Just Salad's obligation to reimburse or credit to the Debtors for any Asset Taxes that the Debtors paid prior to Closing attributed to any period following the Straddle Period (as the terms "Asset Taxes" and "Straddle Period" are used in the Just Salad APA).

36. ~~33.~~ Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, except for the right to payment of any Cure Amount and the right to assert supplemental cure claims in accordance with the Supplemental Cure Procedures set forth herein, upon the Debtors' assignment of the Assumed Contracts/Leases to the Buyer and payment of the Cure Amounts, all contract counterparties are forever barred and permanently enjoined from raising or asserting against any party, including any of the Debtors, the Buyer, or the Buyer Parties, any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to

an Assumed Contract/Lease that existed as of the Closing Date or arose by reason of the Closing. Unless otherwise agreed to in writing by the Debtors, the Buyer, and the appropriate counterparty, the Scheduled Cure Amounts included in the Revised Cure Schedule reflect the amounts necessary under section 365(b) of the Bankruptcy Code to cure all defaults under the Assumed Contracts/Leases, except as may be supplemented through the Supplemental Cure Procedures set forth herein. The Cure Amounts shall be paid by Just Salad to the extent set forth in its APA and any excess Cure Amounts and all Supplemental Cure Claims shall be paid by the Debtors' estates, in each case in accordance with this Non-Bulk Sale Order. No default shall exist under any Assumed Contract/Lease, and no counterparty may (a) declare a default by the Buyer or otherwise take action against the Buyer based on the Debtors' financial condition, bankruptcy, or failure to perform any pre-Closing obligation under such Assumed Contract/Lease, or (b) otherwise take action against the Buyer as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under such Assumed Contract/Lease. Each non-Debtor counterparty to an Assumed Contract/Lease is hereby also forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Buyer, or the Buyer Parties, each in their capacities as such, or the property of any of them, any default or claim arising out of any indemnity obligations or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, other than Cure Amounts or Supplemental Cure Claims, and from imposing or charging against the Buyer, its affiliates, and related parties, each in their capacities as such, any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Buyer of any Assumed Contract/Lease in accordance with the APA, or (iii) imposing or charging against the Buyer any rent acceleration, assignment fee,

increase, or other fee as a result of the assumption and assignment. The validity of the assumption and assignment shall not be affected by any dispute relating to the Cure Amounts.

37. ~~34.~~ **Supplemental Cure Procedures**.

(a) The Debtors shall file a notice of the closing of the Non-Bulk Sale transaction (the "**Closing Notice**") with the Bankruptcy Court within five (5) Business Days of the Closing Date. The Closing Notice shall include the Closing Date and shall set forth the Supplemental Cure Claims Bar Date as defined herein.

(b) Each non-Debtor counterparty to an Assumed Contract/Lease shall have thirty (30) days after the Closing Date (the "**Supplemental Cure Claims Bar Date**") to file with the Bankruptcy Court a supplemental cure claim for any accrued but unbilled or unknown amounts that accrued after the Cure Objection Deadline but before the Closing Date and are not reflected in the Revised Cure Schedule that such counterparty asserts are owed under section 365(b)(1)(B) of the Bankruptcy Code (each, a "**Supplemental Cure Claim**"). Any non-Debtor counterparty that does not timely file a Supplemental Cure Claim by the Supplemental Cure Claims Bar Date shall be forever barred and estopped from asserting any such amounts. All Supplemental Cure Claims (including those relating to the Just Salad Leases) shall be the responsibility of the Debtors' estates (the party responsible for a Supplemental Cure Claim, the "**Responsible Party**"). Except as otherwise provided in this Order or the relevant APA, all parties shall be enjoined form seeking payment from any Buyer for any Supplemental Cure Claim.

(c) Each Supplemental Cure Claim must: (i) identify the applicable Assumed Contract/Lease; (ii) set forth a detailed calculation of the amounts claimed; (iii) attach all supporting documents, invoices, statements, or other evidence substantiating the amounts

claimed; and (iv) be served on counsel for the Debtors and counsel for the Buyer in accordance with the notice provisions of this Non-Bulk Sale Order.

(d) The Responsible Party shall pay any undisputed Supplemental Cure Claim amounts within thirty (30) days of the filing of the applicable Supplemental Cure Claim.

(e) The Responsible Party may object to any disputed Supplemental Cure Claim amounts by filing an objection with the Bankruptcy Court within thirty (30) days of the filing of the applicable Supplemental Cure Claim. Any disputed Supplemental Cure Claim amounts shall be resolved by the Bankruptcy Court upon hearing, with notice to the applicable contract counterparty, the Debtors, the applicable Buyer, and the Committee. Pending resolution of any disputed Supplemental Cure Claim, the Responsible Party shall pay any undisputed portion of such claim in accordance with the preceding paragraph.

(f) Nothing in these Supplemental Cure Procedures shall afford any non-Debtor counterparty any greater rights than those afforded under section 365 of the Bankruptcy Code with respect to the cure of defaults and the payment of actual pecuniary losses in connection with the assumption and assignment of the Assumed Contracts/Leases. The Supplemental Cure Procedures are intended solely to provide an orderly mechanism for the assertion and resolution of accrued but unbilled or unknown cure amounts under section 365(b)(1)(B) of the Bankruptcy Code.

38. ~~35.~~ The Buyer has demonstrated adequate assurance of future performance under the Assumed Contracts/Leases included in the Successful Bid and approved at the Non-Bulk Sale Hearing within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

39. ~~36.~~ **Successor Liabilities**. The consideration provided by the Buyer for the Debtors' rights, title, and interest in the Non-Bulk Sale Assets under the APA constitutes reasonably equivalent value and fair consideration for the Non-Bulk Sale Assets under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, and other applicable law within the meaning of section 544(b) of the Bankruptcy Code, under the laws of the United States, any state, territory, possession, or the District of Columbia. The sale of the Non-Bulk Sale Assets may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code, or any other provision of the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal, state, or foreign laws.

40. ~~37.~~ None of the Buyer or the Buyer Parties, each in their capacities as such, as a result of any action taken in connection with the APA, the consummation of the transactions contemplated thereby, including, without limitation, the Non-Bulk Sale Transaction, or the transfer or operation of the Non-Bulk Sale Assets, shall be deemed to: (a) be a legal successor or successor employer to any Debtor (including, without limitation, with respect to any health or benefit plans) or otherwise be deemed a successor to any Debtor; (b) have, *de facto*, or otherwise, merged or consolidated with or into any Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of any Debtor or the enterprise of any Debtor, including, without limitation, in the case of each of (a)–(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, or the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"); or (ii) in respect of (1) any environmental liabilities, debts, claims or obligations arising from conditions existing on or prior to the Closing

Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances, or wastes), which may be asserted on any basis, including, without limitation, under CERCLA and (2) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine. Without limiting the generality of the foregoing, none of the Buyer or the Buyer Parties, each in their capacities as such, shall have any responsibility for any (a) liability or other obligation of the Debtors related to the Non-Bulk Sale Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. By virtue of the purchase of the Non-Bulk Sale Assets, none of the Buyer or the Buyer Parties, each in their capacities as such, shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon, but not limited to, any theory of antitrust, environmental (including, without limitation, CERCLA), successor or transferee liability, de facto merger or substantial continuity, or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, any liabilities or obligations related to or arising from any settlement or injunction or any liabilities on account of any taxes (including, without limitation, sales and use taxes) arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Non-Bulk Sale Assets, in each case, either (x) arising on or prior to the Closing Date, or (y) from and after the Closing Date, but which arise out of or relate to any act, omission, circumstances, breach, default or other event occurring before the Closing Date. The Buyer would not have

acquired the Non-Bulk Sale Assets but for the foregoing protections against successor or transferee Liability.

41. ~~38.~~ **Good Faith**. The transactions contemplated by the APA are undertaken by the Buyer and the Buyer Parties, in their capacities as such, without collusion and in good faith (including as that term is used in section 363(m) of the Bankruptcy Code) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Non-Bulk Sale shall not affect the validity of the Non-Bulk Sale with the Buyer and the Buyer Parties, in their capacities as such, unless such authorization is duly stayed pending such appeal. Each of the Buyer and the Buyer Parties, in their capacities as such, is a good-faith purchaser of the Non-Bulk Sale Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

42. ~~39.~~ **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APA in this Non-Bulk Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Non-Bulk Sale Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Non-Bulk Sale Order. All provisions of this Non-Bulk Sale Order are non-severable and mutually dependent. To the extent that this Non-Bulk Sale Order is inconsistent with any prior order or pleading with respect to the Non-Bulk Sale Motion in these Chapter 11 Cases, the terms of this Non-Bulk Sale Order shall control.

43. ~~40.~~ **Material Modifications**. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of

the Court; *provided* that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; *provided*, *further*, that any such modification, amendment, or supplement is served on the Committee within one (1) business day of execution; *provided*, *however*, that any modification, amendment, or supplement that has a material adverse effect on the Debtors' estates shall be (i) filed on the docket and served on the master service list, and (ii) parties in interest shall have five (5) days to object to any such amendment. Absent any such objection, such modification, amendment, or supplement shall be binding, and any timely objection shall be heard by the Court on an expedited basis.

44. ~~41.~~ **Escrow**. Pursuant to the applicable APA and the Non-Bulk Sale Bidding Procedures, each Buyer's Deposit may be held by the Escrow Agent pursuant to the applicable Escrow Agreement. Each Deposit and any proceeds thereof shall be held, administered, and disbursed in accordance with the applicable APA and Escrow Agreement, and shall not constitute property of the Debtors' estates unless and until validly released to the Debtors pursuant to the terms thereof.

45. ~~42.~~ **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan, any order confirming any such plan, or any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these Chapter 11 Cases to chapter 7 or dismissing these Chapter 11 Cases) or any related proceeding subsequent to entry of this Non-Bulk Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Non-Bulk Sale Order. To the extent that the Closing Date has not occurred prior to confirmation of any Chapter 11 plan, the Debtors may implement this Non-Bulk Sale Order through any confirmed Chapter 11 plan.

46. ~~43.~~ **Tax Provisions and Pre-Closing Rent**. The Debtor shall pay all obligations under Assumed Leases due prior to October 31, 2026, including obligations for payment of rent, additional rent, and Transaction Privilege Tax; provided, however, that any obligations to pay taxing authorities directly shall be governed by paragraphs ~~44~~47 and ~~45~~48 herein. In addition, the Debtors shall bear all rent, additional rent, and other charges under the Just Salad Leases attributable to periods prior to the Closing Date as provided in the applicable APA. In addition, and without limiting the foregoing, the Debtors shall bear all rent, additional rent, and other charges under all other Assumed Leases attributable to periods prior to the applicable Closing Date.

47. ~~44.~~ **Texas Taxing Authorities Provisions**. For the avoidance of doubt, and notwithstanding anything to the contrary in this Non-Bulk Sale Order or any APA, to the extent any of the Debtors' property in Texas subject to any ad valorem tax claims held by any of the Texas Taxing Authorities[6] is to be sold, the Debtors shall pay any delinquent taxes owed to the Texas Taxing Authorities with respect to the Non-Bulk Sale Assets for tax years 2025 and prior, including any accrued penalties and interest (the "**Delinquent Taxes**"), as soon as reasonably practicable after closing, but, in any event, no later than three (3) business days after closing; *provided, however*, the Debtors shall ensure that an amount sufficient to satisfy such Delinquent

[6] The term "**Texas Taxing Authorities**" is defined as all ad valorem taxing jurisdictions represented by the firms of Linebarger Goggan Blair & Sampson, LLP, Perdue, Brandon, Fielder, Collins & Mott LLP, McCreary Veselka Bragg and Allen, and Abernathy, Roeder, Boyd & Hullett, P.C., including but not limited to Bexar County, Dallas County, Town of Fairview, McLennan County, Town of Prosper, Prosper Independent School District, Rockwall CAD, Spring Independent School District, Meadowhill Regional Municipal Utility District, Fort Bend Independent School District, Fort Bend County Levee Improvement District #15, Frisco Independent School District, Fort Bend County Municipal Utility District #128, Fort Bend County Municipal Utility District #143, City of Katy, Fort Bend County Municipal Utility District #161, Fort Bend County Municipal Utility District #167, City of Rosenberg, Dickinson Independent School District, Clear Creek Independent School District, Harris County Municipal Utility District #433, City of Garland, Bell County Tax Appraisal District, Guadalupe County, City of Waco, Waco Independent School District, Tarrant County, City of Hurst, City of Allen, Allen Independent School District, Collin County, Collin College, City of Plano, Plano Independent School District, City of McKinney, McKinney Independent School District, and Princeton Independent School District (such Collin County entities, collectively, the "**Collin County Taxing Authorities**").

Taxes is set aside from the sale proceeds prior to making any disbursement of such proceeds to any other person or entity. The Texas Taxing Authorities' ad valorem tax liens securing payment of the Delinquent Taxes shall be retained against the sale proceeds until such time as the Delinquent Taxes are paid in full. Any property taxes owing to any of the Texas Taxing Authorities for tax year 2026 pertaining to the Non-Bulk Sale Assets shall become the responsibility of the Buyer and the 2026 ad valorem tax liens shall be retained against the Non-Bulk Sale Assets until said taxes, including any penalties and interest that may accrue, are paid in full. To the extent there is any proration between the Debtors and the Buyer with respect to the Non-Bulk Sale Assets for tax year 2026, the Debtors' pro-rated portion shall be credited to the Buyer at closing or on terms agreed upon by the Debtors and Buyer. Any dispute regarding any proration of the 2026 ad valorem taxes between the Debtors and Buyer shall have no effect on Buyer's responsibility to pay such taxes. At least three (3) business days before the applicable Closing, the Debtors shall deliver to the applicable Buyer a good-faith estimate, calculated on a per diem basis, of the prorated portion of the 2026 ad valorem taxes levied by the Texas Taxing Authorities on the applicable Non-Bulk Sale Assets that accrued prior to the applicable Closing Date (such prorated portion, the "**Debtors' Pre-Closing Tax Share**"). The estimated amount of the Debtors' Pre-Closing Tax Share shall be credited to the applicable Buyer against the Purchase Price at the applicable Closing. If the actual amount of the Debtors' Pre-Closing Tax Share, as determined from the final 2026 ad valorem tax statements issued by the Texas Taxing Authorities, exceeds the estimated amount credited at the applicable Closing, the Debtors (or any successor to the Debtors, including any liquidating trustee or plan administrator) shall pay the amount of such excess to the applicable Buyer. If the estimated amount credited at the applicable Closing exceeds the actual amount of the Debtors' Pre-Closing Tax Share, the applicable Buyer

shall pay the amount of such excess to the Debtors (or any successor to the Debtors, including any liquidating trustee or plan administrator).

48. ~~45.~~ As to any 2026 property taxes that are the obligation of the Seller to pay under the applicable APA in states other than Texas (the "**Non-Texas Property Taxes**") that the Debtors are obligated to pay directly to such taxing authorities (the "**Non-Texas Taxing Authorities**"), the Debtors shall pay all such taxes to any taxing authorities that are due on or before October 31, 2026 that are attributable to periods prior to October 31, 2026. At least three (3) business days before the applicable Closing, the Debtors shall estimate the amount of any accrued but unpaid 2026 Non-Texas Property Taxes pertaining to the applicable Non-Bulk Sale Assets prior to such Closing based on the most recent information available to the Debtors (the "**Pre-Closing Non-Texas Accrued Property Taxes**"). The applicable Buyer shall deduct the Pre-Closing Non-Texas Accrued Property Taxes from the Purchase Price to be paid at Closing to the Debtors and shall pay such Pre-Closing Non-Texas Accrued Property Taxes to the Non-Texas Taxing Authorities at Closing. Following Closing, any unpaid property taxes for tax year 2026 pertaining to the applicable Non-Bulk Sale Assets shall become the responsibility of the applicable Buyer. If the actual assessed amount of property taxes attributable to the 2026 period prior to Closing is higher than the Pre-Closing Non-Texas Accrued Property Taxes, the Debtors or their successor shall pay the difference to the applicable Buyer.

49. ~~46.~~ **Specific Objections**. With respect to store number 1108, at 17137 N. Litchfield Road, Surprise, AZ 85374 (the "**Litchfield Store**"), the following shall apply:

a. Permitted Use: Representations and Warranties of Landlord Regarding Demised Premises:

> With respect to the Litchfield Store, whose landlord is Miry and Zeev Rabinovitch Family Trust ("**Landlord**"), the first sentence of the second paragraph in section 1 (f) of the Ground Lease is modified as

follows: Subject to an initial one hundred and eighty (180) day grace period starting on the closing date of the assignment transaction for Swig to refurbish and renovate the Store 1108 location (Rent and Additional Rent shall continue to be due and payable during the grace period), Tenant shall continuously use and occupy the entire Premises during the term of this Lease, which use and occupancy shall be solely for the purpose of conducting the business for the operation of a Swig beverage location, a specialty restaurant that sells non-alcoholic beverages, including flavored soda fountain drinks, energy drinks, fruit-flavored sparkling waters, hot chocolate, and dessert and/or snack items, including cookies, pretzel bites and frozen custard, and any related or incidental items thereto, and any other use authorized by Landlord in writing from time to time in Landlord's reasonable discretion, but for no other use ("**Permitted Use**") and for no other purpose or purposes whatsoever and under no other store name whatsoever, without the express written consent of Landlord, and Landlord consents and agrees that Swig's operation of the Ground Lease for a prototypical Swig location complies with the Ground Lease use and the CC&R's.[7]

The cure payment established in the revised cure schedule of $22,170.24 shall be paid to the Landlord at closing. Lastly, at closing, Swig Holdco, Inc. (parent of Swig) shall execute and deliver a Guaranty in favor of the Landlord in the form and content attached to the Ground Lease for Store 1108.

50. **Provision applicable to Just Salad Lease of Higley Store**. The following provision applies with respect to the Ground Lease of Store No. 1142 located at 5218 E. Baseline Rd., Gilbert, AZ 85234 (the "**Higley Store**"). MSR Higley LLC ("**Higley Landlord**") is the landlord of the Ground Lease of the Higley Store (the "**Higley Lease**"). The Higley Lease is one of the Just Salad Leases that is being assigned to Buyer Just Salad (i.e., Just Salad New York LLC). As a condition to the assignment of the Debtors' interests in the Higley Lease to Just Salad, Just Salad Holdco LLC ("**JS Holdco**") shall execute a limited guaranty for the benefit of Higley Landlord (the "**Limited Guaranty/Higley Lease**"), in form and

[7] The remaining sentences of Section 1 (f) of the Ground Lease (including the entire Section 1 of the Ground Lease) for the Litchfield Store shall remain unchanged. All use restrictions in the Ground Lease and CC&R's shall remain in full force and effect.

substance reasonably acceptable to Just Salad, JS Holdco and Higley Landlord, under which JS Holdco guaranties the obligations of Just Salad under the Higley Lease to pay Basic Monthly Rent that become due and payable during the Guaranty Period/Higley Lease. For purposes of this Non-Bulk Sale Order, "**Guaranty Period/Higley Lease**" shall mean the eighteen (18) month period commencing on the effective date of the assignment of the Higley Lease to Just Salad. If Just Salad does not default in the payment of Basic Monthly Rent that become due and payable during the Guaranty Period/Higley Lease, then the Limited Guaranty/Higley Lease shall terminate, and JS Holdco shall have no liability thereunder. Notwithstanding anything to the contrary contained in this Non-Bulk Sale Order or in the Limited Guaranty/Higley Lease, the total liability of JS Holdco under the Limited Guaranty/Higley Lease shall in no event exceed, and shall be limited to, the aggregate amount of Basic Monthly Rent payments that become due and payable by Just Salad under the Higley Lease for such eighteen (18) month period.

51. **Provision applicable to Just Salad Lease of Bell Road Store**. The following provision applies with respect to the Ground Lease of Store No. 1152 located at 16885 W. Bell Rd., Surprise, AZ 85374 (the "**Bell Road Store**"). Bell Road and Loop 303 LLP ("**Bell Road Landlord**") is the landlord of the Ground Lease of the Bell Road Store (as amended, the "**Bell Road Lease**"). The Bell Road Lease is one of the Just Salad Leases that is being assigned to Buyer Just Salad (i.e., Just Salad New York LLC). As a condition to the assignment of the Debtors' interests in the Bell Road Lease to Just Salad, JS Holdco shall execute a limited guaranty

for the benefit of Bell Road Landlord (the "**Limited Guaranty/Bell Road Lease**"), in form and substance reasonably acceptable to Just Salad, JS Holdco and Bell Road Landlord, under which JS Holdco guaranties the obligations of Just Salad under the Bell Road Lease to pay Minimum Rent and Common Area Expenses that become due and payable during the Guaranty Period/Bell Road Lease. For purposes of this Non-Bulk Sale Order, "**Guaranty Period/Bell Road Lease**" shall mean the eighteen (18) month period commencing on the effective date of the assignment of the Bell Road Lease to Just Salad. If Just Salad does not default in the payment of Minimum Rent or Common Area Expenses that become due and payable during the Guaranty Period/Bell Road Lease, then the Limited Guaranty/Bell Road Lease shall terminate, and JS Holdco shall have no liability thereunder. Notwithstanding anything to the contrary contained in this Non-Bulk Sale Order or in the Limited Guaranty/Bell Road Lease, the total liability of JS Holdco under the Limited Guaranty/Bell Road Lease shall in no event exceed, and shall be limited to, the aggregate amount of Minimum Rent and Common Area Expenses payments that become due and payable by Just Salad under the Bell Road Lease for such eighteen (18) month period.

52. ~~47.~~ **Survival**. The terms and provisions of this Non-Bulk Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto as of the date of the entry of this Non-Bulk Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting these Chapter 11 Cases from chapter 11 to chapter 7 or dismissing these Chapter 11 Cases, and the terms and provisions of the APA as well as the rights

and interests granted pursuant to this Non-Bulk Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the Debtors and all other parties and their respective successors and permitted assigns, including any trustee (including one appointed under the plan), administrator, examiner, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases (including a chapter 7 trustee, if applicable) shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the APA and the terms of this Non-Bulk Sale Order.

53. ~~48.~~ **Calculation of Time**. All time periods set forth in this Non-Bulk Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54. ~~49.~~ **Further Assurances**. From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all instruments and certificates (including deeds, bills of sale, instruments of conveyance, powers of attorney, assignments, assumptions, and assurances), and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in the Buyer its right, title, and interest in and to the Non-Bulk Sale Assets.

55. ~~50.~~ **Automatic Stay**. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies or exercise any of its rights under the APA or any other Non-Bulk Sale-related document, including to give any notice under the APA or to terminate the APA pursuant to the terms thereof. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent

necessary to implement the preceding sentence; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

56. ~~51.~~ **Retention of Jurisdiction**. This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Non-Bulk Sale Order and the APA, all amendments to any of the foregoing, and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Buyer in accordance with the APA; to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Non-Bulk Sale, including, without limitation, adjudicate any and all disputes concerning or relating to the Non-Bulk Sale, including any and all disputes with any counterparty to any executory contract or unexpired lease of the Debtors and any party that has, or asserts, possession, control, or other rights in respect of any of the Non-Bulk Sale Assets; to protect the Buyer against any claims, liens, encumbrances, or other interests in the Debtors or the Non-Bulk Sale Assets of any kind or nature whatsoever attaching to the proceeds of the Non-Bulk Sale; and to enter any orders under sections 105, 363, or 365 of the Bankruptcy Code with respect to the Assumed Contracts/Leases.

57. ~~52.~~ The requirements set forth in Bankruptcy Rules 4001, 6004(a), 6004(h), and 6006, and applicable Local Rules, are hereby waived.

58. ~~53.~~ Notwithstanding entry of this Non-Bulk Sale Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

59. ~~54.~~ The Debtors are authorized to take all actions necessary or appropriate to implement the relief granted in this Non-Bulk Sale Order.

Signed: ____________________, 2026

______________________________________
Alfredo R. Pérez
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

Asset Purchase Agreements of the Successful Bidders

**Exhibit A-1**

Asset Purchase Agreement between And Go Concepts, LLC and Beyond Salt and Pepper, LLC

**Exhibit A-2**

Asset Purchase Agreement between And Go Concepts, LLC and Brew Culture, LLC

**Exhibit A-3**

Asset Purchase Agreement between And Go Concepts, LLC
and Boersma Bros. LLC (Dutch Bros)

**Exhibit A-4**

Asset Purchase Agreement between And Go Concepts, LLC and Just Salad New York LLC

**Exhibit A-5**

Asset Purchase Agreement between And Go Concepts, LLC and Rita's Stores, LLC

**~~Exhibit A-6~~**

~~Asset Purchase Agreements between And Go Concepts, LLC and Sipside 1 LLC~~

**Exhibit A-~~7~~-6**

Asset Purchase Agreement between And Go Concepts, LLC and Swig Stores, LLC

**Exhibit B**

**Successful Bidders, Purchase Prices, and Back-Up Bidders**

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| Store #1103 – 3299 E. Williams Field Rd., Gilbert, AZ 85295 | Beyond Salt and Pepper, LLC | $1.00 | N/A | N/A |
| Store #1107 – 1040 W. Southern Ave., Mesa, AZ 85210 | Beyond Salt and Pepper, LLC | $1.00 | N/A | N/A |
| Store #1101 – 743 N. Gilbert Rd., Gilbert, AZ 85234 | Brew Culture, LLC | $500,000.00 | N/A | N/A |
| Store #1149 – 19485 W. Indian School Rd., Litchfield Park, AZ 85340 | Brew Culture, LLC | $500,000.00 | Dutch Bros., LLC | $1,000,000.00 |
| Store #1416 – 12556 N. Beach St., Fort Worth, TX 76244 | Brew Culture, LLC | $500,000.00 | Sip and Go, LLC | $511,111.00 |
| Store #1440 – 4751 S. Custer Rd., McKinney, TX 75070 | Brew Culture, LLC | $500,000.00 | N/A | N/A |
| Store #1174 – 7480 S. 59th Ave., Laveen, AZ 85339 | Brew Culture, LLC | $2,595,777.00 | Dutch Bros., LLC | $900,000.00 |
| Store #1104 – 5259 E. Brown Rd., Mesa, AZ 85205 | Brew Culture, LLC | $1,995,777.00 | Dutch Bros., LLC | $900,000.00 |
| Store #1106 – 2006 W. Pinnacle Peak Rd., Phoenix, AZ 85027 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1110 – 5985 W. Chandler Blvd., Chandler, AZ 85226 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1122 – 7800 S. Priest Dr., Tempe, AZ 85284 | Dutch Bros., LLC | $10,000.00 | N/A | N/A |
| Store #1168 – 4965 S. Arizona Ave., Chandler, AZ 85248 | Dutch Bros., LLC | $1,300,000.00 | Swig Stores, LLC | $1,200,000.00 |
| Store #1164 – 15437 W. Cactus Rd., Surprise, AZ | Dutch Bros., LLC | $26,293.00 | Brew Culture, LLC | $25,777.00 |

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| 85379 | | | | |
| Store #1142 – 5218 E. Baseline Rd., Gilbert, AZ 85234 | Just Salad New York LLC | $34,000.00 plus Cure Costs | N/A | N/A |
| Store #1109 – 719 E. Bethany Home Rd., Phoenix, AZ 85014 | Just Salad New York LLC | $10,000.00 plus Cure Costs | N/A | N/A |
| Store #1152 – 16885 W. Bell Rd., Surprise, AZ 85374 | Just Salad New York LLC | $10,000.00 plus Cure Costs | N/A | N/A |
| Store #1422 – 8448 Denton Hwy., Watauga, TX 76148 | Rita's Stores, LLC | $171,869.00 | N/A | N/A |
| ~~Store #1413 – 2250 Precinct Line Rd., Hurst, TX 76054~~ | ~~Sipside 1 LLC~~ | ~~$180,000.00~~ | ~~N/A~~ | ~~N/A~~ |
| ~~Store #1434 – 1320 N. Preston Rd., Prosper, TX 75078~~ | ~~Sipside 1 LLC~~ | ~~$20,000.00~~ | ~~N/A~~ | ~~N/A~~ |
| ~~Store #1468 – 723 S. 6th St., Waco, TX 76706~~ | ~~Sipside 1 LLC~~ | ~~$20,000.00~~ | ~~N/A~~ | ~~N/A~~ |
| ~~Store #1451 – 1205 Alma Dr., Allen, TX 75013~~ | ~~Sipside 1 LLC~~ | ~~$10,000.00~~ | ~~N/A~~ | ~~N/A~~ |
| Store #1127 – 3229 S. 48th St., Tempe, AZ 85282 | Swig Stores, LLC | $780,000.00 | N/A | N/A |
| Store #1108 – 17137 N. Litchfield Rd., Surprise, AZ 85374 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1124 – 777 W. Indian School Rd., Phoenix, AZ 85013 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1140 – 1730 E. Tucson Marketplace Blvd., Tucson, AZ 85713 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1144 – 90 W. Ocotillo Rd., Queen Creek, AZ 85140 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1145 – 18573 N. 59th Ave., Glendale, AZ 85308 | Swig Stores, LLC | $700,000.00 | N/A | N/A |
| Store #1163 – 17171 W. Yuma Rd., Goodyear, AZ | Swig Stores, LLC | $700,000.00 | N/A | N/A |

| Assets / Properties | Successful Bidder | Purchase Price | Back-Up Bidder | Back-Up Price |
|---|---|---|---|---|
| 85338 | | | | |
| Store #1146 – 125 N. Estrella Pkwy., Goodyear, AZ 85338 | Swig Stores, LLC | $400,000.00 | N/A | N/A |
| Store #1912 – 4925 Blue Diamond Rd., Las Vegas, NV 89139 | Swig Stores, LLC | $300,000.00 | N/A | N/A |
| Store #1702 – 1209 E. Kenosha St., Broken Arrow, OK 74012 **[Reserved Lease – October 20, 2026 hearing; not approved hereby]** | Swig Stores, LLC | $100,000.00 | N/A | N/A |
| Store #1704 – 11360 E. 96th St. N., Owasso, OK 74055 **[Reserved Lease – October 20, 2026 hearing; not approved hereby]** | Swig Stores, LLC | $100,000.00 | N/A | N/A |
| Store #1113 – 21429 S. Ellsworth Rd., Queen Creek, AZ 85142 | Swig Stores, LLC | $1,425,000.00 | Dutch Bros., LLC | $1,400,000.00 |
| Store #1134 – 1322 E. Florence Blvd., Casa Grande, AZ 85122 | Swig Stores, LLC | $1.00 | N/A | N/A |
| Intellectual Property | Beyond Salt and Pepper, LLC | $180,000.00 | AYG Acquisition Series | $151,112.00 |